1

2

3

4

5

6

7

The Honorable Thomas S. Zilly

8

9

10

11

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

12

13

14

15

16

17

PROJECT VERITAS,

Plaintiff,

v.

THE LELAND STANFORD JUNIOR
UNIVERSITY and THE UNIVERSITY OF
WASHINGTON,

Defendants.

Case No. 2:21-cv-01326-TSZ

DEFENDANT THE UNIVERSITY OF
WASHINGTON'S MOTION TO
DISMISS PURSUANT TO RULE
12(b)(6)

NOTING DATE: February 18, 2022

ORAL ARGUMENT REQUESTED

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT THE UNIVERSITY OF
WASHINGTON'S MOTION TO DISMISS
PURSUANT TO RULE 12(b)(6)
2:21-cv-01326-TSZ

ORRICK, HERRINGTON & SUTCLIFFE LLP
701 Fifth Avenue, Suite 5600
Seattle, Washington  98104-7097
+1 206 839 4300

# TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................................ 1

II.   BACKGROUND ................................................................................................ 2

III.   LEGAL STANDARD ........................................................................................ 2

IV.   ARGUMENT .................................................................................................... 4

   A. Washington's Uniform Public Expression Protection Act Precludes Project Veritas's
Claims ........................................................................................................................ 4

   B. Project Veritas Fails to State a Claim for Relief Under Fed. R. Civ. P. 12(b)(6) ............ 6

     1.   Project Veritas Fails to Allege Adequately that the Statements Made By EIP Are
False ........................................................................................................................ 7

      a. Reporting by Other Sources "Debunked" Several Project Veritas Claims ........... 7

      b. Several Claims Made in the Video Also Lack Factual Support on Their Face .. 11

      c. Claims That the Video Contains "Misleading" Information and Constitutes
"Election Misinformation" Are Opinions ................................................................. 13

     2.   Project Veritas Fails to Allege Adequately Actual Malice ..................................... 14

   C. Project Veritas Has Not Stated a Claim Based on Republication by the New York
Times Or "Respondeat Superior" ............................................................................. 19

V.   CONCLUSION ................................................................................................. 19

DEFENDANT THE UNIVERSITY OF
WASHINGTON'S MOTION TO DISMISS
PURSUANT TO RULE 12(b)(6)
2:21-cv-01326-TSZ

- i -

ORRICK, HERRINGTON & SUTCLIFFE LLP
701 Fifth Avenue, Suite 5600
Seattle, Washington  98104-7097
+1 206 839 4300

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Amgen Inc. Sec. Litig.*,
   544 F. Supp. 2d 1009 (C.D. Cal. 2008)....................................................................4

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .................................................................................................2

*Bose Corp. v. Consumers Union of U.S., Inc.*,
   466 U.S. 485 (1984)................................................................................................18

*In re Century Aluminum Co. Sec. Litig.*,
   No. C 09-1001 SI, 2011 WL 830174 (N.D. Cal. Mar. 3, 2011)...............................4

*Coomes v. Edmonds Sch. Dist. No. 15*,
   816 F.3d 1255 (9th Cir. 2016)..................................................................................5

*D.A.R.E. Am. v. Rolling Stone Magazine*,
   101 F. Supp. 2d 1270 (C.D. Cal. 2000)..................................................................17

*Demers v. Austin*,
   746 F.3d 402 (9th Cir. 2014).....................................................................................5

*DSCC v. Simon*,
   No. 62-CV-20-585 (Minn. Sec. Jud. Dist., Jul. 28, 2020) ....................................12

*DSCC v. Simon*,
   No. A20-1017 (Minn. Sup. Ct., Sept. 4, 2020) ......................................................12

*Duc Tan v. Le*,
   177 Wn.2d 649, 300 P.2d 356 (2013) .......................................................................8

*F.D.I.C. v. Clementz*,
   No. C13-737 MJP, 2013 WL 6212166 (W.D. Wash. Nov. 27, 2013) ......................8

*Garcetti v. Ceballos*,
   547 U.S. 410 (2006) ..................................................................................................5

*Harkonen v. Fleming*,
   880 F. Supp. 2d 1071, 1081 (N.D. Cal. 2012) .......................................................18

*Harte-Hanks Commc'ns, Inc. v. Connaughton*,
   491 U.S. 657 (1989) ................................................................................................16

DEFENDANT THE UNIVERSITY OF
WASHINGTON'S MOTION TO DISMISS
PURSUANT TO RULE 12(b)(6)
2:21-cv-01326-TSZ

- ii -

Orrick, Herrington & Sutcliffe LLP
701 Fifth Avenue, Suite 5600
Seattle, Washington  98104-7097
+1 206 839 4300

*Herron v. Tribune Publ'g Co., Inc.*,
    108 Wn.2d 162, 736 P.2d 249 (1987) .................................................................1, 17

*Hosszu v. Barrett*,
    716 F. App'x 622 (9th Cir. 2017) .....................................................................2

*Kahl v. Bureau of Nat'l Affs., Inc.*,
    856 F.3d 106 (D.C. Cir. 2017) .......................................................................18

*Keyishian v. Bd. Of Regents of Univ. of State of N.Y.*,
    385 U.S. 589 (1967) ...................................................................................5

*Khoja v. Orexigen Therapeutics, Inc.*,
    899 F.3d 988 (9th Cir. 2018) ......................................................................2, 3

*Kivlin v. City of Bellevue*,
    No. C20-0790, 2021 WL 5140260 (W.D. Wash Nov. 4, 2021) .........................................14

*Makaeff v. Trump Univ., LLC*,
    26 F. Supp. 3d 1002 (S.D. Cal. 2014) .............................................................18

*Miller v. Sawant*,
    18 F.4th 328 (9th Cir. 2021) ........................................................................14

*Miller v. Watson*,
    No. 3:18-cv-00562-SB, 2019 WL 1871011 (D. Or. Feb. 12, 2019) .......................14, 15, 16

*Paterson v. Little, Brown & Co.*,
    502 F. Supp. 2d 1124 (W.D. Wash. 2007) .....................................................7, 13, 14, 17

*Peterson v. Gannet Co.*,
    No. CV-20-00106-PHX-TL, 2020 WL 1935520 (D. Ariz. Apr. 22, 2020) ..................14, 17

*Phantom Touring, Inc. v. Affiliated Publ'ns*,
    953 F.2d 724 (1st Cir. 1992) ........................................................................13, 14

*Phillips v. Seattle Times Co.*,
    818 F. Supp. 2d 1277 (W.D. Wash. 2011) ...................................................*passim*

*Planet Aid, Inc. v. Center for Investigative Reporting*,
    No. 17-cv-03695-MMC, 2021 WL 1110252 (N.D. Cal. Mar. 23, 2021) .......................16

*Project Veritas v. The New York Times Co. et al*,
    Index No. 63921/2020 (N.Y. Sup. Ct.) ...............................................................11

*Resolute Forest Prods., Inc. v. Greenpeace Int'l*,
    302 F. Supp. 3d 1005 (N.D. Cal. 2017) .............................................................14

DEFENDANT THE UNIVERSITY OF
WASHINGTON'S MOTION TO DISMISS
PURSUANT TO RULE 12(b)(6)
2:21-cv-01326-TSZ

- iii -

ORRICK, HERRINGTON & SUTCLIFFE LLP
701 Fifth Avenue, Suite 5600
Seattle, Washington 98104-7097
+1 206 839 4300

*Sweezy v. New Hampshire*,
    354 U.S. 234 (1957) ...................................................................................6

*Van Buskirk v. Cable News Network, Inc.*,
    284 F.3d 977 (9th Cir. 2002) ....................................................................3

*Von Saher v. Norton Simon Museum of Art at Pasadena*,
    592 F.3d 954 (9th Cir. 2010) ....................................................................3

*Wynn v. Chanos*,
    75 F. Supp. 3d 1228 (N.D. Cal. 2014) .................................................4, 15, 16

**Statutes**

RCW 4.105.010(2)(c) ......................................................................................4, 5

RCW 4.105.010(3)(a)(i) ..................................................................................4, 5

RCW 4.105.020 ...................................................................................................2

RCW 4.105.060(1)(c)(i)-(ii) .................................................................................4

**Federal Rules**

Federal Rule of Civil Procedure 12(b)(6) ....................................................... *passim*

Federal Rule of Evidence 201 .............................................................................3

**Other Authorities**

American Heritage College Dictionary (2022) ..................................................7

Cambridge Dictionary (2022) ............................................................................7

United States Constitution ......................................................................2, 4, 5, 6

Washington state Constitution ............................................................................4

DEFENDANT THE UNIVERSITY OF
WASHINGTON'S MOTION TO DISMISS
PURSUANT TO RULE 12(b)(6)
2:21-cv-01326-TSZ

- iv -

ORRICK, HERRINGTON & SUTCLIFFE LLP
701 Fifth Avenue, Suite 5600
Seattle, Washington  98104-7097
+1 206 839 4300

1    **I.      INTRODUCTION**

2            Plaintiff has failed to adequately plead a cause of action for defamation, and pursuant to

3    Fed. R. Civ. P. 12(b)(6), its Complaint should be dismissed. Plaintiff's complaints stem from an

4    academic blog post about the viral spread of misinformation about election integrity through

5    coordinated social media campaigns. Plaintiff does not take issue with the primary substance

6    and content of the blog post. Nor has Plaintiff, to this day, brought any claim against the

7    numerous media outlets that criticized the lack of factual support for the claims made in the

8    video prior to the blog post. Plaintiff nonetheless seeks to hold Defendants liable for defamation

9    because Defendants' blog post observed in an introduction that certain claims in the video had

10   been "debunked by subsequent reporting" or lacked "any factual support," and that the video

11   therefore contained "misleading or inaccurate information." Dkt. No. 1 ("Compl.") ¶¶ 83, 154.

12           The integrity of elections is one of the most important issues of public concern facing

13   the country today. For the past eighteen months, few topics have received as much political and

14   public attention as election integrity. It is an issue about which public discourse and debate

15   should be encouraged, not discouraged. As the United States Supreme Court has held and the

16   Supreme Court of Washington has echoed:

17               [S]peech concerning public affairs is more than self-expression; it is the
                 essence of self-government. The First and Fourteenth Amendments
18               embody our "profound national commitment to the principle that debate
                 on public issues should be uninhibited, robust, and wide-open …"

19   *Herron v. Tribune Publ'g Co., Inc.*, 108 Wn.2d 162, 170, 736 P.2d 249 (1987) (quoting *Garrison*

20   *v. Louisiana*, 379 U.S. 64, 74-75 (1964)). The debate about election integrity should be robust,

21   and courts should hesitate to insert themselves into the merits of that debate by acting as referees

22   of truth or falsity in defamation lawsuits.

23           As discussed below, Plaintiff's claims must be dismissed because Plaintiff has not

24   adequately pleaded two essential elements of a claim for defamation. First, Plaintiff cannot plead

25   facts sufficient to allege that the blog post statements were false. Second, even if the statements

26   could be proven false, Plaintiff cannot plead facts sufficient to allege that they were published

27   with actual malice. As a result, the Complaint fails to state a claim for defamation, and should

28   DEFENDANT THE UNIVERSITY OF
     WASHINGTON'S MOTION TO DISMISS
     PURSUANT TO RULE 12(b)(6)
     2:21-cv-01326-TSZ

                                              1

1    be dismissed with prejudice.

2    **II.     BACKGROUND**

3        The University of Washington incorporates by reference Section II of Defendant

4    Stanford's Special Motion For Expedited Relief and Dismissal Pursuant to RCW 4.105.020

5    (Dkt. No. 37) (hereinafter "Stanford's Motion"). That procedural and factual history is equally

6    applicable to this motion, and should be reviewed before reading the legal arguments in the

7    sections below.

8    **III.    LEGAL STANDARD**

9        The Court should dismiss Plaintiff's Complaint under Fed. R. Civ. P. 12(b)(6). Under

10   the applicable standards, a complaint must be dismissed where "it lacks a cognizable legal

11   theory, or where the allegations on their face 'show that relief is barred' for some legal reason."

12   *Phillips v. Seattle Times Co.*, 818 F. Supp. 2d 1277, 1283 (W.D. Wash. 2011) (quoting *Jones v.*

13   *Bock*, 549 U.S. 199, 215 (2007)). To survive a motion to dismiss, a plaintiff alleging defamation

14   claims must show that the alleged defamatory statements are "reasonably capable of sustaining

15   a defamatory meaning" and "not mere 'comment within the ambit of the First Amendment.'"

16   *Hosszu v. Barrett*, 716 F. App'x 622, 624 (9th Cir. 2017) (quoting *Knievel v. ESPN*, 393 F.3d

17   1068, 1073–74 (9th Cir. 2005)). A complaint must contain "sufficient factual matter, accepted

18   as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662,

19   678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 560 (2007)).

20       While the Court must accept as true all well-pleaded factual allegations in the complaint,

21   the Court is "not required to accept as true allegations that are merely conclusory, unwarranted

22   deductions of fact, or unreasonable inferences." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d

23   988, 1008 (9th Cir. 2018) (internal quotation marks omitted). "Nor is the Court required to

24   accept 'conclusory legal allegations cast in the form of factual allegations if those conclusions

25   cannot reasonably be drawn from the facts alleged.'" *Phillips*, 818 F. Supp. 2d at 1283 (quoting

26   *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994)).

27       Moreover, while the Court is typically constrained to the four corners of a complaint in

28   DEFENDANT THE UNIVERSITY OF
     WASHINGTON'S MOTION TO DISMISS
     PURSUANT TO RULE 12(b)(6)
     2:21-cv-01326-TSZ

     - 2 -

1   analyzing a motion to dismiss, the Court may "consider documents that were referenced

2   extensively in the complaint and were accepted by all parties as authentic." *Van Buskirk v. Cable*

3   *News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002). Multiple documents were so referenced

4   in the Complaint. The Complaint extensively refers to Project Veritas's video and news report

5   purporting to tie United States Representative Ilhan Omar to alleged voter fraud in Minneapolis

6   (hereinafter, "Video" and "Report"). *See* Compl. ¶ 57.[1] The Complaint also refers to a blog post

7   published by the Election Integrity Partnership tracking the spread of the Video. Compl. ¶ 81;

8   *Project Veritas #BallotHarvesting Amplification*, Election Integrity Partnership (Sep. 29, 2020),

9   https://www.eipartnership.net/rapid-response/project-veritas-ballotharvesting (hereinafter, the

10  "Blog Post"). The Court may thus evaluate the entirety of the Video, Report, and Blog Post

11  without converting this motion into one for summary judgment, as each was referenced

12  extensively in the Complaint—and, indeed, forms the basis of Project Veritas's claims—and

13  each is accepted by all parties as authentic.

14      In addition, Federal Rule of Evidence 201 allows the Court to take judicial notice of

15  information "not subject to reasonable dispute," including facts that are "generally known" or

16  "can be accurately and readily determined from sources whose accuracy cannot reasonably be

17  questioned." *Khoja*, 899 F.3d at 999 (quoting Fed. R. Evid. 201). This Court may take judicial

18  notice of each of the news reports set forth in the Declaration of Lee Brand in support of

19  Defendant Stanford's Special Motion for Expedited Relief and Dismissal Pursuant to RCW

20  4.105.020 (Dkt. No. 39, hereinafter "Stanford Decl."), which is hereby incorporated by

21  reference.[2] While Project Veritas may dispute the *accuracy* of the various news articles

22  published between the release of the Video and the Blog Post, the fact that those articles publish

23  critical assessments of the reliability and factual basis for the claims Project Veritas made in the

24  Video cannot reasonably be disputed. *See, e.g.*, *Von Saher v. Norton Simon Museum of Art at*

---

25  [1] The Video and Report are available on Project Veritas's website: https://www.projectveritas.com/news/ilhan-omar-connected-cash-for-ballots-voter-fraud-scheme-corrupts-elections/. For the ease of the Court, a transcript of
26  the video was created by a Court Certified Transcriptionist and is attached as Exhibit A, Transcript of Recording Entitled: Project Veritas, Be Brave Do Something (hereinafter "Transcript") to the Declaration of Daniel J. Dunne
27  in support of the University of Washington's Motion to Dismiss Pursuant to Rule 12(b)(6).

[2] The University of Washington joins Stanford's Request for Judicial Notice (Dkt. No. 38).

28  DEFENDANT THE UNIVERSITY OF
WASHINGTON'S MOTION TO DISMISS                    - 3 -              ORRICK, HERRINGTON & SUTCLIFFE LLP
PURSUANT TO RULE 12(b)(6)                                               701 Fifth Avenue, Suite 5600
2:21-cv-01326-TSZ                                                       Seattle, Washington  98104-7097
                                                                       +1 206 839 4300

*Pasadena*, 592 F.3d 954, 960 (9th Cir. 2010) ("[C]ourts may take judicial notice of publications introduced to indicate what was in the public realm at the time." (quotation marks and citation omitted)).[3] Where "the facts subject to judicial notice directly contradict the other allegations in the complaint," the Court need not accept as true the contradicted allegations in the complaint. *Wynn v. Chanos*, 75 F. Supp. 3d 1228, 1239 (N.D. Cal. 2014).

## IV.   ARGUMENT

### A.   Washington's Uniform Public Expression Protection Act Precludes Project Veritas's Claims

The University of Washington agrees with Stanford that this action should be dismissed under Washington's Uniform Public Expression Protection Act, RCW Ch. 4.105 ("UPEPA" or "Act"). The Act applies to Plaintiff's cause of action because it is based on a person's "[e]xercise of the right of freedom to speech . . . , guaranteed by the United States Constitution or Washington state [sic] Constitution, on a matter of public concern." RCW 4.105.010(2)(c). Under the Act, Project Veritas bears the burden of showing a prima facie case of defamation, which it cannot do for the reasons given in Stanford's Motion and below. *See* RCW 4.105.060(1)(c)(i)-(ii); Stanford's Motion, §§ III.A, IV, V; *infra* at Section IV.B. Accordingly, the University joins in Stanford's Motion and, rather than repeat them, incorporates its arguments by reference.

While the Act exempts from application any action brought "[a]gainst a governmental unit or an employee or agent of a governmental unit acting or purporting to act in an official capacity," RCW 4.105.010(3)(a)(i), the Court should still find the Act applicable to the University of Washington under these circumstances. The Legislature declared that the UPEPA was adopted to give full effect to the protections of the First Amendment, safeguarding the "[e]xercise of the right of freedom of speech [and] of the press, the right to assemble or petition,

---

[3] *See also In re Amgen Inc. Sec. Litig.*, 544 F. Supp. 2d 1009, 1023-24 (C.D. Cal. 2008) (under Rule 12(b)(6), court may consider published reports "to establish 'whether and when certain information was provided to the market,' not the truth of the matters asserted in the reports"); *In re Century Aluminum Co. Sec. Litig.*, No. C 09-1001 SI, 2011 WL 830174, at *9 (N.D. Cal. Mar. 3, 2011) ("courts routinely take judicial notice of [published] reports . . . in order to determine what may or may not have been disclosed to the public").

DEFENDANT THE UNIVERSITY OF
WASHINGTON'S MOTION TO DISMISS                    - 4 -
PURSUANT TO RULE 12(b)(6)
2:21-cv-01326-TSZ

[and] the right of association guaranteed by the United States Constitution or the Washington state Constitution, on a matter of public concern." RCW 4.105.010(2)(c). The exclusion of these protections as applied to the government and agents of the government acting in their official capacity under RCW 4.105.010(3)(a)(i) codifies traditional limitations on First Amendment protections to governmental actors that are enshrined in case law. *See, e.g.*, *Garcetti v. Ceballos*, 547 U.S. 410 (2006) ("[W]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline."); *Coomes v. Edmonds Sch. Dist. No. 15*, 816 F.3d 1255, 1264 (9th Cir. 2016) (Discipline resulting from public school teacher's critical comments to families and supervisors about school's special education program was not a First Amendment violation because the statements were within the scope of her official duties).

The Ninth Circuit, however, has recognized an exception to this limitation on First Amendment protections as it applies to academic research and writing. *Demers v. Austin*, 746 F.3d 402, 412 (9th Cir. 2014) (exempting academic speech from the standard set forth in *Garcetti*). In *Demers*, the Ninth Circuit held that "*Garcetti* does not—indeed consistent with the First Amendment, cannot—apply to teaching and academic writing that are performed 'pursuant to official duties'" and that such speech would be protected if it addressed an issue of public concern and the employee's "interest 'in commenting upon matters of public concern' . . . outweigh 'the interests of the State, as an employer, in promoting the efficiency of the public services it performs though its employees.'" *Demers*, 746 F.3d at 412 (quoting *Pickering v. Bd. Of Educ.*, 391 U.S. 563, 568 (1968)). If the Court were to find that RCW 4.105.010(3)(a)(i) could be applied to scholars and academic institutions, it would conflict with established law holding that teaching and academic writing are "a special concern of the First Amendment," and that "[t]he vigilant protection of constitutional freedoms is nowhere more vital than in the community of American schools." *Keyishian v. Bd. Of Regents of Univ. of State of N.Y.*, 385

DEFENDANT THE UNIVERSITY OF
WASHINGTON'S MOTION TO DISMISS
PURSUANT TO RULE 12(b)(6)
2:21-cv-01326-TSZ

- 5 -

ORRICK, HERRINGTON & SUTCLIFFE LLP
701 Fifth Avenue, Suite 5600
Seattle, Washington  98104-7097
+1 206 839 4300

U.S. 589, 603 (1967).[4] Moreover, the application of such a limitation would deny professors protections from frivolous defamation lawsuits[5] and result in a chilling of academic speech that would, in the words of the Supreme Court, "imperil the future of our Nation." *Sweezy v. New Hampshire*, 354 U.S. 234, 250 (1957).

Nonetheless, if the Court finds the UPEPA inapplicable to the University of Washington, the Complaint should still be dismissed under Rule 12(b)(6) as detailed below.

### B.    Project Veritas Fails to State a Claim for Relief Under Fed. R. Civ. P. 12(b)(6)

A complaint stating a claim for defamation must allege facts that plausibly demonstrate (among other elements not at issue here): (1) that the statements identified as defamatory were, in fact, false; and (2) that the Defendants knew that the statements were false or at least believed that there was a significant chance that the statements were false (the "actual malice" standard). Project Veritas has not sufficiently pleaded either element.

In its Complaint, Project Veritas bases its defamation claims on Defendants' statements that the Video contained several "falsifiable" statements that had either been "debunked" by news outlets or were "without any factual support"; and that certain information in the Video was, therefore, "incorrect or misleading." As a result, in order to survive a motion to dismiss, the Complaint must include plausible allegations that: (1) Defendants' claim that there are statements in the video that have ***either*** been "debunked" by other reporting ***or*** lack factual support is false; and (2) that Defendants knew or recklessly disregarded that all the statements made in the Video had factual support ***and*** that none had been debunked but made the claims nonetheless. Plaintiff fails to adequately plead both of these elements.

---

[4] The decisions in *Garcetti*, *Demers*, and *Keyishian* were all rendered in the context of employment disputes asserted by state employees against the state. *See Garcetti*, 510 U.S. at 413; *Demers*, 746 F.3d at 406; *Keyishian*, 385 U.S. at 591-593. The principle that exclusions of First Amendment protections applied to professors and academics raise significant constitutional issues should apply equally in the defamation context.

[5] Although the university faculty have not been named individually in this action, a suit that tries to hold their employer liable for their academic work creates a similar chill of protected speech.

DEFENDANT THE UNIVERSITY OF
WASHINGTON'S MOTION TO DISMISS
PURSUANT TO RULE 12(b)(6)
2:21-cv-01326-TSZ

- 6 -

1.      **Project Veritas Fails to Allege Adequately that the Statements Made By EIP Are False**

The allegations in the Complaint, combined with the Video and Blog Post incorporated by reference therein and the matters of which the Court can take judicial notice, clearly establish that Plaintiff has not pleaded facts sufficient to support a finding that Defendants' alleged defamatory statements are false—nor can it.

a.      **Reporting by Other Sources "Debunked" Several Project Veritas Claims**

The Complaint first alleges that Defendants made a defamatory statement that certain claims Project Veritas made in its Video had been "debunked by subsequent reporting." Compl. ¶¶ 83-84. Notably, Project Veritas does not dispute that some statements made in its Video had been "debunked by subsequent reporting" at the time the Blog Post was published. In fact, Project Veritas does not even mention, let alone take issue with, the various news outlets that reported falsities in the Video before the Blog Post was ever published. *See, e.g.*, Stanford Decl., Exs. 4, 6-11. Project Veritas's claim against Defendants is based merely on the fact that Defendants did not identify within the Blog Post the specific news reports that debunked certain statements made in the Video. *See* Compl. ¶ 84. That allegation, of course, is irrelevant to whether the statement was, in fact, true. Because Project Veritas fails to allege that statements made in its Video had not actually been debunked in subsequent reporting—and because subsequent reporting that came out prior to the Blog Post did, in fact, debunk certain statements made in the Video—Project Veritas's Complaint fails to state a plausible defamation claim.

To "debunk" means "to show that something is less important, less good, or less true than it has been made to appear." *Debunk,* Cambridge Dictionary (2022); *see also Debunk,* American Heritage College Dictionary (2022) (defining "debunk" as "[t]o expose or ridicule the falseness, sham, or exaggerated claims of"); *Debunk*, Dictionary.com (2022) (defining "debunk" as "to expose or excoriate (a claim, assertion, sentiment, etc.) as being pretentious, false, or exaggerated"). As a result, whether a report has been "debunked" is a matter of opinion, which

DEFENDANT THE UNIVERSITY OF
WASHINGTON'S MOTION TO DISMISS
PURSUANT TO RULE 12(b)(6)
2:21-cv-01326-TSZ

- 7 -

ORRICK, HERRINGTON & SUTCLIFFE LLP
701 Fifth Avenue, Suite 5600
Seattle, Washington  98104-7097
+1 206 839 4300

1 cannot form the basis of a defamation claim. *See Phillips*, 818 F. Supp. 2d at 1284 ("Defamatory

2 meaning may not be imputed . . . to statements of opinion." (quoting *Lee v. Columbian, Inc.*, 64

3 Wn. App. 534, 538, 826 P.2d 217 (1991)); *see also Paterson v. Little, Brown & Co.*, 502 F.

4 Supp. 2d 1124, 1135 (W.D. Wash. 2007).

5      Even if it could be deemed a statement of fact, the statement that "[t]he video made

6 several falsifiable claims that have … been debunked by subsequent reporting" is true and thus

7 cannot form the basis of a defamation claim. *See, e.g.*, *Phillips*, 818 F. Supp. 2d at 1284

8 ("Defamatory meaning may not be imputed to true statements." (quoting *Lee*, 64 Wn. App. at

9 538)); *see also Duc Tan v. Le*, 177 Wn.2d 649, 664, 300 P.2d 356 (2013) ("assertion[s] of fact

10 based on true information supplied to the public or equally available to the public" leave the

11 reader "in a position to judge for themselves the validity of the deduction made" and are not

12 actionable (quoting *Dunlap v. Wayne*, 105 Wn.2d 529, 540, 716 P.2d 842 (1986))). There can

13 be no question that numerous news outlets reported that the Video made unsupported or

14 exaggerated claims prior to the Blog Post's publication—an issue about which this Court can

15 take judicial notice (*see, e.g.*, *F.D.I.C. v. Clementz*, No. C13-737 MJP, 2013 WL 6212166, at *3

16 (W.D. Wash. Nov. 27, 2013)).

17      For example, the Blog Post was published on September 29, 2020. The day before, on

18 September 28, 2020, KMSP-TV, the Fox affiliate in Minneapolis, published a news article on

19 its website titled, *Project Veritas Alleges Election Fraud, Evidence Scant* (Stanford Decl., Ex.

20 8), pointing out that several of the claims made in the Video were without any factual support—

21 and were not supported by the video clips contained in Project Veritas's release. For example,

22 the article states:

> 23      James O'Keefe[6], of the conservative propaganda operation Project
>       Veritas, was back in the public spotlight and once again making an
> 24      incendiary allegation: There was major election fraud in Minneapolis.
>
> 25      One problem: The hard evidence of cash in exchange for votes was
>       lacking, and some of the other conduct of collecting ballots might be
> 26      perfectly legal.

27

_____

6 Mr. O'Keefe is Project Veritas's founder, President, CEO, and Chairman.

28 DEFENDANT THE UNIVERSITY OF
WASHINGTON'S MOTION TO DISMISS
PURSUANT TO RULE 12(b)(6)
2:21-cv-01326-TSZ

- 8 -

The article goes on to note the distinct lack of verifiable evidence that is contained in the video and the lack of substantiation for Project Veritas's claim that there was anything illegal portrayed in the video.

> The meat of the Project Veritas report, posted on YouTube Sunday night, was a Snapchat video from the brother of newly elected City Councilman Jamal Hassan. In the video, Liban Mohamed, is seen driving his car and bragging about money in politics with what appears to be dozens of mailed in ballots.
>
> "Money is everything. Money is the king of this world. If you don't have money you should not be here. Period," said Liban Mohamed in the video. Attempts to reach Liban Mohamed through his social media accounts were not successful.
>
> For O'Keefe the implication was clear: Money was being exchanged for votes, and those ballots were being "harvested."
>
> But the full context of the video is unclear. Were the ballots sealed? Had they already been filled out? Where did the ballots come from?
>
> And the timing of that video may be critical. The practice of turning in ballots that are not your own – or, "harvesting" – was in flux this summer with three separate court decisions.

The KMSP-TV article determines that not only were the allegations of voter fraud or ballot harvesting unsubstantiated, but the assertions in the Video attempting to tie Representative Omar to any alleged illegality were also without any evidentiary support, and was only asserted as a matter of speculation without any proof:

> The video was buttressed by an interview with a controversial community activist, Omar Jamal. Jamal speculated, without evidence, that the campaign of Congresswoman Ilhan Omar was behind the ballot harvesting.

KMSP-TV was not the only news outlet to question the exaggerated nature of many of the claims advanced in the Video. Also on September 28, 2020 (before the Blog Post was released), Forbes released a story criticizing the Video, noting that Representative Omar's office had denied the allegations, and explaining that the President had called for an investigation into the "unsubstantiated report from Project Veritas" (Stanford Decl., Ex. 4).

Other news outlets described the Video's claims as exaggerated or unsupported prior to the Blog Post as well. For example, the Sahan Journal, an independent, 501(c)(3) nonprofit

DEFENDANT THE UNIVERSITY OF WASHINGTON'S MOTION TO DISMISS PURSUANT TO RULE 12(b)(6) 2:21-cv-01326-TSZ

- 9 -

ORRICK, HERRINGTON & SUTCLIFFE LLP
701 Fifth Avenue, Suite 5600
Seattle, Washington 98104-7097
+1 206 839 4300

digital newsroom dedicated to providing news reporting for and with immigrants and communities of color in Minnesota, ran a story on September 28, 2020 titled, *How did an August primary election in Minneapolis turn into a national right-wing disinformation campaign against absentee ballots?* (Stanford Decl., Ex. 10). That article did a deep dive into the allegations made in the Video, assessing the evidence that existed for various claims, and gave significant background on Project Veritas and many of the "sources" used in the Video. The article notes that the claims made in the Video lack support:

> The report, which is clouded with muddled and unsubstantiated information, shows a video of a man—apparently the brother of a city councilmember—claiming to hold 300 harvested ballots in his car. Omar Jamal, a longtime Somali community activist with a questionable reputation, alleges without evidence that Representative Ilhan Omar's campaign participated in the harvesting operation.
>
> The video opens with O'Keefe from Project Veritas "at the scene of the crime," he says, on a rooftop in front of the Cedar–Riverside apartments. O'Keefe then introduces a man he says is Liban Mohamed. O'Keefe says Liban recorded himself on Snapchat "bragging about all the illegal ballot harvesting that he does."
>
> It's not clear, however, if that's what the video actually shows.

The article then examines the specific claims made in the Video and the actual evidence (or lack thereof) used to try to support those claims. In the end, the article concludes that there was little, if anything, to support the assertions made in the Video:

> It's safe to say that there isn't any solid evidence of wrongdoing. Project Veritas' report presents only the word of a few sources, most of whom are anonymous, and a few videos from Snapchat, none of which clearly show fraudulent ballots.

This was not only true of the Video's general claims about illegal ballot harvesting and voter fraud activities, but also about its specific allegations that such activities were in some way connected to Representative Omar:

> The connection to Representative Ilhan Omar appears just as scant. One anonymous source says ballot harvesters bought absentee ballots with money from Ali Isse Gainey, who worked on Ilhan's campaign. But no other evidence shows up in the video that would confirm this.

DEFENDANT THE UNIVERSITY OF
WASHINGTON'S MOTION TO DISMISS
PURSUANT TO RULE 12(b)(6)
2:21-cv-01326-TSZ

- 10 -

ORRICK, HERRINGTON & SUTCLIFFE LLP
701 Fifth Avenue, Suite 5600
Seattle, Washington 98104-7097
+1 206 839 4300

In sum, there can be no question that the Video contains several statements that were debunked—*i.e.,* called out as unsupported or exaggerated—in widely circulated media prior to the release of the Blog Post. Whether Project Veritas agrees with the conclusions of those articles is irrelevant. It cannot reasonably dispute that the articles exist and that they question the accuracy and lack of corroborating evidence in the Video. Project Veritas, therefore, has failed to sufficiently plead facts that would prove defamation based on the Blog Post statement that certain claims in the video had been "debunked."

**b.      Several Claims Made in the Video Also Lack Factual Support on Their Face**

The Complaint also fails to allege how Defendants' statement that "the video made several falsifiable claims that … are without factual support" is false. Simply watching the Video shows that there are statements therein that are not supported by factual evidence.[7]

As one example, Mr. O'Keefe insists that the Video exposes a "massive, criminal voter fraud caught irrefutably on video tape." Video at 15:55-16:04; Transcript at 16. But simply watching the Video refutes the Video's claim of "irrefutable evidence." The Video is composed of heavily edited Snapchat videos allegedly posted by Liban Mohamed. Mr. Mohamed appears with several envelopes in his hands and reportedly states,[8] "You can see my car is full. All these here are absentee ballots. Can't you see? Look at all these, my car is full. My car is full. All of these are for Jamal Osman." Video at 1:06-1:20. In other portions of the edited video, Mr. Mohamed reportedly states that, "Money is everything. Money is the king in this world. If you ain't got money, you shouldn't – you should not be here, period. You know what I am saying?

---

[7] Project Veritas filed similar litigation against the New York Times and its reporters in New York State Court in 2020 for reporting that the newspaper published relying, in part, on the Blog Post. *Project Veritas v. The New York Times Co. et al*, Index No. 63921/2020 (N.Y. Sup. Ct.). The New York Times and its co-defendants moved to dismiss the complaint and for damages under New York's anti-SLAPP law on December 18, 2020. On March 18, 2021, the New York state court denied the motion. That case, however, involved statements made by the New York Times that are not at issue in this case. Moreover, in deciding that motion, the New York state court did not conduct an analysis of the Video to determine whether, on its face, the Video lacked evidence to substantiate some of the claims made by Project Veritas. Stanford Decl., Ex. 16.

[8] The term "reportedly" is used because the speaker in the Video speaks an unidentified foreign language, not English, while an unidentified person purports to post English-language translations in closed captions on the video. The translations have not been verified by a certified translator, and there is no other basis provided to assess the reliability of the purported translation.

DEFENDANT THE UNIVERSITY OF
WASHINGTON'S MOTION TO DISMISS
PURSUANT TO RULE 12(b)(6)
2:21-cv-01326-TSZ

- 11 -

ORRICK, HERRINGTON & SUTCLIFFE LLP
701 Fifth Avenue, Suite 5600
Seattle, Washington  98104-7097
+1 206 839 4300

Money is everything and a campaign is managed by money." Video at 0:29-0:44; Transcript at 2. Finally, in another edited video, Mr. Mohamed flashes a stack of envelopes with the caption: "Two in the morning still working and collecting absentee ballots." Video at 1:50.

As an initial matter, the Video is so heavily edited that the Snapchat snippets lack full context. But even if given the interpretation advanced in the Video, the clips do not evidence any crimes "caught irrefutably on videotape." Video at 15:55-16:04; Transcript at 16. Indeed, even if Mr. Mohamed were collecting ballots, it is not clear that this would have constituted illegal activity. The collection of ballots for delivery to polling stations was legal for much of the summer during the 2020 election cycle in Minnesota. *See DSCC v. Simon*, Case No. 62-CV-20-585 (Minn. Sec. Jud. Dist., Jul. 28, 2020) (holding ballot harvesting for more than three registered voters to be legal); *DSCC v. Simon*, No. A20-1017 (Minn. Sup. Ct., Sept. 4, 2020) (overturning *DSCC*).

Similarly, there are no verifiable facts in the Video that support the notion that, if there is any example of election fraud, it is tied to Representative Omar. Mr. Mohamed never mentions Representative Omar or anyone associated with her. Omar Jamal, who is interviewed in the Video, claims that he "think[s]" that those involved in the alleged voter fraud work with Representative Omar but provides no evidence to back up that claim. Transcript at 2.  Similarly, one anonymous source says that ballot harvesters bought absentee ballots with money from Ali Isse Gainey, who worked on Representative Omar's campaign, but no other evidence is presented in the Video that would confirm this (nor is the anonymous source ever named or verified).[9] Transcript at 8. Not a single ballot is examined, no identifying information for any ballot is shown, no ballot is authenticated, and most important, not a single identifiable Minneapolis voter corroborates any information presented in the Video about acquiring or "harvesting" ballots—even though Mr. O'Keefe stands in front of several high-rise projects he claims were full of elderly voters whose ballots were "harvest[ed]." Video at 6:32-45; Transcript

---

[9] As noted above and as incorporated from Stanford's Motion, multiple news outlets also reported on the lack of factual support for any connection between the alleged ballot harvesting and Representative Omar, among other unsupported claims in the Video. *See* § IV.B.a; Stanford's Motion at 5-6.

DEFENDANT THE UNIVERSITY OF
WASHINGTON'S MOTION TO DISMISS
PURSUANT TO RULE 12(b)(6)
2:21-cv-01326-TSZ

- 12 -

ORRICK, HERRINGTON & SUTCLIFFE LLP
701 Fifth Avenue, Suite 5600
Seattle, Washington  98104-7097
+1 206 839 4300

at 7. In short, Mr. O'Keefe offers no direct evidentiary verification of the central facts of the illegal scheme he alleges. His assertions are based solely on doubtful inferences from unverified, highly-edited *and translated* Snapchat videos, the maker and provenance of which is unverified, which is a reasonable basis on its own to dispute the claim of "irrefutable" evidence. Of course, Plaintiff's Complaint is also unable to identify a single arrest or prosecution for illegal ballot harvesting or any other legal proceeding that even remotely echoes the Video's claims in the year since the Video was posted.

Several other claims in the Video lack factual support as well, including the claims that "[the] investigation into this ballot harvesting ring demonstrated clearly how these unscrupulous operators exploit the elderly and immigrant communities—and have turned the sacred ballot box into a commodities trading desk," and that "[t]his appears to be an effort that is very systemic and very coordinated." Report; Transcript at 12. These are exaggerated claims made by unidentified sources without any factual support. As a result, the Blog Post's statement that the Video contains "several falsifiable claims that . . . are without any factual support" cannot be proved false and, again, Project Veritas has failed to adequately allege a claim for defamation based thereon.

c.   **Claims That the Video Contains "Misleading" Information and Constitutes "Election Misinformation" Are Opinions**

Project Veritas also asserts that the Blog Post constitutes defamation because it states that "[a]s the video calls into question the integrity of the election using misleading or inaccurate information, we determined this video to be a form of election disinformation." Specifically, Project Veritas alleges that the characterizations of the Video as containing "misleading or inaccurate information" and constituting "election disinformation" are false and defamatory. As noted above, the Video contains several statements that were debunked by multiple news outlets or lack any factual basis, which is enough to characterize the Video as misleading.[10]

---

[10] To the extent that these statements could be deemed statements of fact, they are true—because the Video contained several statements that had been debunked in subsequent reporting and were unsupported by facts (*see* § IV.B.1.a *supra*)—and thus cannot form the basis of a defamation claim. *See, e.g.*, *Phillips*, 818 F. Supp. 2d at 1284 ("Defamatory meaning may not be imputed to true statements." (quoting *Lee*, 64 Wn. App. at 538)).

1    In addition, both statements are statements of opinion that are not actionable as

2    defamatory statements. *See Phillips*, 818 F. Supp. 2d at 1284 ("Defamatory meaning may not

3    be imputed . . . to statements of opinion." (quoting *Lee*, 64 Wn. App. at 538)). First, whether

4    something is "misleading" is clearly an opinion that is incapable of being determined specifically

5    as true or false. *See, e.g.*, *Paterson*, 502 F. Supp. 2d at 1135 ("The lack of precision in the

6    meaning of the word 'scam' makes the assertion 'X is a scam' incapable of being proven true or

7    false." (citation omitted)). In *Paterson*, this Court approvingly cited to *Phantom Touring, Inc. v.*

8    *Affiliated Publ'ns*, which found that "[e]ven [defendant's] less figurative assertion that

9    [plaintiffs] are 'blatantly misleading the public,' . . . is subjective and imprecise, and therefore

10   not capable of verification or refutation by means of objective proof." *Phantom Touring*, 953

11   F.2d 724, 728 n.7 (1st Cir. 1992); *Paterson*, 502 F. Supp. 2d at 1135. Similarly, regarding the

12   statement that the Video constitutes "election disinformation," the language in the sentence itself

13   makes clear that it is an opinion—*i.e.*, a judgment that the EIP "has determined." *See Kivlin v.*

14   *City of Bellevue*, No. C20-0790, 2021 WL 5140260 at *4 (W.D. Wash Nov. 4, 2021). "[I]t is

15   well-established that publications conveying 'pertinent information to the public in matters of

16   public interest are permitted wide latitude . . . . [M]ere expressions of opinion or severe criticism

17   are not libelous if they clearly go only to the merits or demerits of a condition, cause or

18   controversy which is under public scrutiny.'" *Id.* (quoting *Info. Control Corp. v. Genesis One*

19   *Comput. Corp.*, 611 F.2d 781, 784 (9th Cir. 1980)); *see also Phillips*, 818 F. Supp. 2d at 1284.

20   In this instance, the Blog Post's characterization of the Video as election disinformation

21   constitutes a non-actionable opinion commenting on an issue that is of the highest public concern

22   in a democratic nation and should be given wide latitude.

23               **2.    Project Veritas Fails to Allege Adequately Actual Malice**

24       Project Veritas is a public figure and thus must plead "actual malice" to sufficiently state

25   a claim for defamation. *Miller v. Sawant*, 18 F.4th 328, 336 n.8 (9th Cir. 2021) ("If the plaintiff

26   is a public figure or public official, he must show actual malice."). Pleading actual malice is a

27   "demanding burden" that requires "specific allegations of a speaker's mindset," not mere

28
- 14 -          ORRICK, HERRINGTON & SUTCLIFFE LLP
                                                                      701 Fifth Avenue, Suite 5600
                                                                      Seattle, Washington 98104-7097
                                                                      +1 206 839 4300

1    "'general allegations that a defendant should have known or should have investigated the truth

2    of his or her statements.'" *Resolute Forest Prods., Inc. v. Greenpeace Int'l*, 302 F. Supp. 3d

3    1005, 1018 (N.D. Cal. 2017) (citation omitted). It is not enough for Project Veritas to allege

4    actual malice generally; it must instead allege "factual content that allows the court to draw the

5    reasonable inference" that Defendants acted with actual malice. *Miller v. Watson*, No. 3:18-cv-

6    00562-SB, 2019 WL 1871011 at *13 (D. Or. Feb. 12, 2019) (citation omitted); *see also Peterson

7    v. Gannet Co.*, No. CV-20-00106-PHX-TL, 2020 WL 1935520 at *8 (D. Ariz. Apr. 22, 2020)

8    (heightened pleading standard for defamation is "consistent with the overwhelming weight of

9    post-*Iqbal* authority," and collecting cases).

10       Project Veritas does not come close to meeting this "demanding burden." As a

11   preliminary matter, as addressed above, simply reviewing the Video itself reveals that certain

12   claims in the Video do not have factual support, and the various articles of which the Court may

13   take judicial notice, discussed above, establish that certain claims in the Video had been

14   "debunked." In other words, far from supporting an inference that Defendants acted with actual

15   malice, the record heavily supports the inference that the statements in the Blog Post were not

16   actually false. There is thus no basis to find that Defendants *knew* their statements to be false.

17       Even assuming Project Veritas could plead falsity, its allegations in the Complaint

18   purporting to plead actual malice amount to mere recitations of the legal standard or conclusory

19   or irrelevant allegations. The entirety of Project Veritas's allegations relating to actual malice

20   are contained in paragraphs 166 through 177 of the Complaint. Taken together, they simply do

21   not allege facts sufficient to state the basis for establishing actual malice, and Project Veritas's

22   claims must therefore be dismissed.

23       First, in paragraph 166, Project Veritas alleges that, "Defendants published these

24   statements with actual malice in that they had knowledge that the statements were false, or they

25   published the statements with reckless disregard for their truth or falsity." This is nothing more

26   than a statement of the legal standard without any factual allegations or basis to state a claim.

27   Courts routinely find such formulaic allegations insufficient to state a claim for defamation. For

28
DEFENDANT THE UNIVERSITY OF
WASHINGTON'S MOTION TO DISMISS
PURSUANT TO RULE 12(b)(6)
2:21-cv-01326-TSZ                                    - 15 -                     ORRICK, HERRINGTON & SUTCLIFFE LLP
                                                                                     701 Fifth Avenue, Suite 5600
                                                                                     Seattle, Washington 98104-7097
                                                                                           +1 206 839 4300

example, in *Wynn v. Chanos*, the court dismissed a defamation claim under Rule 12(b)(6) where the plaintiff's sole allegation concerning actual malice was that the defendant "published [the statements] with reckless disregard for the truth." 75 F. Supp. 3d at 1239. The court explained that such an allegation was "insufficient to satisfy the 'demanding burden' for pleading actual malice in defamation actions" as "it merely recites an element of slander and does not present any potential supporting facts." *Id.* Similarly, in *Miller v. Watson*, the plaintiff's only allegation tied to actual malice was that the defendant "defamed him by maliciously publishing a false report, and by creating a false impression that he had committed a crime which needed to be criminally investigated, exposing him to contempt and ridicule in his home community and elsewhere." 2019 WL 1871011, at \*13. Like *Wynn,* the court held that such a "conclusory allegation does not adequately allege actual malice" without "any specific allegations that would support" such a finding. *Watson*, 2019 WL 1871011, at \*13 (citation omitted). The same is true here.

Second, in paragraphs 173 through 176, Project Veritas asserts that Defendants acted with actual malice because they allegedly violated various policies and standards of conduct prescribed by Stanford University and the University of Washington relating to honesty and avoiding fabrications, among other things. These allegations are also legally insufficient because an allegation that defendants generally failed to follow professional standards does not substitute for adequately alleging knowledge or reckless disregard of falsity. *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 666 (1989) ("there is no question that public figure libel cases are controlled by the *New York Times* standard and not by the professional standards rule"). Following *Harte-Hanks*, district courts have held insufficient actual malice allegations based on more compelling allegations of failures to follow professional journalistic standards than Plaintiff's here. For example, in *Planet Aid, Inc. v. Center for Investigative Reporting*, No. 17-cv-03695-MMC, 2021 WL 1110252 at \*20 (N.D. Cal. Mar. 23, 2021), the court held insufficient allegations that actual malice could be "inferred from defendants' unprofessional conduct, namely, offering cash or other inducements to sources in an effort to obtain information, not

DEFENDANT THE UNIVERSITY OF
WASHINGTON'S MOTION TO DISMISS
PURSUANT TO RULE 12(b)(6)
2:21-cv-01326-TSZ

- 16 -

ORRICK, HERRINGTON & SUTCLIFFE LLP
701 Fifth Avenue, Suite 5600
Seattle, Washington  98104-7097
+1 206 839 4300

disclosing their identities as reporters to sources, and, according to plaintiffs, falsely telling sources those sources had been cheated by plaintiffs." The court explained that "'[e]ven an extreme departure from accepted professional standards of journalism' … 'will not suffice to establish actual malice.'" *Id.* (quoting *Newton v. Nat'l Broad. Co.*, 930 F.2d 662, 669 (9th Cir. 1990)). Project Veritas's allegations here are even more barebones and fail to specify how the universities' policies were purportedly violated—and even that would be insufficient under *Harte-Hanks*.

Moreover, allegations that Defendants violated academic standards are merely formulaic recitations lacking specific factual content that add nothing to the actual malice analysis. *Miller*, 2019 WL 1871011 at *13 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim.); *see Peterson*, 2020 WL 1935520 at *8 (holding "formulaic recitations" insufficient to state a claim for actual malice).

Third, in paragraphs 168 and 169, Project Veritas alleges that the Blog Post statements were made with actual malice because EIP failed to contact Project Veritas to check the claims or to investigate sufficiently the truth or falsity of the statements before publishing them. It is well established, however, that "[t]he actual malice element is not proved by showing that a publisher failed to investigate the basis for his statements or that a more prudent person would have refrained from such publications." *Herron,* 108 Wn.2d at 171. A libel defendant has "no affirmative duty to search out the truth or to substantiate their statements, nor are they required to corroborate their sources' information. The only limitation on free expression is liability imposed for false and damaging statements made with actual knowledge of or in reckless disregard of their falsity." *Id.* In *Paterson*, the plaintiff insisted that the "most telling" evidence of actual malice was the defendant's failure to interview plaintiff, but the district court disagreed, explaining that "the mere failure to investigate is not actual malice." 502 F. Supp. 2d at 1145; *see also, e.g.*, *D.A.R.E. Am. v. Rolling Stone Magazine*, 101 F. Supp. 2d 1270, 1284 n.3 (C.D. Cal. 2000) (holding allegation that a failure to investigate "evidences actual malice" was "legally misguided," and collecting cases holding that failure to investigate is insufficient evidence of

DEFENDANT THE UNIVERSITY OF
WASHINGTON'S MOTION TO DISMISS
PURSUANT TO RULE 12(b)(6)
2:21-cv-01326-TSZ

- 17 -

ORRICK, HERRINGTON & SUTCLIFFE LLP
701 Fifth Avenue, Suite 5600
Seattle, Washington  98104-7097
+1 206 839 4300

1    actual malice). The same is true here.

2         Moreover, while a failure to investigate *coupled with additional evidence* may be

3    sufficient to plead actual malice, like the plaintiff in *Paterson*, Project Veritas fails to even

4    demonstrate a failure to investigate. As addressed above, the dubious nature of certain of Project

5    Veritas's claims in the Video was "published in numerous places" prior to the Blog Post. And

6    even if that were insufficient, Plaintiff does not plead any *facts* (*i.e.*, allegations separate from

7    legal conclusions or formulaic recitations of the elements of a defamation claim) in addition to

8    a failure to investigate that could allow its allegations to survive Rule 12(b)(6). As a result, these

9    allegations do not state a claim for actual malice.

10        In paragraph 170, Plaintiff asserts that Defendants acted with actual malice because they

11   refused to retract the Blog Post after it was published. Again, this allegation fails to plead facts

12   that could sustain a defamation claim. A refusal to retract is not a specific allegation regarding

13   a mindset of actual malice, which is judged at the time of publication. *See Bose Corp. v.*

14   *Consumers Union of U.S., Inc.*, 466 U.S. 485, 512 (1984); *Kahl v. Bureau of Nat'l Affs., Inc.*,

15   856 F.3d 106, 118 (D.C. Cir. 2017).

16        In paragraphs 171, 172, and 177, Project Veritas alleges that Defendants acted with

17   actual malice because they are politically biased against Project Veritas because they harbor ill

18   will and because the Blog Post was part of a pre-planned narrative with the New York Times

19   ahead of publication. As to the University of Washington, again, Plaintiff's allegations of bias

20   and ill will fail because they are conclusory. Moreover, even if these allegations were true (they

21   are not), they are insufficient to allege actual malice. Actual malice "'has nothing to do with bad

22   motive or ill will,' and 'may not be inferred alone from evidence of personal spite, ill will or

23   intention to injure on the part of the writer.'" *Makaeff v. Trump Univ., LLC*, 26 F. Supp. 3d 1002,

24   1008 (S.D. Cal. 2014) (quoting *Harte-Hanks*, 491 U.S. at 666 n.7). "[A] court may consider a

25   defendant's anger or hostility toward a plaintiff in determining the presence of malice only to

26   the extent it impacts the defendant's *actual belief* concerning the truthfulness of the publication.

27   The focus is thus on the defendant's attitude toward the truth or falsity of the material published

28   DEFENDANT THE UNIVERSITY OF
     WASHINGTON'S MOTION TO DISMISS                           - 18 -          ORRICK, HERRINGTON & SUTCLIFFE LLP
     PURSUANT TO RULE 12(b)(6)                                                        701 Fifth Avenue, Suite 5600
     2:21-cv-01326-TSZ                                                                Seattle, Washington  98104-7097
                                                                                          +1 206 839 4300

1   … not the defendant's attitude toward the plaintiff." *Harkonen v. Fleming*, 880 F. Supp. 2d 1071,

2   1081 (N.D. Cal. 2012) (citation omitted). Project Veritas does not plead any facts related to the

3   attitude of the University of Washington toward the truth or falsity of the material published.

4          Finally, in paragraph 167, Plaintiff alleges that "Defendants published these statements

5   with actual malice in that they recklessly disregarded contradictory information in their

6   possession—including the Project Veritas Video Report itself—demonstrating the falsity of

7   these statements." However, as noted above, examination of "*the Project Veritas Video Report*

8   *itself*" reveals that several of the claims made therein lack factual support and were, in fact,

9   called into question by third party news outlets prior to the publication of the Blog Post. Project

10  Veritas makes no other factual allegation to suggest that Defendants somehow knew that the

11  statements in question were false—or that they acted recklessly as to the truth or falsity of the

12  statements. As a result, it has failed to state a claim for defamation.

13          **C.      Project Veritas Has Not Stated a Claim Based on Republication by the
                      New York Times Or "Respondeat Superior"**

14

15          The University of Washington incorporates by reference Sections VI and VII of

16  Stanford's Motion. For the reasons stated therein, Project Veritas's second and third causes of

17  action against Defendants for the New York Times's republication of the Blog Post (Compl.

18  ¶¶ 185-212) and "respondeat superior" (Compl. ¶¶ 213-18) must be dismissed with prejudice.

19  **V.      CONCLUSION**

20          For the reasons set forth above, the Court should dismiss Project Veritas's Complaint

21  with prejudice and without leave to amend either under Washington's UPEPA or under Fed. R.

22  Civ. P. 12(b)(6).

23

24

25

26

27

28  DEFENDANT THE UNIVERSITY OF
    WASHINGTON'S MOTION TO DISMISS                              - 19 -
    PURSUANT TO RULE 12(b)(6)                                              ORRICK, HERRINGTON & SUTCLIFFE LLP
    2:21-cv-01326-TSZ                                                             701 Fifth Avenue, Suite 5600
                                                                              Seattle, Washington  98104-7097
                                                                                     +1 206 839 4300

Dated: January 27, 2022

ORRICK, HERRINGTON & SUTCLIFFE LLP

By: *s/ Robert M. McKenna*
Robert M. McKenna (WSBA No. 18327)
rmckenna@orrick.com

701 Fifth Avenue, Suite 5600
Seattle, WA  98104-7097
Telephone:  +1 206 839 4300
Facsimile:  +1 206 839 4301

By: *s/ Daniel J. Dunne*
Daniel J. Dunne (WSBA No. 16999)
ddunne@orrick.com

701 Fifth Avenue, Suite 5600
Seattle, WA  98104-7097
Telephone:  +1 206 839 4300
Facsimile:  +1 206 839 4301

By: *s/ R. David Hosp*
R. David Hosp (*pro hac vice*)
dhosp@orrick.com

222 Berkeley Street, Suite 2000
Boston, MA  02116
Telephone:  +1 617 880 1800

By: *s/ Kristina D. McKenna*
Kristina D. McKenna (*pro hac vice*)
kmckenna@orrick.com

222 Berkeley Street, Suite 2000
Boston, MA  02116
Telephone:  +1 617 880 1800

ASSISTANT ATTORNEY GENERAL

By: *s/ James K. Buder*
James K. Buder (WSBA No. 36659)

*Attorneys for Defendant University of Washington*

DEFENDANT THE UNIVERSITY OF
WASHINGTON'S MOTION TO DISMISS
PURSUANT TO RULE 12(b)(6)
2:21-cv-01326-TSZ

- 20 -

ORRICK, HERRINGTON & SUTCLIFFE LLP
701 Fifth Avenue, Suite 5600
Seattle, Washington  98104-7097
+1 206 839 4300