1

2

THE HONORABLE THOMAS S. ZILLY

3

4    **UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**

5

6

7    PROJECT VERITAS,

             Plaintiff,                          No. 2:21-cv-01326-TSZ
8

9         v.                                     PLAINTIFF PROJECT VERITAS'
                                                 OPPOSITION TO DEFENDANT
10   THE LELAND STANFORD JUNIOR                  STANFORD'S SPECIAL MOTION FOR
     UNIVERSITY, and THE UNIVERSITY OF           EXPEDITED RELIEF AND DISMISSAL
11   WASHINGTON                                  PURSUANT TO RCW 4.105.020 AND
                                                 DEFENDANT UNIVERSITY OF
12             Defendants.                       WASHINGTON'S MOTION TO
                                                 DISMISS PURSUANT TO RULE
13                                               12(b)(6)

14                                               **Clerk's Action Required**

15                                               **Note Motion on Calendar:**
                                                 **March 25, 2022**
16

17

18

19

20

21

22

23

24

25

26
     Pl.'s Opp'n to Stanford's Special Mot. for          Ard Law Group PLLC
27   Expedited Relief and Dismissal and Univ. of
     Washington's Mot. to Dismiss — No. 2:21-cv-         P.O. Box 11633
     01326-TSZ                                           Bainbridge Island, WA 98110
                                                         Phone: (206) 701-9243

*Project Veritas v. Stanford and University of
Washington*

1
2

# TABLE OF CONTENTS

3

**TABLE OF AUTHORITES** ........................................................................................... iii

4

**INTRODUCTION** ........................................................................................................ 1

5

**STATEMENT OF FACTS** .......................................................................................... 3

6
7

    A.   The Veritas Video Report Exposes Unlawful Voting Practices in Congresswoman Ilhan Omar's Minneapolis, Minnesota District by Individuals Directly Associated with the Congresswoman's Campaign .......................................................................................... 3

8

    B.   The Authors of the EIP Article Target the Veritas Video Report ................................... 6

9

    C.   EIP Coordinates with The New York Times to Amplify Its False Claims About Veritas' Reporting ......................................................................................................... 8

10
11

    D.   Veritas' Complaint Alleges That the False EIP Article and Times Stories Were Published with a Reckless Disregard for the Truth. ......................................................... 9

12

    E.   Veritas Repeatedly Asks Defendants to Retract Their False Statements Over the Course of Many Months to Avoid Litigation. ........................................................... 11

13

    F.   The Related New York Times Litigation ................................................................... 12

14

    G.   Procedural History of this Litigation. ....................................................................... 13

15

**LEGAL STANDARD** ............................................................................................... 14

16

**ARGUMENT** .......................................................................................................... 15

17

**I.    Washington's Anti-SLAPP Statute Does Not—And Cannot—Apply in This Case. 15**

18
19

    A.   Washington's Anti-SLAPP Statute's Plain Language Expressly Excludes Governmental Units—Like The University of Washington—From Its Scope. ................... 15

20

    B.   Because State Anti-SLAPP Statutes, Like Washington's, Answer the Same Questions Presented by the Federal Rules, They Cannot Apply in Federal Court. ............... 16

21
22

    C.   In *Shady Grove*, the Supreme Court Held That When a Valid Federal Rule Answers the Same Question as a State Law, a Federal Court Sitting in Diversity Must Apply the Federal Rule, Not the State Law. ......................................................................... 17

23
24

    D.   Every Federal Court of Appeals to Address the Question Has Held That, Under *Shady Grove*'s Majority Opinion, State Anti-SLAPP Statutes Like Washington's Cannot Apply in Federal Courts. ......................................................................................... 18

25

    E.   Defendants' Arguments for Applying the Anti-SLAPP Statute Rely on Decisions *Shady Grove* Abrogated. ......................................................................................... 20

26
27

Pl.'s Opp'n to Stanford's Special Mot. for Expedited Relief and Dismissal and Univ. of Washington's Mot. to Dismiss — No. 2:21-cv-01326-TSZ

*Project Veritas v. Stanford and University of Washington*

Ard Law Group PLLC

P.O. Box 11633
Bainbridge Island, WA 98110

II.   **Defendants' Rule 12 Motions Should Be Denied Because Veritas Has Stated Plausible Claims for Relief.** ................................................................ **24**

    A.   Defendants' Rule 12 Motions Are Untimely and Defaulted Under the Federal Rules. 25

    B.   The Statements in the EIP Article Are Statements Capable of Being Proven True or False—Not Non-Actionable Pure Opinion. ................................................ 25

    C.   At This Stage of the Litigation, The Court Cannot Credit Defendants' Arguments That the Statements in the EIP Article Are True. ........................................ 33

    D.   Defendants' Actual Malice Arguments Misstate Plaintiff's Burden and Ignore Settled Law About How Plaintiffs May Prove the Malice Element. ................................. 36

    E.   Defendants Are Liable for Defamatory Statements in The Times Articles to the Same Extent They Are Liable for the Defamatory Statements in the EIP Article Itself. .............. 39

**CONCLUSION** ................................................................................ **40**

Pl.'s Opp'n to Stanford's Special Mot. for
Expedited Relief and Dismissal and Univ. of
Washington's Mot. to Dismiss — No. 2:21-cv-
01326-TSZ

*Project Veritas v. Stanford and University of
Washington*

Ard Law Group PLLC

P.O. Box 11633
Bainbridge Island, WA 98110

# TABLE OF AUTHORITES

**CASES**

*Abbas v. Foreign Policy Grp., LLC*,
    783 F.3d 1328 (D.C. Cir. 2015)............................................................................18, 23

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) ...........................................................................................15

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ...........................................................................................36

*Batzel v. Smith*,
    333 F.3d 1018 (9th Cir. 2003) ............................................................................21

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ...........................................................................................14

*Budget Van Lines, Inc. v. Better Bus. Bureau of the Southland, Inc.*,
    No. B235338, 2013 WL 4494318 (Cal. Ct. App. Aug. 20, 2013)....................28, 30

*Carbone v. Cable News Network, Inc.*,
    910 F.3d 1345 (11th Cir. 2018) ..........................................................................18

*Caruso v. Local Union No. 690*,
    730 P.2d 1299 (1987) ........................................................................26, 31, 32, 33

*Celle v. Filipino Reporter Enters., Inc.*,
    209 F.3d 163 (2d Cir. 2000) ...............................................................................39

*Celotex v. Catrett Corp.*,
    477 U.S. 317 (1986) ...........................................................................................20

*Clifford v. Trump*,
    818 F. App'x 746 (9th Cir. 2020) .......................................................................21

*CoreCivic Inc v. Candide Grp. LLC*,
    No. 20-cv-03792, 2021 WL 1267259 (N.D. Cal. Apr. 6, 2021)..........................22

*CoreCivic, Inc. v. Candide Grp., LLC*,
    No. 20-17285 (9th Cir.) (appeal docketed Nov. 20, 2020) ................................21

*Delashaw v. Seattle Times Co.*,
    No. C18-0537, 2018 WL 4027078 (W.D. Wash. Aug. 23, 2018) .......................33

*Dunlap v. Wayne*,
    716 P.2d 842 (Wash. 1986) ...............................................................................32

*Eastwood v. Nat'l Enquirer, Inc.*,
    123 F.3d 1249 (9th Cir. 1997) ............................................................................37

*Eramo v. Rolling Stone, LLC*,
    209 F. Supp. 3d 862 (W.D.Va. 2016)............................................................37, 39

*Flowers v. Carville*,
    310 F.3d 118 (9th Cir. 2002) ....................................................25, 26, 28, 37

Pl.'s Opp'n to Stanford's Special Mot. for
Expedited Relief and Dismissal and Univ. of
Washington's Mot. to Dismiss — No. 2:21-cv-
01326-TSZ

*Project Veritas v. Stanford and University of
Washington*

iii

Ard Law Group PLLC

P.O. Box 11633
Bainbridge Island, WA 98110

1

*Gallivan v. United States,*
     943 F.3d 291 (6th Cir. 2019) ............................................................................21

2

3

*Garcetti v. Ceballos,*
     547 U.S. 410 (2006) ..........................................................................................16

4

*Godin v. Schencks,*
     629 F.3d 79 (1st Cir. 2010)................................................................................18

5

*Goldwater v. Ginzburg,*
     414 F.2d 324 (2d Cir. 1969) ..............................................................................37

6

7

*Hanson v. City of Snohomish,*
     828 P.2d 1133 (Wash. Ct. App. 1992),
     *rev'd in part and on other grounds,* 852 P.2d 295 (Wash. 1993)...................27

8

*Harris v. City of Seattle,*
     152 Fed. App'x 565 (9th Cir. 2005) ..................................................................37

9

*Harte-Hanks Commc'ns, Inc. v. Connaughton,*
     491 U.S. 657 (1989) ...........................................................................36, 37, 39

10

*Henne v. City of Yakima,*
     341 P.3d 284 (Wash. 2015) ...............................................................................13

11

12

*Henry Schein, Inc. v. Archer & White Sales, Inc.,*
     139 S. Ct. 524 (2019)..........................................................................................15

13

*Herbert v. Lando,*
     441 U.S. 153 (1979) ...........................................................................................36

14

*Herron v. KING Broad. Co.,*
     746 P.2d 295 (Wash. 1987) (en banc) ...............................................................37

15

16

*Intercon Sols., Inc. v. Basel Action Network,*
     969 F.Supp.2d 1026 (N.D. Ill. 2013), *aff'd,* 791 F.3d 729 (7th Cir. 2015) .........18

17

*Iselin v. United States,*
     270 U.S. 245 (1926) ...........................................................................................15

18

*Jones v. United Parcel Serv., Inc.,*
     674 F.3d 1187 (10th Cir. 2012) .........................................................................17

19

20

*Kaelin v. Globe Commc'ns Corp.,*
     162 F.3d 1036 (9th Cir. 1998) ..............................................................26, 35, 39

21

22

*Khoja v. Orexigen Therapeutics, Inc.,*
     899 F.3d 988 (9th Cir. 2018) ................................................................14, 33, 34

23

*Klocke v. Watson,*
     936 F.3d 240 (5th Cir. 2019) .............................................................................18

24

*Knievel v. ESPN,*
     393 F.3d 1068 (9th Cir. 2005) ...........................................................................27

25

*La Liberte v. Reid,*
     966 F.3d 79 (2d Cir. 2020) ...........................................................................18, 19

26

27

Pl.'s Opp'n to Stanford's Special Mot. for
Expedited Relief and Dismissal and Univ. of
Washington's Mot. to Dismiss — No. 2:21-cv-
01326-TSZ

*Project Veritas v. Stanford and University of Washington*

Ard Law Group PLLC

P.O. Box 11633
Bainbridge Island, WA 98110

*Lieberman v. Fieger*,
    338 F.3d 1076 (9th Cir. 2003) ................................................................................. 25

*Los Lobos Renewable Power, LLC v. AmeriCulture, Inc.*,
    885 F.3d 659 (10th Cir. 2018) ............................................................................... 18

*Makaeff v. Trump University, LLC*,
    736 F.3d 1180 (9th Cir. 2013) ............................................................................... 23

*Manufactured Home Cmtys., Inc. v. Cnty. of San Diego*,
    544 F.3d 959 (9th Cir. 2008) ................................................................................. 30

*Margoles v. Hubbart*,
    760 P.2d 324, 331 (Wash. 1988) .......................................................................... 37

*Marx v. Comput. Scis. Corp.*,
    507 F.2d 485 (9th Cir. 1974) ................................................................................. 28

*Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*,
    674 F.3d 369 (4th Cir. 2012) ................................................................................. 36

*Menoken v. Dhillon*,
    975 F.3d 1 (D.C. Cir. 2020) ................................................................................... 19

*Milkovich v. Lorain J. Co.*,
    497 U.S. 1 (1990) ....................................................................................... 25, 29, 30

*Miller v. Gammie*,
    335 F.3d 889 (9th Cir. 2003) ..........................................................................passim

*Mitchell v. Super. Ct.*,
    690 P.2d 625 (Cal. 1984) ...................................................................................... 39

*Nasrallah v. Barr*,
    140 S. Ct. 1683 (2020) .......................................................................................... 15

*Newcal Indus., Inc. v. Ikon Office Sol.*,
    513 F.3d 1038 (9th Cir. 2008) ............................................................................... 15

*Palin v. N.Y. Times Co.*,
    940 F.3d 804 (2d Cir. 2019) ............................................................................ 15, 37

*Paterson v. Little, Brown & Co.*,
    502 F. Supp. 2d 1124 (W.D. Wash. 2007) ........................................................... 29

*Peterson v. Gannett Co.*,
    No. cv-20-00106, 2020 WL 1935520 (D. Ariz. Apr. 22, 2020) ........................... 36

*Phantom Touring, Inc. v. Affiliated Publ'ns*,
    953 F.2d 724 (1st Cir. 1992) ................................................................................. 29

*Planet Aid, Inc. v. Reveal*,
    No. 21-15690 (9th Cir.) (appeal docketed Apr. 20, 2021) ..................................... 21

*Planned Parenthood Federation of America, Inc. v. Center for Medical Progress*,
    890 F.3d 828 (9th Cir. 2018) ............................................................................ 22, 24

Pl.'s Opp'n to Stanford's Special Mot. for
Expedited Relief and Dismissal and Univ. of
Washington's Mot. to Dismiss — No. 2:21-cv-
01326-TSZ

*Project Veritas v. Stanford and University of
Washington*

Ard Law Group PLLC

P.O. Box 11633
Bainbridge Island, WA 98110

*Pledger v. Lynch*,
    5 F.4th 511 (4th Cir. 2021) ............................................................................ 18

*Project Veritas v. N.Y. Times Co.*,
    No. 63921/2020 (N.Y. Sup. Ct.) (complaint filed Oct. 30, 2020) ...................... 12

*Quigley v. Rosenthal*,
    43 F. Supp. 2d 1163 (D. Colo. 1999) ............................................................. 37

*Resolute Forest Prods., Inc. v. Greenpeace Int'l*,
    No. 17-cv-02824, 2019 WL 281370 (N.D. Cal. Jan. 22, 2019) ......................... 31

*Reyn's Pasta Bella, LLC v. Visa USA, Inc.*,
    442 F.3d 741 (9th Cir. 2006) ............................................................................ 9

*Ringler Assocs. Inc. v. Md. Cas. Co.*,
    96 Cal.Rpter.2d 136 (2000) .......................................................................... 39

*RLI Ins. Co. v. Langan Eng'g, Env't, Surveying & Landscape Architecture, D.P.C.*,
    834 F. App'x 362 (9th Cir. 2021) .................................................................... 21

*Sakamoto v. Duty Free Shoppers, Ltd.*,
    764 F.2d 1285 (9th Cir. 1985) ........................................................................ 22

*Sarver v. Chartier*,
    813 F.3d 891 (9th Cir. 2016) .......................................................................... 22

*SEG, Inc. v. Stillman*,
    No. B151712, 2003 WL 21197133 (Cal. Ct. App. May 22, 2003) ..................... 28

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
    549 F.3d 137, (2d Cir. 2008) ..................................................................... 16, 17

*Shaver v. Operating Eng'rs Local 428 Pension Tr. Fund*,
    332 F.3d 1198 (9th Cir. 2003) ........................................................................ 14

*Shepherd v. Unknown Party*,
    5 F.4th 1075 (9th Cir. 2021) .......................................................................... 23

*Siegelman v. Cunard White Star Ltd.*,
    221 F.2d 189 (2d Cir. 1955) .......................................................................... 29

*Slaughter v. Friedman*,
    649 P.2d 886 (Cal. 1982) .............................................................................. 32

*St. Amant v. Thompson*,
    390 U.S. 727 (1968) ...................................................................................... 37

*Stern v. Cosby*,
    645 F. Supp. 2d 258 (S.D.N.Y. 2009) ............................................................ 37

*Tavoulareas v. Piro*,
    763 F.2d 1472 (D.C. Cir. 1985) ...................................................................... 37

*Travelers Cas. Ins. Co. v. Hirsh*,
    831 F.3d 1179 (9th Cir. 2016)) ...................................................................... 23

vi

Pl.'s Opp'n to Stanford's Special Mot. for
Expedited Relief and Dismissal and Univ. of
Washington's Mot. to Dismiss — No. 2:21-cv-
01326-TSZ

*Project Veritas v. Stanford and University of
Washington*

Ard Law Group PLLC

P.O. Box 11633
Bainbridge Island, WA 98110

*United States ex rel. Newsham v. Lockheed Missiles & Space Co.*,
190 F.3d 963 (9th Cir. 1999) ................................................................. 20, 21

*United States v. L.A. Tucker Truck Lines*,
344 U.S. 33 (1952) .......................................................................................... 22

*United States v. Ritchie*,
342 F.3d 903 (9th Cir. 2003) ......................................................................... 19

*US Dominion, Inc. v. My Pillow, Inc.*,
No. 1:12-cv-445 (D.D.C. Mar. 1, 2022) ....................................................... 19

*Webster v. Fall*,
266 U.S. 507 (1925) .......................................................................................... 22

*Wood v. Battle Ground Sch. Dist.*,
27 P.3d 1208 (Wash. Ct. App. 2001) ........................................................... 26

*Zerangue v. TSP Newspapers, Inc.*,
814 F.2d 1066 (5th Cir. 1987) ....................................................................... 37

**STATUTES**

RCW  4.105.030 ................................................................................................... 25

RCW 19.86.020 ................................................................................................... 30

RCW 4.105.010 ........................................................................................... 15, 20

RCW 4.105.060 ........................................................................................... 19, 20

RCW 4.105.090 ................................................................................................... 20

RCW 9.04.050 ..................................................................................................... 30

RCW ch. 28B.20 ................................................................................................. 15

RCW ch. 4.105 ................................................................................................... 13

**RULES**

Fed R. Civ. P. 8 .......................................................................................... passim

Fed. R. Civ. P. 1 ................................................................................................. 14

Fed. R. Civ. P. 11 ............................................................................................... 20

Fed. R. Civ. P. 56 ....................................................................................... 19, 34

Fed. R. Civ. P. 9 ................................................................................................. 36

Fed. R. Civ. P.12 ........................................................................................ passim

**OTHER AUTHORITIES**

5B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 1357 (3d ed.)
................................................................................................................. 14, 19

vii

Pl.'s Opp'n to Stanford's Special Mot. for
Expedited Relief and Dismissal and Univ. of
Washington's Mot. to Dismiss — No. 2:21-cv-
01326-TSZ

*Project Veritas v. Stanford and University of
Washington*

Ard Law Group PLLC

P.O. Box 11633
Bainbridge Island, WA 98110

1

2

## INTRODUCTION

3

Defendant Stanford University's Special Motion for Expedited Relief and Dismissal

4

Pursuant to RCW 4.105.020 [Dkt. 37] and Defendant The University of Washington's ("UW")

5

Motion to Dismiss Pursuant to Rule 12(b)(6) [Dkt. 40]—collectively referred to as "the motions"

6

because each joins and incorporates the other—fail to show that Project Veritas' detailed

7

Complaint does not state plausible defamation claims against Defendants for a publication of their

8

joint enterprise, the Election Integrity Partnership ("EIP").  Through an article published on the

9

website of EIP—which claims expertise by research academics in analyzing and identifying

10

"election disinformation"—Defendants defamed Project Veritas, an independent, non-profit

11

journalistic organization that Defendants perceived as an ideological enemy.  Without any basis,

12

and indeed, with knowledge that it was untrue, Defendants attacked Veritas' journalism as

13

"inaccurate," "without any factual support," and intentional lies spread as election

14

"disinformation."  They then caused substantially similar claims to be republished in three articles

15

in The New York Times, in an effort to spread the reach and impact of these false and damaging

16

accusations globally.

17

The challenged statements in the EIP article (and the subsequent Times stories) convey an

18

unmistakable message: That Veritas committed the greatest of journalistic sins by deceiving its

19

audience with an intentionally false and misleading news report.  Such a charge directed at a

20

journalistic organization is obviously defamatory, and Veritas' Complaint in this action explains

21

why, over the course of almost 50 pages of detailed allegations that more than plausibly state a

22

claim for defamation.  Indeed, in a parallel action that Veritas filed against The New York Times

23

for its stories arising out of the EIP article, the trial judge concluded that Veritas' allegations not

24

only stated claims for relief, but that Veritas demonstrated its claims have a "substantial basis in

25

law and fact," and more than satisfied the heightened pleading burden imposed under New York's

26

27

Pl.'s Opp'n to Stanford's Special Mot. for
Expedited Relief and Dismissal and Univ. of
Washington's Mot. to Dismiss — No. 2:21-cv-
01326-TSZ

*Project Veritas v. Stanford and University of
Washington*

1

Ard Law Group PLLC

P.O. Box 11633
Bainbridge Island, WA 98110

anti-SLAPP statute.[1]  Decision & Order, *Project Veritas v. N.Y. Times Co.*, Index No. 63921/2020 (Mar. 18, 2021) [Ex. 16 to L. Brand Decl., Dkt. 39-16].  Thus, it is no surprise that in moving to dismiss the Complaint, Defendants here do not—and cannot—contend with Veritas' allegations on their own terms.  Instead, they present a distorted and acontextual reading of the EIP article, the corresponding New York Times stories, the Complaint, and even the governing law.

Defendants begin by asking the Court to apply state statutory law imposing legal standards that, under controlling U.S. Supreme Court precedent, have no place in federal court.  They then ask the Court to determine that all their false statements, individually and collectively, are opinion as a matter of law—and to disregard that a reasonable reader could obviously interpret them as factual accusations of intentional lies (i.e., "disinformation") made by a group that claims to be academic researchers who are experts in factually identifying instances of intentional deception.  Next, they argue, contradictorily, that the statements in the EIP article are not opinion but are instead objectively true, and they ask the Court to decide that disputed fact question in their favor on a motion to dismiss, notwithstanding Veritas' detailed allegations of falsity.  They then ask the Court to apply a "heightened" standard for pleading fault that does not exist in law and ignore that Veritas has pleaded abundant circumstantial evidence of the type considered sufficient to prove actual malice, let alone plead it under Federal Rule of Civil Procedure 8.

At bottom, Defendants' motions to dismiss the Complaint call on the Court to apply legal standards that have no place in this federal litigation, to draw countless unwarranted inferences against Veritas, and to resolve every single factual and evidentiary dispute in Defendants' favor.  The Court cannot and should not do any of those things at this stage of the litigation, and accordingly, Defendants' motions should be denied.

---

[1] In that state-court action, the New York Supreme Court (the name for the trial court in that jurisdiction) applied New York's anti-SLAPP statute, and thus the question presented in this federal case regarding what state statutes and rules apply in federal court—and the U.S. Supreme Court precedent governing that question—was inapplicable.  The Times has filed an interlocutory appeal challenging the state court's decision denying its motion to dismiss the case, which it is entitled to do as of right under New York procedural rules, and the case awaits argument on the appeal.

Pl.'s Opp'n to Stanford's Special Mot. for
Expedited Relief and Dismissal and Univ. of
Washington's Mot. to Dismiss — No. 2:21-cv-
01326-TSZ

*Project Veritas v. Stanford and University of Washington*

Ard Law Group PLLC

P.O. Box 11633
Bainbridge Island, WA 98110

1

2

**STATEMENT OF FACTS**

3        This case is about a defamatory article ("the EIP Article") written and published by Alex

4   Stamos, Elena Cryst, Elizabeth Garcia-Camargo, Dr. Kate Starbird, Dr. Joe Bak-Coleman, and

5   Joey Schafer.  (Complaint (Sept. 29, 2021) [Dkt. 1] ("Compl.") ¶¶ 80-81.)  Plaintiff alleges that

6   when they wrote and published the EIP Article, Mr. Stamos, Ms. Cryst, and Ms. Garcia-Camargo

7   were agents of Defendant Stanford University, while Dr. Starbird, Dr. Bak-Coleman, and

8   Mr. Schafer were agents of Defendant University of Washington ("UW").  (*Id.* ¶ 80.)  The EIP

9   Article concerned a video news report ("the Video Report") published by Veritas, an independent,

10  non-profit journalistic organization that focuses on investigating and exposing corruption,

11  dishonesty, self-dealing, waste, fraud, and other misconduct in public and private institutions.  (*Id.*

12  ¶¶ 10, 7, 27.)

13     **A.  The Veritas Video Report Exposes Unlawful Voting Practices in Congresswoman
            Ilhan Omar's Minneapolis, Minnesota District by Individuals Directly Associated
14          with the Congresswoman's Campaign.**

15        On September 27, 2020, Veritas published the Video Report, titled *Ilhan Omar Connected*

16  *Cash-for-Ballots Voter Fraud Scheme Corrupts Elections.*  (*Id.* ¶ 57.)  It begins by featuring self-

17  recorded video clips posted to social media in early July 2020 by a man named Liban Mohamed

18  (a/k/a Liban Osman).  (*Id.* ¶ 59.)[2]  In the clips, Mr. Mohamed brags about collecting hundreds of

19  absentee ballots from voters in Minneapolis, Minnesota, an act that was illegal under Minnesota's

20  anti-ballot-harvesting law that prohibited any person from delivering more than three ballots on

21  behalf of others.  (*Id.* ¶¶ 61, 65.)  In one clip, Mr. Mohamed is shown driving a car full of ballots

22  and envelops, saying: "You can see my car is full.  All these here are absentees' ballots.  Can't you

23

24  [2] For the Court's convenience, Veritas attaches as Exhibit A to its Opposition a list of the individuals who are identified

25  by name, featured in, and/or sources in Veritas' Video Report, including their respective roles in the Minneapolis
    ballot-harvesting scheme and/or Veritas' Video Report.  Given that some of the individuals featured in the Video

26  Report share either the same or similar names (e.g., Liban Mohammed v. Liban Osman v. Jamal Osman v. Omar Jamal
    v. Congresswoman Omar), the Exhibit is intended to aid the Court's understanding of who the individuals are and
    their respective roles in this dispute.

27   Pl.'s Opp'n to Stanford's Special Mot. for          3
     Expedited Relief and Dismissal and Univ. of                              Ard Law Group PLLC
     Washington's Mot. to Dismiss — No. 2:21-cv-                              P.O. Box 11633
     01326-TSZ                                                                Bainbridge Island, WA 98110

     *Project Veritas v. Stanford and University of
     Washington*

1
2   see?  Look at all these, my car is full.  All these are for Jamal Osman….  We got 300 today for

3   Jamal Osman":

4
5
6   
7
8
9

10  (*Id.* ¶ 62.)  Another clip shows Mr. Mohamed walking out of a building, hands full of envelopes

11  of ballots, saying "[t]wo in the morning.  Still hustling."  (*Id.* ¶ 63.)  Mr. Mohamed was harvesting

12  those ballots for his brother Jamal Osman, a Democrat who was running for a

13  City Council seat in Minneapolis' Ward 6, a densely populated district with a large Somali-

14  American population.  (*Id.* ¶¶ 59-60.)

15       Multiple sources in the Video Report directly connect Mr. Mohamed and his brother,

16  Mr. Osman, to the political machine of U.S. Representative Ilhan Omar, whose district includes

17  Minneapolis.  (*Id.* ¶ 69.)  First, the Video Report's primary, on-the-record source—Omar Jamal, a

18  Community Service Officer for the Ramsey County Sheriff's Office and political consultant—

19  states in an on-the-record interview that ballot-harvester Liban Mohamed also works for

20  Congresswoman Ilhan Omar's campaign.  (*Id.* ¶¶ 70-71.)  Mr. Jamal is not an untrustworthy

21  source—he is not only an employee of the Ramsey County Sheriff's Office, but he is also a source

22  who is regularly sought out by and quoted in mainstream media outlets as credible and

23  knowledgeable regarding the Minneapolis Somali-American community.  (*Id.*)  Indeed, The New

24  York Times has repeatedly relied upon Mr. Jamal in its reporting on the Minneapolis Somali-

25  American community over the past decade (*id.* ¶ 70):

26
27  Pl.'s Opp'n to Stanford's Special Mot. for
    Expedited Relief and Dismissal and Univ. of
    Washington's Mot. to Dismiss — No. 2:21-cv-
    01326-TSZ

    *Project Veritas v. Stanford and University of
    Washington*

4

Ard Law Group PLLC
P.O. Box 11633
Bainbridge Island, WA 98110

The Video Report includes a recorded telephone conversation between Mr. Jamal and Mr. Mohamed, in which Mr. Mohamed, the ballot-harvester, details an illegal scheme to collect absentee ballots from elderly voters.  (*Id*. ¶ 73.)  The Video Report also features statements by Minneapolis political candidate AJ Awed—the political adversary challenging Jamal Osman's candidacy for City Counsel in the Democratic primary—who also links Mr. Mohamed to Congresswoman Omar.  For his part, Mr. Awed bemoans the corruption in Minneapolis elections and charges that the perpetrators include both Congresswoman Omar and City Councilman Osman (Mr. Mohamed's brother), who are part of the same extended family.  (*Id*. ¶ 78.)

The Video Report also features recorded interviews with two confidential community sources who describe how ballot-harvesters working for the campaign of Congresswoman Omar target specific apartment towers filled with elderly voters and offer cash in exchange for absentee ballots.  (*Id*. ¶¶ 74-75.)  One of these sources, a former Minneapolis political worker, identifies the

Pl.'s Opp'n to Stanford's Special Mot. for
Expedited Relief and Dismissal and Univ. of
Washington's Mot. to Dismiss — No. 2:21-cv-
01326-TSZ

*Project Veritas v. Stanford and University of
Washington*

Ard Law Group PLLC

P.O. Box 11633
Bainbridge Island, WA 98110

mastermind of the scheme as Alli Isse Gainey—who is identified on campaign finance disclosures as a fieldwork organizer for Congresswoman Omar's campaign. (*Id*. ¶ 76.) In his interview, Community Service Officer Omar Jamal corroborates this allegation and flatly states that Mr. Gainey is known to offer cash for votes. (*Id*. ¶ 77.) The Video Report concludes with a call by Veritas for government investigations into these allegations. (*Id*. ¶ 79.)

## B.  The Authors of the EIP Article Target the Veritas Video Report.

The six authors of the EIP Article came to work together in their capacity as contributors to the Election Integrity Partnership. EIP holds itself out as a non-partisan collaboration by Stanford and UW (among others), devoted to sussing out election-related information that is false "before it [goes] viral and during viral outbreaks." (*Id*. ¶¶ 11, 15, 31.)[3] The Complaint alleges that in actuality, EIP is funded in part by major Democratic donors and from inception has been motivated by a belief that systemic voter fraud does not exist and that most reports of possible voter fraud are "disinformation" spread by the political right to "suppress voting" and "delegitimize election results without evidence." (*Id*. ¶¶ 34, 35.) Thus, EIP dedicates much of its work to labeling any reports of unlawful voting practices as "disinformation," and then contacts social media companies like Facebook and Twitter to notify them of its "findings" and demand that they remove so-called "disinformation" from their platforms. (*Id*. ¶ 35.)

Veritas thus alleges that EIP had an institutional motivation and incentive to try and discredit Veritas' Video Report on illegal voting practices and label it as another example of intentionally false "disinformation." (*Id*. ¶ 80.) But the Complaint also describes how the six individual authors of the EIP Article had their own subjective biases and motives for trying to portray the Veritas Video Report as deceptive propaganda. The Complaint presents not just allegations, but evidence to demonstrate that the individual authors of the EIP Article all lean to the political left and alleges that they thus had a bias to harm Veritas, who they viewed as aligned

---

[3] https://www.eipartnership.net/.

Pl.'s Opp'n to Stanford's Special Mot. for
Expedited Relief and Dismissal and Univ. of
Washington's Mot. to Dismiss — No. 2:21-cv-
01326-TSZ

*Project Veritas v. Stanford and University of
Washington*

Ard Law Group PLLC
P.O. Box 11633
Bainbridge Island, WA 98110

with the political right.  (*Id*. ¶¶ 45-51, 80.)  Additionally, the Complaint describes how one of the principal authors of the EIP Article, while previously employed at Facebook, was the subject of an unflattering Veritas news report on efforts by Facebook to "deboost" content posted by prominent conservatives.  (*Id*. ¶¶ 42-44.)  The Complaint alleges that this gave the author a personal reason to retaliate against Veritas.  (*Id*.)

The Complaint then describes how the EIP Article authors, confronted with a bombshell Veritas report exposing evidence of illegal voting practices favoring Democratic politicians in Minneapolis, leapt into action to try to discredit the Video Report by falsely portraying it as intentional "disinformation."  (*Id.* ¶ 80.)  On September 29, 2020—just two days after Veritas published the Video Report—the authors jointly published on EIP's website the EIP Article, titled *Project Veritas #BallotHarvesting Amplification*.  (*Id.* ¶ 81.)  Most of the EIP Article purported to be a technical study of whether and how outspoken and high-profile conservatives had worked to promote and "aggressively spread" the Video Report.  (*Id.* ¶ 82.)  But the opening paragraph took direct aim at Veritas' journalism, stating:

> On Sunday night, a right-wing activist group, Project Veritas, released a video alleging illegal ballot harvesting in Minnesota.  The video made several falsifiable claims that have either been debunked by subsequent reporting or are without any factual support.  As the video calls into question the integrity of the election using misleading or inaccurate information, we determined this video to be a form of election disinformation.  While we have reported our findings to the relevant online platforms, this video stands as an interesting example of what a domestic, coordinated elite disinformation campaign looks like in the United States.  This post will explore the timeline of how the ideas in this video were initially seeded and then aggressively spread.

(*Id.* ¶ 83.) Notably, the EIP Article did not identify *anything* in the Video Report that was "debunked," "misleading," "inaccurate," "without any factual support," or "disinformation."  Nor did it explain why the evidence in the Video Report—including footage and first-person accounts of unlawful ballot harvesting, as well as detailed statements from multiple community members attesting to rampant and systemic voter fraud—was false, misleading, or inaccurate.  (*Id.* ¶ 84.)

7

Pl.'s Opp'n to Stanford's Special Mot. for Expedited Relief and Dismissal and Univ. of Washington's Mot. to Dismiss — No. 2:21-cv-01326-TSZ

*Project Veritas v. Stanford and University of Washington*

Ard Law Group PLLC
P.O. Box 11633
Bainbridge Island, WA 98110

**C. EIP Coordinates with The New York Times to Amplify Its False Claims About Veritas' Reporting.**

By the time the EIP Article was published on EIP's website, the Veritas Video Report had already gone "viral" and was being viewed and discussed by millions of people across the country. (*Id.* ¶¶ 86, 89.)  The Complaint alleges that the EIP authors sought out a large platform to discredit the Video Report, and that they found a willing partner in The New York Times, whose own reporters were eager to diminish the Video Report because it was drawing the public's attention away from a bombshell report The Times had published contemporaneously on President Trump's tax returns.  (*Id.* ¶¶ 86-91.)

Their interests aligned, The Times and the EIP authors worked together to attack Veritas and the Video Report.  (*Id.* ¶ 92.)  The Complaint alleges that EIP author Alex Stamos used his connections at The Times to establish a backchannel to Times reporter Maggie Astor, and they created a plan.  (*Id.* ¶ 96.)  To write a *news* story for The Times attacking Veritas' journalism, the Complaint alleges that The Times needed some underlying event to "report on."  (*Id.*)  So, Ms. Astor and Mr. Stamos determined that EIP would publish its Article claiming that the Video Report was false, which The Times could then use as a basis for its own story repeating and expanding on those claims.  (*Id.*)  The Complaint offers evidence, in the form of website metadata, showing that the EIP Article authors provided Ms. Astor an advance copy of the Article so she could write a story about it before it was even published, allowing her to publish The Times' story as soon as possible after the EIP Article was posted online.  (*Id.* ¶¶ 97-100.)  The Complaint alleges that The Times and the EIP authors coordinated to ensure that neither The Times nor anyone at EIP would seek comment from Veritas about either the EIP Article or The Times' story, ensuring that Veritas would have no opportunity to respond to The Times' and the EIP authors' preconceived narratives that the Video Report was false.  (*Id.* ¶ 96.)[4]

---

[4] While Veritas' well-pleaded allegations must be taken as true at this stage of the litigation, it bears mention that the

(Continued…)

Pl.'s Opp'n to Stanford's Special Mot. for
Expedited Relief and Dismissal and Univ. of
Washington's Mot. to Dismiss — No. 2:21-cv-
01326-TSZ

*Project Veritas v. Stanford and University of
Washington*

Ard Law Group PLLC

P.O. Box 11633
Bainbridge Island, WA 98110

On September 29 and 30, 2020, The Times published three different articles about Veritas, the Video Report, and the EIP Article.  The articles all parroted the EIP Article and repeated its message, accusing Veritas of creating and spreading intentionally falsified election information, alleging that the Video Report was inaccurate, and asserting that the Video Report's allegations rested on information from "unidentified sources and with no verifiable evidence."  (*Id.* ¶¶ 104, 106-11.)  As part of their campaign against the Video Report, the EIP Article's authors also separately reached out to sites like Facebook, Twitter, Reddit, and YouTube to encourage them to take steps to censor the Video Report on their platforms.  (*Id.* ¶¶ 128-29.)  Veritas does not know, but believes it is likely given the evidence it has already uncovered and Defendants' own admissions on the EIP website, that the Defendants also communicated with other media outlets regarding the Video Report.  Defendants bragged in the EIP Article itself that they had already successfully convinced one site (TikTok) to remove the Video Report altogether, and another (Facebook) to put a label on posts sharing the Video Report identifying it as potential disinformation.  (Ex. A, Dkt. 1-1 at 7.)

### D. Veritas' Complaint Alleges That the False EIP Article and Times Stories Were Published with a Reckless Disregard for the Truth.

The Complaint alleges that the EIP Article authors knew—when they published the Article and when they coordinated with The Times to publish its stories disparaging Veritas and the Video Report—that these attacks on Veritas' journalism were false, and that it was objectively untrue that the Video Report was "without any factual support" or intentionally peddled "inaccurate information."   The Video Report presents self-recorded admissions of illegal activity by a

---

Complaint describes and copies website metadata confirming behind-the-scenes coordination between the EIP Article's authors and The Times.  (*See* Compl. ¶¶ 97-102.)  The Complaint's allegations of collusion between the EIP authors and The Times are not mere speculation.  Indeed, The New York Times has since admitted in its Answer to Veritas' Complaint in the New York litigation that it received an embargoed copy of the EIP Report before it was published.  (Def.'s Answer, at 13 ¶ 8, *Project Veritas v. N.Y. Times Co.*, No. 63921/2020 (N.Y. Sup. Ct. Apr. 12, 2021) [Dkt. 136].)  *See Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006) (courts may take judicial notice of court filings in related litigation).

Pl.'s Opp'n to Stanford's Special Mot. for Expedited Relief and Dismissal and Univ. of Washington's Mot. to Dismiss — No. 2:21-cv-01326-TSZ

*Project Veritas v. Stanford and University of Washington*

Ard Law Group PLLC

P.O. Box 11633
Bainbridge Island, WA 98110

Democratic campaign operative, as well as recorded conversations and on-camera interviews with knowledgeable community sources who expand on the scope and pervasiveness of those practices. (Compl. ¶ 113.)  And even though it is common journalistic practice to allow sources to speak with anonymity where, as here, they risk their serious reprisals for speaking out about malfeasance by powerful people, many of the Video Report's primary sources are identified by name and on the record.  (*Id.* ¶¶ 113, 117, 121.)  The Complaint alleges that the EIP Article's authors viewed the Video Report before publishing the Article purporting to describe its contents, including these on-camera interviews, recorded conversations with knowledgeable sources and witnesses, and self-recorded videos of illegal ballot harvesting.  (*Id.* ¶ 114.)  As the Complaint alleges, the EIP Article authors thus subjectively knew that the Video Report presented clear and unvarnished evidence of illegal voting practices in Minneapolis.  (*Id.* ¶ 115.)

By the same token, the Video Report's reporting on possible connections between these unlawful practices and the political machine of Congresswoman Omar were neither unsupported nor inaccurate.  For one thing, the Video Report never charges that Congresswoman Omar is personally or conclusively involved in voter fraud or ballot harvesting operations.  Instead, the Video Report accurately reports, consistent with its title, statements from members of Minneapolis's Somali-American political community detailing *direct links* between Congresswoman Omar's campaign and the unlawful practices documented in the Video Report. And again, those links are not alleged exclusively by unnamed sources.  The Video Report features two video statements of named sources making this claim.  In his recorded, on-the-record statements, for instance, Mr. Jamal connects Mr. Mohamed and his ballot harvesting activities to Congresswoman Omar's campaign and identifies Congresswoman Omar's Deputy Campaign Manager, Mr. Gainey, as a known ringleader of ballot harvesting activities. (*Id.* ¶ 122.) Mr. Awed, the local Minneapolis politician, alleges that Jamal Osman (the city council candidate and Liban Mohamed's brother) has family ties to Congresswoman Omar and that *both* are engaged in

Pl.'s Opp'n to Stanford's Special Mot. for Expedited Relief and Dismissal and Univ. of Washington's Mot. to Dismiss — No. 2:21-cv-01326-TSZ

*Project Veritas v. Stanford and University of Washington*

Ard Law Group PLLC
P.O. Box 11633
Bainbridge Island, WA 98110

corruption.   (*Id.* ¶ 78.)   And two other confidential sources back up the ties between Congresswoman Omar's campaign and ongoing schemes to harvest and exchange cash for ballots. (*Id.* ¶¶ 74-78.)

The Complaint alleges that the EIP Article authors thus subjectively knew that their statements that the Video Report was intentionally false "disinformation" that was "debunked," "without any factual support," and based on "misleading or inaccurate information" were false but published them regardless, acting with a preconceived narrative, bias, and ill-will to discredit the Video Report swiftly.  (*See, e.g.*, *id.* ¶¶ 166-178.)

**E.  Veritas Repeatedly Asks Defendants to Retract Their False Statements Over the Course of Many Months to Avoid Litigation.**

The Complaint also describes how Veritas repeatedly sought a retraction from Defendants, noting in particular that the EIP Article fails to identify anything in the Video Report that was false, inaccurate, or "disinformation"—but Defendants repeatedly refused over the course of a year.  (*Id.* ¶¶ 137-144.)  On three separate occasions, counsel for Veritas wrote to Defendants, seeking a retraction.  (*Id.* ¶¶ 137, 139, 142.)  The letters emphasized that the EIP Article did not identify anything in the Video Report that was "misleading," "inaccurate," "without evidence," or "disinformation."  (*E.g.*, *id.* ¶ 139.)  The third letter, sent on May 12, 2021, highlighted that a judge in related litigation had held that Project Veritas's claims about The New York Times articles had a "substantial basis."  (*Id.* ¶ 142.)  In response to every letter and subsequent communication from Veritas, Defendants refused to correct or retract the EIP Article.  (*Id.* ¶ 144.)

Pl.'s Opp'n to Stanford's Special Mot. for Expedited Relief and Dismissal and Univ. of Washington's Mot. to Dismiss — No. 2:21-cv-01326-TSZ

*Project Veritas v. Stanford and University of Washington*

Ard Law Group PLLC

P.O. Box 11633
Bainbridge Island, WA 98110

1     **F.  The Related New York Times Litigation.**

2          Shortly after The Times published its articles on the Video Report, Veritas sued The Times

3     and its editors and reporters involved in publishing the defamatory stories about the Video Report

4     that were based on the EIP Article at issue here.  *Project Veritas v. N.Y. Times Co.*, No. 63921/2020

5     (N.Y. Sup. Ct.) ("*N.Y. Litig.*") (complaint filed Oct. 30, 2020).  The complaint in that New York

6     state lawsuit paralleled the Complaint in this case, alleging that The Times and its journalists had

7     defamed Veritas by describing the Video Report as "disinformation" and "deceptive," as resting

8     on "unidentified sources," and as making claims "without evidence," among other defamatory

9     assertions.  (*See, e.g.*, *N.Y. Litig.* Compl. (Oct. 30, 2020) [Ex. 15 to L. Brand Decl., Dkt. 39-15,

10    ¶¶ 102, 186].)   The defendants in the New York state-court litigation moved to dismiss the

11    complaint under New York's anti-SLAPP law that required Veritas, to survive dismissal, to show

12    that its claims had a "substantial basis" in fact and law.  (*See N.Y. Litig.* Decision & Order (Mar.

13    18, 2021) [Ex. 16 to L. Brand Decl., Dkt. 39-16, at 9-11 (citing NYCPLR § 3211)].)  In seeking to

14    have the complaint dismissed, the New York defendants made the very same arguments as the

15    Defendants here: that statements describing Veritas' Video Report as "deceptive," "false," and

16    "without evidence" were either mere opinion or substantially true, and that Veritas could not show

17    that The Times defendants made those statements with actual malice.  (*Id.* at 4-9, 12-16.)

18          On March 18, 2021, the New York Supreme Court issued a Decision & Order denying

19    The Times defendants' motions to dismiss in their entirety.  (*Id.* at 16.)  In doing so, the court

20    rejected nearly every one of the arguments Defendants make in this case.  It held, for example, that

21    statements suggesting that "the [V]ideo is 'deceptive' and … 'without verifiable evidence'" could

22    reasonably be understood as statements of fact, not opinion.  (*Id.* at 7.)  And it held "that the

23    documentary  proof  and  facts  alleged  by  Veritas,"  including  evidence  of

24    The Times' coordination with the EIP Article authors, "[we]re sufficient to meet its burden" for

25    showing actual malice under New York's anti-SLAPP law.  (*Id.*  at 15.)  The Times' interlocutory

26

27    Pl.'s Opp'n to Stanford's Special Mot. for
      Expedited Relief and Dismissal and Univ. of
      Washington's Mot. to Dismiss — No. 2:21-cv-
      01326-TSZ

      *Project Veritas v. Stanford and University of
      Washington*

                                        12

                                                              Ard Law Group PLLC
                                                              P.O. Box 11633
                                                              Bainbridge Island, WA 98110

appeal of the denial of its motion to dismiss, which it is entitled to take as a matter of right under New York state court appellate procedural rules, is pending.  [*See* Dkt. 37 at 7.]

### G.  Procedural History of this Litigation.

Veritas filed this lawsuit on September 29, 2021 [Dkt. 1] and served Defendants on November 29, 2021 (Dkt. 15).  Under Federal Rule of Civil Procedure 12, Defendants' responses to the Complaint—either an answer or Rule 12 motion—were due by December 20, 2021, 21 days after Veritas served Defendants.  *See* FRCP 12(a)(1)(A)(i), (a)(4).  Instead of filing by that date, Defendants notified Veritas that they intended to file special motions for expedited relief under Washington's Uniform Public Expression Protection Act, RCW ch. 4.105, often referred to as Washington's anti-SLAPP law.[5]  [Dkts. 18 & 25.]   According to Defendants, and in direct contravention of the express text of Rule 12(a)(1), the deadlines in the anti-SLAPP statute trumped the ones in the Federal Rules, so that Defendants' motions to dismiss Veritas' Complaint were due on January 28, 2022—a full 60 days after Plaintiff served Defendants and more than a month after the response deadline established by Rule 12(a).  FRCP 12(a)(1) ("Unless another time is specified by this rule or a ***federal*** statute, the time for serving a responsive pleading is as follows…."); [Dkts. 18 & 25].  Veritas urged Defendants to abide by the deadlines and procedures set out in the Federal Rules, but Defendants steadfastly declined. [Dkt. 32 at Exs. 1-4; Dkt. 34.] Defendants did not respond to Veritas' Complaint until January 27, 2022, with Stanford filing a special motion under the    anti-SLAPP    statute    and    UW    filing    a    motion    to    dismiss    under Rule 12 (b)(6).  [Dkts. 37 & 40.]  Each Defendant also joined essentially the entirety of the other's motion.  [Dkt. 37 at 11; Dkt. 40, at 9.]

---

[5] "SLAPP" stands for "strategic lawsuit against public participation."  *Henne v. City of Yakima*, 341 P.3d 284, 285 n.1 (Wash. 2015).  Like other States' anti-SLAPP laws, Washington's establishes a "special motion to strike claim" and sets forth special procedures—including deadlines, attorney-fee-shifting provisions, and interlocutory appellate review—and evidentiary frameworks for courts to use in adjudicating such motions.  *See* RCW ch. 4.105.

Pl.'s Opp'n to Stanford's Special Mot. for Expedited Relief and Dismissal and Univ. of Washington's Mot. to Dismiss — No. 2:21-cv-01326-TSZ

*Project Veritas v. Stanford and University of Washington*

13

Ard Law Group PLLC

P.O. Box 11633
Bainbridge Island, WA 98110

1

2

**LEGAL STANDARD**

3       The Federal Rules of Civil Procedure apply in this federal action.  FRCP 1.  After Plaintiff

4    filed and served its Complaint, Defendants were obligated to respond within 21 days, either by

5    filing an answer under Rule 8 or by filing a Rule 12 motion. FRCP 12 (a)(1)(A)(i) ("Unless another

6    time is specified by this rule or *a federal statute*, the time for serving a responsive pleading is as

7    follows: A defendant must serve an answer within 21 days after being served with the summons

8    and complaint ...."); FRCP 12 (b)(6) ("A motion asserting any of these defenses," including a

9    motion for failure to state a claim upon which relief can be granted, "must be made before pleading

10   if a responsive pleading is allowed.").

11       Defendants purport to make two motions: one under Washington's anti-SLAPP statute and

12   one under Federal Rule of Civil Procedure 12(b)(6).  For the reasons set forth below, Washington's

13   anti-SLAPP statute does not apply in this federal-court action, and, separately, UW is statutorily

14   barred from invoking it.  With respect to Defendants' Rule 12 (b)(6) motions, Defendants bear the

15   burden of demonstrating that Plaintiff has not stated a cognizable claim for relief, *see* 5B CHARLES

16   ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 1357 (3d ed.) (noting

17   that "[a]ll federal courts are in agreement" on this point), which Rule 8(a)(2) defines to require

18   only "a short and plain statement of the claim showing that the pleader is entitled to relief."  In

19   adjudicating a motion to dismiss, the Court must construe the Complaint liberally and "must accept

20   as true all facts alleged [therein] and draw all reasonable inferences in favor of the plaintiff." *Khoja*

21   *v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1003 (9th Cir. 2018).  To survive a motion to dismiss,

22   a complaint need only state a "plausible" claim for relief—"a low standard."  *Bell Atl. Corp. v.*

23   *Twombly*, 550 U.S. 544, 556 (2007); *Shaver v. Operating Eng'rs Local 428 Pension Tr. Fund*, 332

24   F.3d 1198, 1203 (9th Cir. 2003).  This "does not impose a probability requirement," and "a well-

25   pleaded complaint may proceed even if it strikes a savvy judge that actual proof of the facts alleged

26   is improbable and 'that a recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556.

27

Pl.'s Opp'n to Stanford's Special Mot. for
Expedited Relief and Dismissal and Univ. of
Washington's Mot. to Dismiss — No. 2:21-cv-
01326-TSZ

*Project Veritas v. Stanford and University of
Washington*

Ard Law Group PLLC

P.O. Box 11633
Bainbridge Island, WA 98110

1   Additionally, courts "cannot resolve" factual questions or make "credibility determinations" at the

2   motion-to-dismiss stage.   *Newcal Indus., Inc. v. Ikon Office Sol.*, 513 F.3d 1038, 1055

3   (9th Cir. 2008); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). That is equally true in

4   First Amendment and defamation cases, like this one, where Defendants contend they did not act

5   with "actual malice."   *E.g.*, *Palin v. N.Y. Times Co.*, 940 F.3d 804, 810 (2d Cir. 2019).

6

7                                    **ARGUMENT**

8   **I.    Washington's Anti-SLAPP Statute Does Not—And Cannot—Apply in This Case.**

9      **A. Washington's Anti-SLAPP Statute's Plain Language Expressly Excludes
           Governmental Units—Like The University of Washington—From Its Scope.**

10          On its face, Washington's anti-SLAPP statute does not apply to lawsuits brought "[a]gainst

11  a governmental unit or an employee or agent of a governmental unit acting or purporting to act in

12  an official capacity." RCW 4.105.010(3)(a)(i). UW is a governmental unit. *See* RCW ch. 28B.20.

13  And the Complaint alleges, and UW does not dispute, that the UW personnel who co-authored and

14  co-published the EIP Article did so in their official capacities as UW's employees and agents.

15  (*E.g.*, Compl. ¶ 152.)   Therefore, under RCW 4.105.010(3)(a)(i), UW cannot invoke the anti-

16  SLAPP statute.

17          UW acknowledges this plain meaning of RCW 4.105.010(3)(a)(i) but urges the Court to

18  disregard it and allow UW to invoke the anti-SLAPP statute—claiming that doing so would further

19  the Washington Legislature's purpose in enacting the statute.  [Dkt. 40 at 9.]  As the U.S. Supreme

20  Court has repeatedly made clear, however, it is not the proper role of federal courts to rewrite

21  statutes. *See, e.g.*, *Nasrallah v. Barr*, 140 S. Ct. 1683, 1692 (2020).  And that is no less true simply

22  because a party asserts that a particular revision might better effectuate a legislative body's policy

23  concerns. *See, e.g.*, *Henry Schein, Inc. v. Archer & White Sales, Inc.*,139 S. Ct. 524, 531 (2019);

24  *Iselin v. United States*, 270 U.S. 245, 250-51 (1926) (Brandeis, J.) ("What the Government asks is

25  not a construction of a statute, but, in effect, an enlargement of it by the court, so that what was

26

27  Pl.'s Opp'n to Stanford's Special Mot. for
    Expedited Relief and Dismissal and Univ. of
    Washington's Mot. to Dismiss — No. 2:21-cv-
    01326-TSZ

    *Project Veritas v. Stanford and University of
    Washington*

15

Ard Law Group PLLC

P.O. Box 11633
Bainbridge Island, WA 98110

1   omitted, presumably by inadvertence, may be included within its scope. To supply omissions

2   transcends the judicial function.").

3          Unsurprisingly, none of the cases UW cites in its motion calls into question those bedrock

4   principles of judicial review.  Rather, in urging this Court to ignore the anti-SLAPP statute's plain

5   language, UW cites a collection of irrelevant cases about the parameters of the First Amendment.

6   *E.g.*, *Garcetti v. Ceballos*, 547 U.S. 410 (2006) (addressing whether a public employee's job-

7   related speech about a matter of public concern is protected by the First Amendment).  But the

8   Washington State Legislature—armed with this publicly available and preexisting caselaw

9   interpreting the First Amendment—made an affirmative decision to exempt from its anti-SLAPP

10  statute government entities acting in their official capacities.  The Court should apply the statute's

11  plain language and hold that UW is statutorily barred from seeking relief under it.

12  **B.  Because State Anti-SLAPP Statutes, Like Washington's, Answer the Same Questions**
13      **Presented by the Federal Rules, They Cannot Apply in Federal Court.**

14         Defendants' anti-SLAPP motions fail for another, independent reason: State anti-SLAPP

15  statutes, like Washington's, do not apply in federal court.  Under controlling U.S. Supreme Court

16  precedent, announced in *Shady Grove Orthopedic Associates, P.A. v. Allstate Insurance Co*, if a

17  state law and a valid Federal Rule of Civil Procedure "answer the same question," then the Federal

18  Rule governs and the state law cannot apply.  559 U.S. 393, 398-99 (2010).  Because state anti-

19  SLAPP laws, like Washington's, inevitably answer the same questions as several Federal Rules of

20  Civil (and Appellate) Procedure, they have no place in federal court.  That is what every single

21  federal court of appeals to have applied *Shady Grove*'s majority opinion has held.  In the face of

22  *Shady Grove* and the unanimous response from federal courts of appeals applying its central

23  holding, Defendants are left to rely principally on a handful of Ninth Circuit decisions that have

24  all either been abrogated by *Shady Grove* or that have absolutely nothing to do with *Shady Grove*.

25  This Court, however, must follow *Shady Grove* and, consequently, must hold that Defendants'

26  anti-SLAPP motions are not cognizable in federal court.

27

16

Pl.'s Opp'n to Stanford's Special Mot. for
Expedited Relief and Dismissal and Univ. of
Washington's Mot. to Dismiss — No. 2:21-cv-
01326-TSZ

*Project Veritas v. Stanford and University of
Washington*

Ard Law Group PLLC

P.O. Box 11633
Bainbridge Island, WA 98110

**C. In *Shady Grove*, the Supreme Court Held That When a Valid Federal Rule Answers the Same Question as a State Law, a Federal Court Sitting in Diversity Must Apply the Federal Rule, Not the State Law.**

*Shady Grove* concerned whether a New York law prohibiting class actions seeking penalties or statutory minimum damages precluded a federal court, sitting in diversity, from entertaining a class action under Federal Rule 23, where the claims sought penalties or statutory minimum damages. *Id.* at 396 & n.1. The district court held that the state law applied in federal court and relied on it to dismiss the case. *Id.* at 397. The Second Circuit affirmed. *Id.* at 398. It held that the state law applied in federal court because the state law did not "cause a direct collision with" Rule 23, and because "the twin aims of *Erie*" would be served by applying the state law. *See Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 549 F.3d 137, 143-45 (2d Cir. 2008).

The U.S. Supreme Court reversed, holding that the New York law could not apply in federal court. *Shady Grove*, 559 U.S. at 416. In so holding, the Court set forth a new framework for determining when state laws can apply in federal court:

> We must first determine whether [a Federal Rule of Civil Procedure] answers the question in dispute. If it does, it governs—[state] law notwithstanding—unless it exceeds statutory authorization or Congress's rulemaking power. ***We do not wade into Erie's murky waters unless the federal rule is inapplicable or void.***

*Id.* at 398. Notably, the majority decision emphasized that if a valid federal rule "answers the question in dispute, it governs," ***regardless*** of the "policies [the state law] pursue[s]" or the "subjective intention of the state legislature" in enacting it. *Id.* at 404-06; *see also Jones v. United Parcel Serv., Inc.*, 674 F.3d 1187, 1203 (10th Cir. 2012). Thus, courts "need not grapple with what 'substantive' means. In effect, the line between substantive and procedural is ***irrelevant*** so

Pl.'s Opp'n to Stanford's Special Mot. for Expedited Relief and Dismissal and Univ. of Washington's Mot. to Dismiss — No. 2:21-cv-01326-TSZ

*Project Veritas v. Stanford and University of Washington*

1    long as a Federal Rule is construed broadly enough to win, regardless of whatever a statute says."

2    *Pledger v. Lynch*, 5 F.4th 511, 532 (4th Cir. 2021).[6]

3
     **D.  Every Federal Court of Appeals to Address the Question Has Held That, Under *Shady**
4    ***Grove*'s Majority Opinion, State Anti-SLAPP Statutes Like Washington's Cannot**
     **Apply in Federal Courts.**
5
            Since *Shady Grove*, five federal courts of appeals have held that it precludes federal courts
6
     from applying state anti-SLAPP statutes.  *See La Liberte v. Reid*, 966 F.3d 79, 86-88 & n.1 (2d
7
     Cir. 2020) (California's anti-SLAPP statute cannot apply in federal court); *Klocke v. Watson*, 936
8
     F.3d 240, 244-49 (5th Cir. 2019) (Texas'); *Carbone v. Cable News Network, Inc.*, 910 F.3d 1345,
9
     1349-59 (11th Cir. 2018) (Georgia's); *Los Lobos Renewable Power, LLC v. AmeriCulture, Inc.*,
10
     885 F.3d 659, 673 (10th Cir. 2018) (New Mexico's); *Abbas v. Foreign Policy Grp., LLC*, 783 F.3d
11
     1328, 1333-37 (D.C. Cir. 2015) (Kavanaugh, J.) (D.C.'s).  Another federal court of appeals has
12
     affirmed a district court decision holding the same thing about the predecessor to the anti-SLAPP
13
     statute on which Defendants rely in this case.  *See Intercon Sols., Inc. v. Basel Action Network*,
14
     969 F.Supp.2d 1026, 1050 (N.D. Ill. 2013), *aff'd*, 791 F.3d 729 (7th Cir. 2015) (Washington's
15
     anti-SLAPP statute).  Only the First Circuit has held otherwise, but its opinion, issued just months
16
     after *Shady Grove*, misread a one-Justice concurrence as the majority opinion.  *See Godin v.*
17
     *Schencks*, 629 F.3d 79, 88-90 (1st Cir. 2010); *see also Intercon Sols.*, 969 F. Supp. 2d at 1050
18
     (explaining that *Godin* improperly rested on Justice Stevens's solo concurrence, not the majority
19
     opinion).
20
            It is no surprise that every court to have applied *Shady Grove's* majority decision has held
21
     that state anti-SLAPP statutes have no place in federal court.  As those courts have explained, anti-
22
     SLAPP statutes inevitably answer the same questions as Federal Rules of Civil and Appellate
23

24
     _____
25   [6] While some Justices (including Justice Stevens in his solo concurrence) would have instead looked to the substantive
     or procedural nature of the state law at issue to determine what law to apply, *Shady Grove*, 559 U.S. 393, 417 (2010)
26   (Stevens, J., concurring), only the test announced by Justice Scalia received the endorsement of five Justices, *id.* at
     395 ("Justice Scalia … delivered the opinion of the Court with respect to Parts I and II-A.").

27                                                             18
     Pl.'s Opp'n to Stanford's Special Mot. for                          Ard Law Group PLLC
     Expedited Relief and Dismissal and Univ. of
     Washington's Mot. to Dismiss — No. 2:21-cv-                          P.O. Box 11633
     01326-TSZ                                                            Bainbridge Island, WA 98110

     *Project Veritas v. Stanford and University of*
     *Washington*

Procedure, all while requiring things the Federal Rules do not. *See, e.g.*, *La Liberte*, 966 F.3d at 87. Washington's anti-SLAPP statute is no exception. For example:

- Under Rule 12(b)(6), ***the moving party*** seeking to have a claim dismissed bears the burden of showing that the non-moving party has failed to state a claim. *See* 5B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 1357 (3d ed.). Washington's anti-SLAPP statute answers the same question—Who bears the burden of proof on a pre-discovery motion to dismiss?—differently, requiring dismissal unless ***the non-moving party*** can "establish a prima facie case as to each essential element of the cause of action." RCW 4.105.060(1)(c)(i).

- Under Rule 12, a federal court evaluating a motion to dismiss before discovery may "consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." *Akhtar v. Mes*a, 698 F.3d 1202, 1212 (9th Cir. 2012) (citation omitted). And under Rule 12(d), a federal court "must" convert a Rule 12 motion to a Rule 56 motion where, as here, evidence is presented outside the four corners of the complaint and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." FRCP 12(d); *see United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003); Order at 4, *US Dominion, Inc. v. My Pillow, Inc.*, No. 1:12-cv-445 (D.D.C. Mar. 1, 2022) [Dkt. 120] (citing *Menoken v. Dhillon*, 975 F.3d 1, 8 (D.C. Cir. 2020)). Washington's anti-SLAPP statute answers the same question—What allegations or evidence may courts consider on a pre-discovery motion to dismiss?—differently, requiring that courts consider any evidence submitted by the parties so long as that evidence "could be considered in ruling on a motion for summary judgment under superior court civil rule 56." RCW 4.105.050.

- Under Rule 56, a party moving for summary judgment bears the burden "to show initially the absence of a genuine issue concerning any material fact." *Celotex v. Catrett Corp.*,

Pl.'s Opp'n to Stanford's Special Mot. for Expedited Relief and Dismissal and Univ. of Washington's Mot. to Dismiss — No. 2:21-cv-01326-TSZ

*Project Veritas v. Stanford and University of Washington*

477 U.S. 317, 325 (1986).  Washington's anti-SLAPP statute answers the same question—Who bears what burden of proof at the summary judgment stage of the case?—differently, allowing the moving party to prevail if the non-moving party "fails to establish a prima facie case as to each essential element of the cause of action."  RCW 4.105.060(1)(c)(i).

- Under Rule 12, a defendant typically has 21 days from service of process to submit a responsive pleading or motion.  *See* FRCP 12(a)(1), (a)(4).  Washington's anti-SLAPP statute answers the same question—By when must a defendant respond to a complaint?—differently, requiring that defendants be allowed 60 days from service of process within which to file a special motion. RCW 4.105.010(2).

- Under Rule 11, a party may recover costs and attorney's fees only if an opposing party's claims were frivolous or presented for an improper purpose.  *See* FRCP 11(b)-(c). Washington's anti-SLAPP statute answers the same question—When is a prevailing party entitled to recover its costs and attorney's fees?—differently, requiring the award of such costs and fees automatically whenever a party prevails on a special motion to strike. RCW 4.105.090(1).

As those examples illustrate, nearly every provision in the anti-SLAPP statute answers one or more questions that are answered directly by the Federal Rules of Civil Procedure.  And *Shady Grove* is clear about what happens in that scenario:  the Federal Rules govern and the anti-SLAPP statute cannot apply.

**E. Defendants' Arguments for Applying the Anti-SLAPP Statute Rely on Decisions *Shady Grove* Abrogated.**

In support of applying the anti-SLAPP statute here, Defendants rely entirely on decisions that were either abrogated by *Shady Grove* or that themselves rely on decisions abrogated by *Shady Grove*.  The progenitor of all those decisions is *United States ex rel. Newsham v. Lockheed Missiles & Space Co.*, 190 F.3d 963 (9th Cir. 1999), which was decided more than a decade before *Shady Grove*.  In *Newsham*, the Ninth Circuit held that California's anti-SLAPP statute applied in

Pl.'s Opp'n to Stanford's Special Mot. for Expedited Relief and Dismissal and Univ. of Washington's Mot. to Dismiss — No. 2:21-cv-01326-TSZ

*Project Veritas v. Stanford and University of Washington*

Ard Law Group PLLC

P.O. Box 11633
Bainbridge Island, WA 98110

1    federal court because the statute did not "directly colli[de]" with—and thus could "exist side by

2    side" with—Federal Rules of Civil Procedure 8, 12, and 56, and *Erie*'s twin aims were served by

3    its application.  *Id.* at 972.  A few years later, in *Batzel v. Smith*, 333 F.3d 1018 (9th Cir. 2003),

4    the Ninth Circuit expanded on *Newsham*, holding that, "because California law recognizes the

5    protection of the anti-SLAPP statute as substantive immunity from suit, this Court, sitting in

6    diversity, will do so as well."  *Id.* at 1025-26.  Since then, the Ninth Circuit has reflexively cited

7    to *Newsham* or *Batzel* to support applying state anti-SLAPP statutes in federal court, without ever

8    addressing whether those decisions remain good law.  *See, e.g.*, *Clifford v. Trump*,

9    818 F. App'x 746, 747 (9th Cir. 2020) (citing *Newsham*); *RLI Ins. Co. v. Langan Eng'g, Env't,*

10   *Surveying & Landscape Architecture, D.P.C.*, 834 F. App'x 362, 363 (9th Cir. 2021) (citing

11   *Batzel*).

12          The Ninth Circuit has yet to address the relationship between *Shady Grove* and *Newsham*.[7]

13   This is significant because other circuits have recognized that *Shady Grove* marked "a turning

14   point in the Supreme Court's doctrine regarding the relationship between the Federal Rules and

15   state law," *Stender v. Archstone-Smith Operating Tr.*, 958 F.3d 938, 945-46 (10th Cir. 2020), and

16   it flatly repudiated the reasoning underlying *Newsham*, *Batzel*, and their descendants.  Under *Shady*

17   *Grove*, "the relevant inquiry isn't whether the federal and state rules can coexist"—as the *Newsham*

18   panel asked, *see* 190 F.3d at 973—"but whether [valid] Federal Rules 'answer[] the question in

19   dispute.'"  *Gallivan v. United States*, 943 F.3d 291, 296 (6th Cir. 2019).  And *Erie*, which was

20   central to *Newsham*, *see* 190 F.3d at 972, is immaterial under *Shady Grove*, *see* 559 U.S. at 398

21   (no "wad[ing] into *Erie*'s murky waters").  *Shady Grove* thus unambiguously abrogated the

22   approach from *Newsham*.  And when intervening Supreme Court authority "undercut[s] the theory

23

---

24   [7] Since *Shady Grove*, litigants before the Ninth Circuit have simply failed to brief the *Shady Grove* question and have

25   incorrectly assumed state anti-SLAPP statutes apply.  The Ninth Circuit has its first opportunity to consider the
     question in two cases that are currently fully briefed and awaiting oral argument there.  *See CoreCivic, Inc. v. Candide*

26   *Grp., LLC*, No. 20-17285 (9th Cir.) (appeal docketed Nov. 20, 2020); *Planet Aid, Inc. v. Reveal*, No. 21-15690 (9th
     Cir.) (appeal docketed Apr. 20, 2021).

27   Pl.'s Opp'n to Stanford's Special Mot. for
     Expedited Relief and Dismissal and Univ. of
     Washington's Mot. to Dismiss — No. 2:21-cv-
     01326-TSZ

     *Project Veritas v. Stanford and University of*
     *Washington*

21

Ard Law Group PLLC

P.O. Box 11633
Bainbridge Island, WA 98110

1   or reasoning underlying [a] prior circuit precedent in such a way that the cases are clearly

2   irreconcilable," "a district court … should consider [itself] bound by the intervening higher

3   authority and reject the prior [circuit precedent] as having been effectively overruled."

4   *Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003).

5        Ninth Circuit decisions postdating *Shady Grove* also provide no support for ignoring *Shady*

6   *Grove*'s clear import.  Defendants rely on decisions like *Planned Parenthood Federation of*

7   *America, Inc. v. Center for Medical Progress*, 890 F.3d 828 (9th Cir. 2018), and

8   *Sarver v. Chartier*, 813 F.3d 891 (9th Cir. 2016), which purport to apply parts of state anti-SLAPP

9   laws.[8]  But those decisions do not even mention *Shady Grove*, much less perform the analysis that

10  *Shady Grove* requires.   Indeed, none of the briefs presented to the Ninth Circuit in

11  *Planned Parenthood* or *Sarver* mentioned *Shady Grove* or purported to do a *Shady Grove* analysis.

12  And when a question is not presented in a case, the decision in that case cannot be read to hold

13  anything about the answer to that question.  *See Webster v. Fall*, 266 U.S. 507, 511 (1925)

14  ("Questions which merely lurk in the record, neither brought to the attention of the court nor ruled

15  upon, are not to be considered as having been so decided as to constitute precedents."):

16  *United States v. L.A. Tucker Truck Lines*, 344 U.S. 33, 37-38 (1952) (prior decision is not binding

17  precedent on point neither raised by counsel nor discussed in the opinion of the court in that case);

18  *Sakamoto v. Duty Free Shoppers, Ltd.*, 764 F.2d 1285, 1288 (9th Cir. 1985) ("Such unstated

19  assumptions on non-litigated issues are not precedential holdings binding future decisions.").

20  The Ninth Circuit's post-*Shady Grove* decisions thus cannot be read to support the proposition for

21  which Defendants cite them:  that the Ninth Circuit, in contrast to every other federal court of

22  appeals to have addressed the issue under the majority opinion in *Shady Grove*, has silently held

23  that *Shady Grove* permits application of state anti-SLAPP statutes in federal court.

24

25  ---

26  [8] As one judge has noted, the panel in *Planned Parenthood* did not so much apply the anti-SLAPP statute as rewrite
    it to avoid a conflict with the Federal Rules of Civil Procedure.  *See CoreCivic Inc v. Candide Grp. LLC*, No. 20-cv-
    03792, 2021 WL 1267259 (N.D. Cal. Apr. 6, 2021).

27                                             22

    Pl.'s Opp'n to Stanford's Special Mot. for                          Ard Law Group PLLC
    Expedited Relief and Dismissal and Univ. of
    Washington's Mot. to Dismiss — No. 2:21-cv-                         P.O. Box 11633
    01326-TSZ                                                           Bainbridge Island, WA 98110

    *Project Veritas v. Stanford and University of*
    *Washington*

The only other Ninth Circuit pronouncement Defendants cite in support of applying state anti-SLAPP statutes in federal court is a four-judge concurrence in the denial of rehearing *en banc* in *Makaeff v. Trump University, LLC*, 736 F.3d 1180, 1182 (9th Cir. 2013) (opinion of Wardlaw, Callahan, Fletcher, and Gould, JJ.).  There are several reasons why that opinion does not help Defendants here.  For starters, the four judges—out of 29 active judges on the Ninth Circuit—who signed the concurring opinion would have applied the state anti-SLAPP statute because, they contended, "by creating a separate and additional theory upon which certain kinds of suits may be disposed of before trial, [the statute] supplement[ed] rather than conflict[ed] with the Federal Rules." *Id.*  As four *other* Ninth Circuit judges pointed out in a separate opinion dissenting from denial of rehearing en banc in *Makaeff*, that is precisely the reasoning the Supreme Court rejected in *Shady Grove*.  *See id.* at 1189-90 (opinion of Watford, Kozinski, Paez, and Bea, JJ.).  The concurring judges' other reason for supporting the denial of rehearing en banc was their belief that refusing to apply a state anti-SLAPP law in federal court "would create a circuit split." *Id.* at 1180 (Wardlaw, Callahan, Fletcher, and Gould, JJ., concurring in denial of reh'g en banc).  History has shown the opposite is true: applying a state anti-SLAPP statute in federal court would create, not prevent, a circuit split.

There are other reasons to disregard the four-judge concurrence in *Makaeff*, in addition to its being demonstrably wrong.  First, "an opinion concurring in the denial of rehearing en banc is not binding" and has no precedential weight.  *Shepherd v. Unknown Party*, 5 F.4th 1075, 1077 (9th Cir. 2021).  Furthermore, one of the four signatories to the concurring opinion has publicly renounced the opinion's position and is now on record that state anti-SLAPP laws have no place in federal court.  *See Travelers Cas. Ins. Co. v. Hirsh*, 831 F.3d 1179, 1186 (9th Cir. 2016) (Gould, J., concurring) ("I am now persuaded by Judge Kozinski's reasoning, as well as that of the D.C. Circuit in [*Abbas*], that an anti-SLAPP motion has no proper place in federal court in light of

23

Pl.'s Opp'n to Stanford's Special Mot. for Expedited Relief and Dismissal and Univ. of Washington's Mot. to Dismiss — No. 2:21-cv-01326-TSZ

*Project Veritas v. Stanford and University of Washington*

Ard Law Group PLLC
P.O. Box 11633
Bainbridge Island, WA 98110

the Federal Rules of Civil Procedure.").  Thus, Defendants' position finds scant support even in non-binding pronouncements by Ninth Circuit judges.

That leaves Defendants to rely on federal district court decisions in which courts have applied state anti-SLAPP statutes.  [*E.g.*, Dkt. 37, at 16 n.7.]  This Court is not obligated to follow those (erroneous) decisions.  District courts in this Circuit are understandably reluctant to recognize Ninth Circuit decisions as null and void, but that is precisely what Ninth Circuit precedent requires in these circumstances, when it is clear the Supreme Court has abrogated prior Ninth Circuit decisions.  *See Miller*, 335 F.3d at 900.  This Court should follow *Shady Grove* and hold that Defendants' anti-SLAPP motions are not cognizable in federal court.[9]

## II.   Defendants' Rule 12 Motions Should Be Denied Because Veritas Has Stated Plausible Claims for Relief.

Under the applicable standards of Rules 8 and 12, Defendants' motions should be denied not only because they are procedurally defaulted, but also because Veritas has more than sufficiently stated plausible claims for relief.  Defendants' arguments that the statements at issue are non-actionable opinion, that they are true, and that Veritas has not sufficiently alleged actual malice all ignore the well-pleaded allegations in the Complaint and improperly call upon the Court to resolve factual disputes and draw inferences against Veritas—relying in large part on evidence attached to their motions that falls outside the four corners of Veritas' Complaint, which is not appropriate under Rule 12(b)(6).  As set forth below, none of Defendants' arguments are availing under controlling pleading standards and substantive law. And this Court should decline Defendants' invitation to jump the gun by applying evidentiary standards and burdens of proof

---

[9] To the extent this Court concludes that Defendants' anti-SLAPP motions are even cognizable in this Court—and *Shady Grove* makes clear they are not—the Ninth Circuit's decision in *Planned Parenthood* states that district courts should evaluate the motions under the framework set out in Rule 12(b)(6), not the framework set out in the anti-SLAPP statute.  *See* 890 F.3d at 833 (when defendant's anti-SLAPP motion relies "on purely legal arguments," the motion is analyzed pursuant to Rules 8 and 12).  Defendants have acknowledged that much.  [*See* Dkt. 37 at 16.]

24

Pl.'s Opp'n to Stanford's Special Mot. for
Expedited Relief and Dismissal and Univ. of
Washington's Mot. to Dismiss — No. 2:21-cv-
01326-TSZ

*Project Veritas v. Stanford and University of
Washington*

Ard Law Group PLLC

P.O. Box 11633
Bainbridge Island, WA 98110

1    that have no place at the motion-to-dismiss stage.  Under the appropriate standard, Defendants'

2    motions must be denied.

3        **A. Defendants' Rule 12 Motions Are Untimely and Defaulted Under the Federal Rules.**

4            As an initial matter, and as Veritas has previously argued, Defendants' Rule 12 motions

5    are untimely because they were filed nearly a month after the expiration of Rule 12(a)'s deadline

6    for filing a responsive pleading or motion.  *See* Pl.'s Opp'n to Defs.' Mot. to Modify Case Schedule

7    & Cross-Mot. for Order of Default [Dkt. 33 at 9-12].  Defendants have maintained that their

8    motions are timely under RCW 4.105.030,[10] notwithstanding the ordinary rule that deadlines

9    established under state procedural laws cannot supplant deadlines specified in the Federal Rules.

10   [Dkt. 33 at 9-12 (discussing *Shady Grove*)]; *see also* FRCP 12(a)(1)(A)(i).  Veritas recognizes that

11   this Court has allowed Defendants' untimely motions and respects that ruling,[11] but notes its

12   continuing objection here to preserve the issue.

13       **B. The Statements in the EIP Article Are Statements Capable of Being Proven True or
14       False—Not Non-Actionable Pure Opinion.**

15           Defendants argue that the EIP Article's defamatory statements are mere opinion, incapable

16   of being proven true or false.  But Defendants ignore the relevant legal standard, under which they

17   must establish that ***no reasonable reader*** of the EIP Article could understand it to be making

18   factual assertions about Veritas' Video Report.  *See Flowers v. Carville*, 310 F.3d 118, 1128 (9th

19   Cir. 2002).  As the U.S. Supreme Court has explained, there is no "wholesale" defamation

20   "exemption for anything that might be labeled 'opinion,'" and even words expressly couched in

21   terms of opinion can be actionable if they imply an assertion of fact about the plaintiff.

22   *Milkovich v. Lorain J. Co*., 497 U.S. 1, 18-21 (1990); *see also Lieberman v. Fieger*, 338 F.3d 1076,

23   1080 (9th Cir. 2003) (a statement is considered a non-actionable, pure "opinion" only if the writing

24   does not state or imply "verifiable assertions").  And if any reasonable reader could interpret a

25

26   [10] *See* Defs.' Mot. to Modify Case Schedule [Dkt. 32 at 3-4].
     [11] *See* Minute Order [Dkt. 36].

27   Pl.'s Opp'n to Stanford's Special Mot. for                  25                 Ard Law Group PLLC
     Expedited Relief and Dismissal and Univ. of                                    P.O. Box 11633
     Washington's Mot. to Dismiss — No. 2:21-cv-                                    Bainbridge Island, WA 98110
     01326-TSZ

     *Project Veritas v. Stanford and University of
     Washington*

statement at issue as applying facts, then dismissal on "opinion" grounds is not warranted. *Flowers*, 310 F.3d at 1128 (holding, "if a statement is susceptible of different constructions, [even] one of which is defamatory, resolution of the ambiguity is a question of fact for the jury") (internal citations omitted); *see also Kaelin v. Globe Commc'ns Corp.*, 162 F.3d 1036, 1040 (9th Cir. 1998).

Under Washington law, to determine if a writing is capable of being interpreted as conveying factual assertions, courts are obligated to take a holistic, context-sensitive review of the statement. Factors a court should consider include (1) the nature of the medium in which the statement appeared; (2) the nature of the audience the statement was directed to; and (3) whether the statement implied knowledge of undisclosed facts. *Caruso v. Local Union No. 690*, 730 P.2d 1299, 1304 (1987); *Wood v. Battle Ground Sch. Dist.*, 27 P.3d 1208, 1221 n.11 (Wash. Ct. App. 2001).

On their face, the statements in the EIP Article are all capable of being interpreted by reasonable readers as assertions of fact. The EIP Article stated:

> On Sunday night, a right-wing activist group, Project Veritas, released a video alleging illegal ballot harvesting in Minnesota. The video made several falsifiable claims that have either been debunked by subsequent reporting or are without any factual support. As the video calls into question the integrity of the election using misleading or inaccurate information, we determined this video to be a form of election disinformation. While we have reported our findings to the relevant online platforms, this video stands as an interesting example of what a domestic, coordinated elite disinformation campaign looks like in the United States. This post will explore the timeline of how the ideas in this video were initially seeded and then aggressively spread.

(Compl. ¶ 83.) The gist of the EIP Article's claims regarding Veritas' Video Report, read in the context of the entirety of the EIP Article on EIP's website, published by a "partnership" among "the nation's leading institutions focused on researching mis- and disinformation in the social media landscape" whose mission is to ensure "election integrity" by "identify[ing] and analyz[ing]

Pl.'s Opp'n to Stanford's Special Mot. for
Expedited Relief and Dismissal and Univ. of
Washington's Mot. to Dismiss — No. 2:21-cv-
01326-TSZ

*Project Veritas v. Stanford and University of Washington*

Ard Law Group PLLC

P.O. Box 11633
Bainbridge Island, WA 98110

online mis- and disinformation,"[12] is that Veritas produced a piece of journalism with provably false claims ("falsifiable claims"), using "misleading or inaccurate information," "without any factual support," that were demonstrated to be false—"debunked"—by other news outlets, and that Veritas intentionally created and peddled this "disinformation."   Application of Washington's three-part analysis for distinguishing verifiable statements of fact from pure opinion underscores that these statements are actionable.

**1. The statements in the EIP Article are all capable of being construed as assertions of fact.**

The analysis should begin with the words themselves, which must be read in conjunction with one another.  *See Hanson v. City of Snohomish*, 828 P.2d 1133, 1337 (Wash. Ct. App. 1992), *rev'd in part and on other grounds*, 852 P.2d 295 (Wash. 1993) ("While the statements viewed individually might appear relatively benign, taken together they could be construed to create a significant misimpression regarding [the incident described].").   The EIP Article begins by claiming that the Veritas Report made several "falsifiable" claims.  (Compl. ¶ 83.)  By definition, this word means assertions that are ***capable of being proven false***.[13]  The EIP Article then goes on to claim that Veritas' reporting was "debunked," (*id.*), which means, "to show that something is not true."[14]  Again, a reasonable readers could understand the assertion that a journalist's reporting was "debunked" to be a factual one.[15]  Next, the EIP Article asserts that the Video Report made falsifiable and debunked claims that are "without any factual support."  (*Id.*)  Of course, whether a claim does or does not have *factual* support is a matter of verifiable fact, not opinion—and

---

[12] https://www.eipartnership.net/.

[13] *See Falsifiable*, Cambridge Dictionary, https://dictionary.cambridge.org/us/dictionary/english/falsifiable, (last visited Mar. 1, 2022).

[14] *Debunk*, Cambridge Dictionary, www.dictionary.cambridge.org/us/dictionary/english/debunk (last visited Feb. 15, 2022).

[15] Defendants cite alternate definitions of the term "debunked" and argue that they are in the vein of opinion, but again the question for the Court at this stage is whether any reasonable readers could understand "debunked" to be an assertion of fact.  *See Knievel v. ESPN*, 393 F.3d 1068, 1080 (9th Cir. 2005) (motion to dismiss may be granted only if "the court can say that the [statement] is not reasonably capable of *any* defamatory meaning and cannot be reasonably understood in *any* defamatory sense").

Pl.'s Opp'n to Stanford's Special Mot. for
Expedited Relief and Dismissal and Univ. of
Washington's Mot. to Dismiss — No. 2:21-cv-
01326-TSZ

*Project Veritas v. Stanford and University of Washington*

Ard Law Group PLLC

P.O. Box 11633
Bainbridge Island, WA 98110

Defendants do not argue otherwise.  (*See* Dkt. 37 at 15-16 (contending that it is objectively true that the claims in the video lacked factual support).)

The EIP Article then states that the Video Report "calls into question the integrity of the election using misleading or inaccurate information."  (Compl. ¶ 83.)  These allegations too are capable of being interpreted as factual assertions.  Of course, whether statements or information in the Video Report are accurate—that is, "free from mistakes or errors,"[16]—is certainly susceptible to verification, particularly because the Video Report itself is candid about the sources of the statements and information on which it relies.  And while Defendants contend that whether something is "misleading" is inherently subjective opinion, caselaw in this Circuit holds otherwise—particularly where, as here, an allegation of intentional "misleading" is made by an entity that holds itself out as an expert ***in researching*** and identifying "misleading" claims about election integrity.  *See Flowers*, 310 F.3d 1118, 1127-28 (9th Cir. 2002) (statements that plaintiff "selectively edited" an audiotape were actionably defamatory because they accused the plaintiff of trying to "conceal the real state or actual quality of [the tape] by deceptive alteration"); *Marx v. Comput. Scis. Corp.*, 507 F.2d 485, 492 (9th Cir. 1974) (whether company failed in its duty to ensure that its statements were "'not misleading' is a factual determination properly left to the jury"); *see also, e.g.*, *SEG, Inc. v. Stillman*, No. B151712, 2003 WL 21197133, at *9 (Cal. Ct. App. May 22, 2003) (statements suggesting that reality game show was rigged and "fraudulently deceived the viewing public" were not only capable of defamatory meaning but were defamatory *per se*); *Budget Van Lines, Inc. v. Better Bus. Bureau of the Southland, Inc.*, No. B235338, 2013 WL 4494318, at *9 (Cal. Ct. App. Aug. 20, 2013) (BBB's statement accusing

---

[16] *See Accurate*, MerriamWebster.com, https://www.merriam-webster.com/dictionary/accurate (last visited Feb. 15, 2022).

Pl.'s Opp'n to Stanford's Special Mot. for
Expedited Relief and Dismissal and Univ. of
Washington's Mot. to Dismiss — No. 2:21-cv-
01326-TSZ

*Project Veritas v. Stanford and University of Washington*

Ard Law Group PLLC

P.O. Box 11633
Bainbridge Island, WA 98110

company of engaging in "misleading" advertising capable of factual interpretation because BBB "holds itself out as an expert" on advertisers' trustworthiness).[17]

Finally, after making all of the above accusations, the EIP Article states that EIP has therefore "determined" that the Video Report is "election disinformation" and part of a coordinated "disinformation campaign." (Compl. ¶ 83.)  In everyday parlance, a statement is "disinformation" if it is (1) false, (2) deliberately conveyed, and (3) conveyed to influence public opinion or obscure truth.  *See    Disinformation*, Merriam-Webster.com, https://www.merriam-webster.com/dictionary/disinformation (last visited Feb. 15, 2022) (defining "disinformation" as "false information deliberately and often covertly spread (as by the planting of rumors) in order to influence public opinion or obscure truth")*.  Whether Veritas did or did not deliberately convey a false news report to its audience is susceptible of objective verification.  *See Siegelman v. Cunard White Star Ltd.*, 221 F.2d 189, 198 (2d Cir. 1955) ("the state of a man's mind is as much a fact as the state of his digestion").

Defendants insist that this case is different because the EIP Article says, "*we determined this video to be a form of election disinformation.*"  [Dkt. 40 at 19 (emphasis added).]  But the words "we determined" do not transmute factual statements into statements of opinion, any more than prefacing a statement with "in my opinion" automatically makes the statement one of opinion.  *See Milkovich*, 497 U.S. at 18.  If anything, the claim by a purported expert in election disinformation that it made a "determination" that something constituted disinformation would convey to a reasonable reader that the expert was presenting a *factual* determination, not an

---

[17] The foregoing helps to materially distinguish the statements at issue here from those in two cases on which Defendants rely: *Paterson v. Little, Brown & Co.*, 502 F. Supp. 2d 1124 (W.D. Wash. 2007), and *Phantom Touring, Inc. v. Affiliated Publ'ns*, 953 F.2d 724 (1st Cir. 1992).  [*See* Dkt. 40 at 19].  *Paterson* and *Phantom Touring* each involved statements that were "figurative and hyperbolic."  *Phantom Touring*, 953 F.2d at 728; *see also Paterson*, 502 F. Supp. 2d at 1135 ("Just like rip-off, fraud, scandal, and snake-oil job in *Phantom Touring* ... the allegedly defamatory words in this statement are imprecise hyperbole.").  The EIP Article, by contrast, did not use figurative or hyperbolic language in characterizing the Video Report as "using misleading or inaccurate information."

Pl.'s Opp'n to Stanford's Special Mot. for
Expedited Relief and Dismissal and Univ. of
Washington's Mot. to Dismiss — No. 2:21-cv-
01326-TSZ

*Project Veritas v. Stanford and University of Washington*

Ard Law Group PLLC

P.O. Box 11633
Bainbridge Island, WA 98110

opinion. *See Budget Van Lines*, 2013 WL 4494318, at *9 ("The actual or imputed expertise of the defendant regarding the subject matter of a statement may reasonably lead the target audience to understand or believe that the statement is a factual one.").

At bottom, every line of the challenged paragraph of the EIP Article accuses Veritas of deliberately deceiving its viewers, and that accusation is not made in the kind of "loose, figurative, or hyperbolic" language that tends to support a finding of opinion. *See Milkovich*, 497 U.S. at 21. Taken together, the paragraph's unmistakable message is that Veritas violated the most fundamental tenet of journalism by intentionally lying to its viewers about the subject matter of one of its reports. (Compl. ¶¶ 162–65.) That central allegation, which pervades the EIP Article, is readily susceptible of verification. *See, e.g.*, *Manufactured Home Cmtys., Inc. v. Cnty. of San Diego*, 544 F.3d 959, 964 (9th Cir. 2008) (alleging untruthfulness can be actionably defamatory, particularly when the allegation is made without expressly disclosing a factual basis for it). Indeed, Washington jurors—finders of fact—are routinely asked to determine whether a litigant's conduct was "false, deceptive, or misleading." *See, e.g.*, RCW 19.86.020 (prohibition on knowingly making, publishing, or disseminating "any false, deceptive or misleading information in the provision of money services"); RCW 9.04.050 (outlawing certain "false, deceptive, or misleading advertising"). Therefore, Defendants cannot demonstrate that the statements in the EIP Article could not be interpreted as factual assertions or that they are incapable of being adjudicated by a jury as true or false.

**2. The medium in which the statements appeared, the audience they were directed to, and the failure to disclose factual support for them further confirm the statements are actionable.**

For the reasons given above, it is not a close call whether the statements at issue here could reasonably be interpreted as asserting facts. And application of the Washington three-part test for distinguishing statements of fact from pure opinion—considering (1) the nature of the medium in which the statement appeared; (2) the nature of the audience the statement was directed to; and (3)

30

Pl.'s Opp'n to Stanford's Special Mot. for Expedited Relief and Dismissal and Univ. of Washington's Mot. to Dismiss — No. 2:21-cv-01326-TSZ

*Project Veritas v. Stanford and University of Washington*

Ard Law Group PLLC
P.O. Box 11633
Bainbridge Island, WA 98110

whether the statement implied knowledge of undisclosed facts—further underscores that the EIP Article is actionable and not protected pure opinion.

First, the medium in which the statements appeared itself suggests the statements were intended as factual assertions.  *See Caruso*, 730 P.2d at 1304.  EIP holds itself out as source of serious, credible research when it comes to misinformation and disinformation—terms that EIP and the Article authors consistently use in technical, academic ways.  EIP's website, on which the Article appeared, describes EIP as "a coalition of research entities focused on supporting real-time information exchange between the research community, election officials, government agencies, civil society organizations, and social media platforms," [Dkt. 37 at 8 (quoting website)], and describes EIP's mission as identifying "false and misleading narratives" and "disinformation" about election security.[18]  Consistent with its scientific-seeming, scholarly bent, the website is full of detailed reports, data-modeling results, charts, and graphs.  All of that conveys the impression that EIP was created and funded to provide ***fact-based analysis*** of election-related disinformation, not mere opinions.

This specific EIP Article conveys the same thing.  It is written in a scholarly style and features several graphs and a variety of data regarding dissemination of the Video Report.  (Dkt. 1-1.)  It also features detailed background information and links to support many of its claims—except, tellingly, for the ones defaming Veritas, which are unsupported and without citation.  (*Id.*)  The authors are all named at the top of the Article, along with the well-known national research institutions at which they work.  (*Id.* at 2.)  *See Resolute Forest Prods., Inc. v. Greenpeace Int'l*, No. 17-cv-02824, 2019 WL 281370, at *6 (N.D. Cal. Jan. 22, 2019) ("[A] statement is more likely to be viewed as one of fact, as opposed to opinion, when the speaker might reasonably be perceived as an expert or authority on the topic of the statement.").  And the authors expressly characterize the EIP Article's contents as "findings" and generally frame their publication as a case study "of

---

[18] https://www.eipartnership.net/.

Pl.'s Opp'n to Stanford's Special Mot. for
Expedited Relief and Dismissal and Univ. of
Washington's Mot. to Dismiss — No. 2:21-cv-
01326-TSZ

*Project Veritas v. Stanford and University of Washington*

Ard Law Group PLLC

P.O. Box 11633
Bainbridge Island, WA 98110

what a domestic, coordinated elite disinformation campaign looks like in the United States." (Dkt. 1-1 at 2.)  Given that EIP holds itself out to the public as an expert at identifying what does and does not constitute election "disinformation," EIP's claim that Veritas engaged in intentional deception would be understood by readers as asserting a factual claim.  (*See* Dkt. 37 at 2 (quoting the EIP website and describing EIP as "a coalition of research entities devoted to detecting election-related disinformation")); *Slaughter v. Friedman*, 649 P.2d 886, 886 (Cal. 1982) (while some accusations, "when made by laymen might indeed constitute mere opinion, similar accusations by [certain professionals] carry a ring of authenticity and reasonably might be understood as being based on fact").

Next, the nature of the intended audience also belies the notion that the EIP Article was simply airing opinions.  *See Caruso*, 730 P.2d at 1304.  As EIP's own website explains, EIP is focused on "real-time information exchange between the research community, election officials, government agencies, civil society organizations, and social media platforms."  [Dkt. 37 at 8.]  With a primary audience like that, readers of the EIP website would not expect "mischaracterizations and exaggerations," or have the expectation that the authors would "use exaggeration, rhetoric, or hyperbole."  *See Dunlap v. Wayne*, 716 P.2d 842, 848 (Wash. 1986).  Nor would readers expect that Stanford and UW would fund such a partnership to provide government agencies and election officials with these authors' mere "opinions," but rather with actionable, fact-based information upon which those government institutions can rely and take action to protect the "integrity" of American elections.  Surely, readers would expect exactly what EIP claims to offer them—objective research identifying "content intended to suppress voting, reduce participation, confuse voters as to election processes, or delegitimize election results without evidence."  [Dkt. 37 at 2.]  Defendants falsely accused Veritas of intentionally producing such content, and readers would have reasonably and fairly interpreted those accusations as factual statements about the quality and ethics of Veritas' journalism.

Pl.'s Opp'n to Stanford's Special Mot. for Expedited Relief and Dismissal and Univ. of Washington's Mot. to Dismiss — No. 2:21-cv-01326-TSZ

*Project Veritas v. Stanford and University of Washington*

Ard Law Group PLLC

P.O. Box 11633
Bainbridge Island, WA 98110

Finally, the third factor—whether the purported opinions imply the existence of undisclosed facts, *see Caruso*, 730 P.2d at 1304—also weighs heavily in Veritas' favor.  As alleged in the Complaint and as is evident from the EIP Article itself, the authors failed to identify *anything* in the Video Report that was supposedly "debunked," "without any factual support," "inaccurate information," or "disinformation."  (Compl. ¶ 84 & Ex. A.)  Thus, even to the extent any of the challenged statements could be characterized as sounding in opinion (they cannot), they would nevertheless be actionable because the EIP Article necessarily signaled to readers that the statements were based on facts—alleged deceptive and untrue statements and actions by Veritas— that were known to the EIP authors but not disclosed to readers of the EIP Article.  *See Delashaw v. Seattle Times Co.*, No.  C18-0537, 2018 WL 4027078, at *12 (W.D. Wash. Aug. 23, 2018) ("To the extent any of [the statements] can be characterized as an opinion, they rest on implied facts … that [themselves] can be proved false.").  Because the statements at issue are factual on their face and the applicable state-law test further confirms that they are actionable, Defendants' motions to dismiss on opinion grounds must be denied.

### C.  At This Stage of the Litigation, The Court Cannot Credit Defendants' Arguments That the Statements in the EIP Article Are True.

In the same breath as they argue that statements like "using misleading or inaccurate information" and "disinformation" are opinion because they are inherently subjective, Defendants also argue that the same statements are objectively true.  [Dkt. 37 at 18-23; Dkt. 40 at 11-19.]  In addition to undermining Defendants' argument that the statements are unverifiable opinion, Defendants' truthfulness arguments all require this Court to pick and choose from among contested interpretations of the Video Report and to discredit the allegations of falsity in the Complaint.  The Court cannot do so because "factual challenges to a plaintiff's complaint have no bearing on the legal sufficiency of the allegations under Rule 12(b)(6)."  *Lee v. City of L.A.*, 250 F.3d 668, 688 (9th Cir. 2001); *see also Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002-03

Pl.'s Opp'n to Stanford's Special Mot. for Expedited Relief and Dismissal and Univ. of Washington's Mot. to Dismiss — No. 2:21-cv-01326-TSZ

*Project Veritas v. Stanford and University of Washington*

Ard Law Group PLLC

P.O. Box 11633
Bainbridge Island, WA 98110

(9th Cir. 2018) (whether statement is true or false is a fact question, typically inappropriate for resolution at motion-to-dismiss stage).

For example, Defendants argue it is true that the Video Report "us[ed] misleading or inaccurate information" and that it was "debunked" because some news outlets ran stories expressing skepticism about the Video Report. [*See* Dkt. 37 at 21; Dkt. 40 at 12-16.] But adopting Defendants' arguments would require this Court to improperly credit the *substance* of those outside-the-pleadings news reports and to resolve a factual dispute by concluding that they prove the Video Report is false (which they do not).[19] That is precisely the type of factual determination courts may not make on a motion to dismiss. *See Khoja*, 899 F.3d at 1002-03.

Defendants similarly argue that the EIP Article's assertion that several claims in the Video Report are entirely "without factual support" is true. [Dkt. 37 at 21-22; Dkt. 40 at 16-18.] The Video Report itself belies that assertion. Defendants contend, for example, that there is no "factual support" for the Video Report's claim that **sources allege** that Congresswoman Omar's "voter fraud machine appears to be much more than just a few foot soldiers like Liban Mohamed's ballot harvesting," that it "appears to be an effort that is very systemic and very coordinated," and that Congresswoman Omar "is actually exploiting members of her own Somali community." [Dkt. 37 at 21.] In fact, the Video Report shows (and the Complaint alleges that the Video Report shows) multiple, knowledgeable, community sources alleging just that—including an officer from Ramsey County Sheriff's Office. Liban Mohamed, for instance, "is identified by name and his connections to other Democrat Minnesota politicians, including [Congresswoman] Ilhan Omar, are set forth by named sources" in the Video Report, including Mr. Awed and Mr. Jamal. (Compl, ¶¶ 71, 118-19.) Mr. Jamal also "identified [Congresswoman] Omar's Deputy Campaign Manager

---

[19] As set forth in Veritas' contemporaneous Rule 12(d) and 56(d) Motion, if the Court considers and credits Defendants' outside-the-pleadings materials (specifically, the hyperlinks at paragraph 21 of the Declaration of Lee Brand [Dkt. 39] and Exhibits 4-14 to that Declaration [Dkts. 39-4 through 39-14]), it must convert Defendants' motions to ones for summary judgment and permit discovery before adjudicating them. *See* FRCP 12(d), 56(d).

Pl.'s Opp'n to Stanford's Special Mot. for Expedited Relief and Dismissal and Univ. of Washington's Mot. to Dismiss — No. 2:21-cv-01326-TSZ

*Project Veritas v. Stanford and University of Washington*

Ard Law Group PLLC

P.O. Box 11633
Bainbridge Island, WA 98110

Alli Isse Gainey as a known ringleader of these [illegal voting] activities." (*Id.* ¶ 122.)  Thus, the Video Report itself demonstrates the truth of the assertion that community sources have alleged that Representative Omar's campaign has direct connections to those alleged to engage in illegal voting practices, and Defendants have presented no basis for this Court to make a factual determination, as a matter of law, to the contrary.

Finally, with respect to the EIP Article's claim that the Video Report was part of a "disinformation campaign," Defendants argue that this statement is true on the ground that it "clearly refers to the primary discussion [in the EIP Article] of how prominent conservatives had worked to promote the Video," and "not any effort by Project Veritas or others to deceive the public intentionally."  [Dkt. 37 at 16.] But where multiple interpretations of a statement—some defamatory and some not—are reasonable, the ultimate determination of what a statement at issue conveyed is for the jury. *Kaelin*, 162 F.3d at 1040.  Here, a reasonable juror could readily read the statements in the EIP Article to say exactly what they plainly say—particularly given that Defendants entirely ignore the related statement in the same paragraph of the EIP Article that says, "we determined ***this video*** to be a form of election disinformation."  (Compl. ¶ 83 (emphasis added).)  Thus, Defendants explicitly called the Video Report itself "disinformation," of the type that EIP encourages social media cites to scrutinize and discredit with "fact-checks."  *See* EIP website ("Key Recommendations.  … [I]f [EIP] researchers expect a narrative will emerge, platforms should explain that narrative's history or provide fact-checks or context related to its prior iterations.").[20]  Again, whether Veritas intentionally produced a deceptive piece of journalism is a question of fact that cannot be resolved against Veritas in the face of its well-pleaded allegations of falsity.

---

[20] https://www.eipartnership.net/.

Pl.'s Opp'n to Stanford's Special Mot. for
Expedited Relief and Dismissal and Univ. of
Washington's Mot. to Dismiss — No. 2:21-cv-
01326-TSZ

*Project Veritas v. Stanford and University of
Washington*

Ard Law Group PLLC
P.O. Box 11633
Bainbridge Island, WA 98110

**D. Defendants' Actual Malice Arguments Misstate Plaintiff's Burden and Ignore Settled Law About How Plaintiffs May Prove the Malice Element.**

Defendants make two arguments that Veritas has not adequately pleaded that Defendants published the EIP Article with actual malice. *First*, Defendants suggest that to properly plead malice, Veritas has to carry a uniquely "demanding burden" by pleading "specific allegations of a speaker's mindset, not mere general allegations that a defendant should have known or should have investigated the truth of his or her statements." [Dkt. 37 at 23 (quotation marks and citations omitted); *see also* Dkt. 40 at 19-20 (same argument).] But, as the Supreme Court has noted, Federal Rule of Civil Procedure 9(b) expressly permits malice and "other conditions of a person's mind [to] be alleged generally," in the same way as any other allegation under Rule 8. *Ashcroft v. Iqbal*, 556 U.S. 662, 686 (2009); *see also Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 674 F.3d 369, 377 (4th Cir. 2012) ("Rule 9(b) ensures there is *no heightened pleading standard* for malice, but malice must still be alleged in accordance with Rule 8—a 'plausible' claim for relief must be articulated."); *Miller v. Sawant*, 18 F.4th 328, 337 (9th Cir. 2021) ("plaintiff asserting a state-law defamation claim in federal court need only satisfy Rule 8"); *Peterson v. Gannett Co.*, No. cv-20-00106, 2020 WL 1935520, at *8 (D. Ariz. Apr. 22, 2020) ("This Court will, consistent with the overwhelming weight of post-*Iqbal* authority, address whether Plaintiff has plausibly alleged that Defendants acted with actual malice at the pleading stage.") (internal quotation marks omitted).

Defendants also misconstrue the manner in which Veritas is entitled to ultimately ***prove*** malice, by addressing each of Veritas' allegations piecemeal and claiming they do not individually establish reckless disregard. But the U.S. Supreme Court has long recognized that defamation defendants "are prone to assert their good-faith belief in the truth of their publications," so that "plaintiffs will rarely be successful in proving awareness of falsehood from the mouth of the defendant himself." *Herbert v. Lando*, 441 U.S. 153, 170 (1979). Accordingly, it is well-settled that "a plaintiff is entitled to prove the defendant's state of mind through circumstantial evidence."

36

Pl.'s Opp'n to Stanford's Special Mot. for Expedited Relief and Dismissal and Univ. of Washington's Mot. to Dismiss — No. 2:21-cv-01326-TSZ

*Project Veritas v. Stanford and University of Washington*

Ard Law Group PLLC
P.O. Box 11633
Bainbridge Island, WA 98110

*Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 668 (1989); *Eastwood v. Nat'l Enquirer, Inc.*, 123 F.3d 1249, 1253 (9th Cir. 1997) ("As we have yet to see a defendant who admits to entertaining serious subjective doubt about the authenticity of an article it published, we must be guided by circumstantial evidence.").  Categories of circumstantial evidence that support a finding of actual malice include: (a) possession of information contradicting the published claims;[21] (b) ill will or bias on the part of the defendant toward the plaintiff;[22] (c) setting out to publish with a preconceived storyline;[23] (d) failure to interview obvious sources of corroboration or refutation, like the target of the reporting;[24] (e) failure to conduct a sufficient investigation in advance of publication;[25] (f) a departure from professional standards;[26] (g) reliance on biased or non-credible sources;[27] and (h) a refusal to retract a false statement.[28]

---

[21] *See Flowers v. Carville*, 310 F.3d 118, 1131 (9th Cir. 2002) (actual malice may be shown by proving involvement in "manufacturing" stories); *Zerangue v. TSP Newspapers, Inc.*, 814 F.2d 1066, 1071 (5th Cir. 1987) (actual malice properly found where reporter "was aware of facts contradicting her story"); *Palin v. N.Y. Times Co.*, 940 F.3d 804, 813-14 (2d Cir. 2019) (allegation that defendant had knowledge contradicting published claim sufficient to allege malice); *Eramo v. Rolling Stone, LLC*, 209 F. Supp. 3d 862, 873 (W.D.Va. 2016).

[22] *See Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 668 (1989) ("[I]t cannot be said that evidence concerning motive or care never bears any relation to the actual malice inquiry."); *Margoles v. Hubbart*, 760 P.2d 324, 331 (Wash. 1988) (en banc) (evidence of ill-will can support a finding of actual malice "when combined with other, more substantial evidence of a defendant's bad faith").

[23] *See Harris v. City of Seattle*, 152 Fed. App'x 565, 568 (9th Cir. 2005) ("[E]vidence that a defendant conceived a story line in advance of an investigation and then consciously set out to make the evidence conform to the preconceived story is evidence of actual malice, and may often prove to be quite powerful evidence.") (citation omitted); *Goldwater v. Ginzburg*, 414 F.2d 324, 337 (2d Cir. 1969); *Eramo*, 209 F. Supp. 3d at 874 (allegation defendant had a "preconceived story line" supported reasonable inference of actual malice; *Palin*, 940 F.3d at 813 (allegation that defendant had a "pre-determined" defamatory narrative "paint[ed] a plausible picture" of actual malice).

[24] *See Harte-Hanks Commc'ns*, 491 U.S. at 682-83 (newspaper's failure to interview an obvious source who might discredit the story was persuasive evidence of actual malice); *Quigley v. Rosenthal*, 43 F. Supp. 2d 1163, 1180 (D. Colo. 1999) ("Failure to investigate obvious sources of refutation or corroboration of statements, especially when there is no time-pressure on their publication, may indicate not only negligence, but the higher standard of actual malice.").

[25] *See Harte-Hanks Commc'ns*, 491 U.S. at 667-68, 688, 692-93; *Herron v. KING Broad. Co.*, 746 P.2d 295, 302 (Wash. 1987) (en banc).

[26] *See Suzuki Motor Corp. v. Consumer Union of U.S., Inc.*, 330 F.3d 1110, 1137 n.14 (9th Cir. 2003).

[27] *See St. Amant v. Thompson*, 390 U.S. 727, 732 (1968) ("[R]ecklessness may be found where there are obvious reasons to doubt the veracity of the informant or the accuracy of his reports."); *Stern v. Cosby*, 645 F. Supp. 2d 258, 278 (S.D.N.Y. 2009) (reliance on "obviously biased" sources is evidence of actual malice); *Eramo*, 209 F. Supp. 3d at 873.

[28] *Herron*, 746 P.2d at 302 (evidence of malice includes "failure to follow newspaper procedures for filing papers of inaccuracy"); *Tavoulareas v. Piro*, 763 F.2d 1472, 1477 (D.C. Cir. 1985) ("Evidence of the [defendant's] steadfast refusal to retract [is] properly considered as bearing on the issue of actual malice.").

Pl.'s Opp'n to Stanford's Special Mot. for
Expedited Relief and Dismissal and Univ. of
Washington's Mot. to Dismiss — No. 2:21-cv-
01326-TSZ

*Project Veritas v. Stanford and University of Washington*

Ard Law Group PLLC

P.O. Box 11633
Bainbridge Island, WA 98110

In its Complaint, Veritas pleaded detailed facts alleging each of these recognized hallmarks of actual malice, including that Defendants:

- knew the statements in the EIP Article were false and disregarded contradictory information in their possession—including the Video Report itself—demonstrating the falsity of the statements, (Compl. ¶¶ 112-19, 167);

- knew that the Video Report's on-the-record sources were knowledgeable and credible, including the fact that one of those sources self-recorded and posted videos with unlawfully harvested ballots, (*id.* ¶¶ 70, 120);

- were motivated by bias and ill will because Veritas had previously exposed an EIP author for suppressing conservative viewpoints while he worked at Facebook, and because Defendants disagree politically with what they perceive to be Veritas' rightward leanings, (*id.* ¶¶ 38-47);

- in collaboration with The Times, set out with a preconceived storyline that the Video Report was manipulated and deceptive, and ignored evidence contradicting that narrative, (*id.* at ¶ 96);

- failed to sufficiently investigate and intentionally failed to reach out to obvious sources they knew would contradict the EIP Article's claims—including Veritas and the named sources in the Video Report, (*id.* ¶ 168);

- violated their own academic policies by deliberately not seeking comment from Veritas before publishing the EIP Article, (*id.* ¶ 175); and

- refused to retract the EIP Article despite multiple requests putting them on clear notice of its falsity, (*id.* ¶¶ 149, 170).

In the face of those well-pleaded pleaded allegations, Defendants argue that no single one of them, standing alone and in isolation from the others, is independently sufficient to establish actual malice.  [Dkt. 37 at 24; Dkt. 40 at 20-24.]  But that is not the legal standard at the summary judgment and trial stage, much less the pleading stage.  Instead, it is well-accepted that to prevail

Pl.'s Opp'n to Stanford's Special Mot. for
Expedited Relief and Dismissal and Univ. of
Washington's Mot. to Dismiss — No. 2:21-cv-
01326-TSZ

*Project Veritas v. Stanford and University of
Washington*

Ard Law Group PLLC
P.O. Box 11633
Bainbridge Island, WA 98110

at trial, a plaintiff is entitled to make out a case for actual malice based on the ***accumulation and totality*** of circumstantial evidence.  *See Harte-Hanks Commc'ns*, 491 U.S. at 667-68, 692-693; *Kaelin*, 162 F.3d at 1041; *Celle v. Filipino Reporter Enters., Inc.*, 209 F.3d 163, 183 (2d Cir. 2000); *Eramo*, 209 F. Supp. 3d at 872 ("Although failure to adequately investigate, a departure from journalistic standards, or ill will or intent to injure will not singularly provide evidence of actual malice ... proof of all three is sufficient to create a genuine issue of material fact.").  If proven, Veritas' well-pleaded allegations would warrant a jury finding of actual malice.  Accordingly, at this early stage of litigation, they are more than adequate to satisfy the pleading standards of Rules 8 and 12.

E. **Defendants Are Liable for Defamatory Statements in The Times Articles to the Same Extent They Are Liable for the Defamatory Statements in the EIP Article Itself.**

Finally, Defendants contend that they cannot be held liable for The Times' republication of the false and defamatory statements in the EIP Article.  [Dkt. 37 at 25.]  Their argument, albeit truncated, appears to be that even though the substance and tone of the charges in The Times' articles were entirely foreseeable to Defendants—indeed the Complaint alleges that they were intended given the timing and coordination between the EIP authors and The Times (Compl. ¶¶ 5-7)—the stories cannot be said to have "republished" the EIP Article because the articles use slightly different language in describing and paraphrasing the EIP Article.  But the law of republication does not turn on verbatim duplication; what matters is whether the gist of the original defamatory statement was repeated.  When a source "furnishes defamatory material to a publisher with the expectation that the material (either verbatim *or in substance*) will be published, the source should be liable for the [re]publication." *Mitchell v. Super. Ct.*, 690 P.2d 625 (Cal. 1984) (en banc) (emphasis added).  Indeed, "the law of defamation ... does ***not require*** that a defamatory republication, whether written or oral, be a literal or verbatim duplicate of the original defamatory statement in order to be actionable." *Ringler Assocs. Inc. v. Md. Cas. Co.*, 96 Cal.Rpter.2d 136 (2000) (emphasis altered).

Pl.'s Opp'n to Stanford's Special Mot. for Expedited Relief and Dismissal and Univ. of Washington's Mot. to Dismiss — No. 2:21-cv-01326-TSZ

*Project Veritas v. Stanford and University of Washington*

Ard Law Group PLLC

P.O. Box 11633
Bainbridge Island, WA 98110

Thus, it does not matter that The Times' stories used slightly different language in conveying the EIP Article's core allegation—for example, in describing the Video Report as "deceptive" rather than "misleading." That is particularly true where, as here, the EIP authors claimed the Video Report was *intentionally* misleading and "disinformation." The Times' use of the word deception connotes intentional misrepresentation, just like the EIP Authors' use of the word "disinformation." Because all that matters for purposes of a republication analysis is that The Times articles reproduced the gist of the EIP Article's allegations, Defendants' arguments that they are not, as a matter of law, liable for The Times' republication of them fails.

## CONCLUSION

For the foregoing reasons, Plaintiff requests that the Court deny Defendants' motions in their entirety.

Pl.'s Opp'n to Stanford's Special Mot. for
Expedited Relief and Dismissal and Univ. of
Washington's Mot. to Dismiss — No. 2:21-cv-
01326-TSZ

*Project Veritas v. Stanford and University of Washington*

Ard Law Group PLLC

P.O. Box 11633
Bainbridge Island, WA 98110

1    Dated: March 4, 2022                          Respectfully Submitted,

2

3

4                                                  Joel B. Ard, WSBA # 40104
                                                   Ard Law Group PLLC
5                                                  P.O. Box 11633
                                                   Bainbridge Island, WA 98110
6                                                  Phone: (206) 701-9243

7                                                  Elizabeth M. Locke, P.C. (of counsel) (*pro hac vice*)
                                                   Andrew C. Phillips (of counsel) (*pro hac vice*)
8                                                  CLARE LOCKE LLP
                                                   10 Prince Street
9                                                  Alexandria, VA 22314
                                                   Telephone: (202) 628-7400
10                                                 Email: libby@clarelocke.com
                                                   Email: andy@clarelocke.com
11
                                                   ATTORNEYS FOR PLAINTIFF
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27   Pl.'s Opp'n to Stanford's Special Mot. for          Ard Law Group PLLC
     Expedited Relief and Dismissal and Univ. of
     Washington's Mot. to Dismiss — No. 2:21-cv-         P.O. Box 11633
     01326-TSZ                                           Bainbridge Island, WA 98110

     *Project Veritas v. Stanford and University of
     Washington*