The Honorable Thomas S. Zilly

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

PROJECT VERITAS,

             Plaintiff,

      v.

THE LELAND STANFORD JUNIOR
UNIVERSITY and THE UNIVERSITY
OF WASHINGTON,

             Defendants.

Case No. 2:21-cv-01326-TSZ

DEFENDANTS' OMNIBUS REPLY TO
PLAINTIFF PROJECT VERITAS'
OPPOSITION TO DEFENDANTS' MOTIONS
TO DISMISS

NOTING DATE: March 25, 2022

ORAL ARGUMENT REQUESTED

**Miller Nash LLP**
Pier 70 | 2801 Alaskan Way | Suite 300
Seattle, WA  98121-1128
206.624.8300 | Fax: 206.340.9599

1

## TABLE OF CONTENTS

2
Page

3      I.    INTRODUCTION ................................................................................................1

4      II.   THE PARTIES AGREE THAT THE COURT SHOULD EVALUATE DEFENDANTS'
            MOTIONS UNDER RULE 12 ............................................................................2

5
       III.  PLAINTIFF DOES NOT ADEQUATELY ALLEGE FALSITY ...........................5
6
            A.   The "Low Standard" For Complaints On 12(b)(6) Does Not Salvage Claims ...................6
7
            B.   Plaintiff Does Not Dispute That The "Sting" Of The Blog Post Is True ...........................7
8
                 1.   Plaintiff Does Not Dispute that the Video "made several falsifiable claims that . . . are
9                         without any factual support" .........................................................................8

10
                 2.   Plaintiff Does Not Dispute that the Video "made several falsifiable claims that have
11                        . . . been debunked by subsequent reporting" .............................................11

12               3.   The Challenged Statements Are Opinions ...................................................13

13     IV.   PLAINTIFF DOES NOT ADEQUATELY ALLEGE ACTUAL MALICE..........................14

14          A.   Pleading Actual Malice Is A Demanding Burden ...............................................15

15          B.   Plaintiff Fails To Meet This Demanding Burden .............................................17

16     V.    PLAINTIFF'S SECOND AND THIRD CAUSES OF ACTION ALSO FAIL ......................19

17     VI.   CONCLUSION.....................................................................................................20
18

19

20

21

22

23

24

25

26

DEFENDANTS' REPLY ISO
MOTIONS TO DISMISS - i
(CASE No. 2:21-cv-01326-TSZ)

**Miller Nash LLP**
Pier 70 | 2801 Alaskan Way | Suite 300
Seattle, WA  98121-1128
206.624.8300 | Fax: 206.340.9599

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

<u>Cases</u>

4

*Akhtar v. Mesa,*
5
    698 F.3d 1202 (9th Cir. 2012) ........................................................................... 4

6

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)............................................................................ 15, 16, 19
7

*Austin v. Walker,*
8
    800 F. App'x 563 (9th Cir. 2020) ..................................................................... 3

9

*Bell Atl. Corp. v. Twombly,*
10
    550 U.S. 544 (2007)....................................................................................... 19

11

*Bose Corp. v. Consumers Union of U.S., Inc.,*
    466 U.S. 485 (1984)....................................................................................... 18
12

*Clegg v. Cult Awareness Network,*
13
    18 F.3d 752 (9th Cir. 1994) ............................................................................. 6

14

*CoreCivic Inc. v. Candide Grp. LLC,*
15
    No. C-20-03792-WHA, 2021 WL 1267259 (N.D. Cal. Apr. 6, 2021) ................... 3

16

*DSCC v. Simon,*
    No. 62-CV-20-585 (Minn. Sec. Jud. Dist., Jul. 28, 2020) ........................................ 8
17

*DSCC v. Simon,*
18
    No. A20-1017 (Minn. Sup. Ct., Sept. 4, 2020) ..................................................... 8

19

*Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.,*
20
    472 U.S. 749 (1985)....................................................................................... 15

21

*Garrison v. Louisiana,*
    379 U.S. 64 (1964)........................................................................................... 2
22

*Harte-Hanks Commc'ns, Inc. v. Connaughton,*
23
    491 U.S. 657 (1989)....................................................................................... 18

24

*Herron v. Tribune Publ'g Co., Inc.,*
25
    108 Wn.2d 162 (1987) ..................................................................................... 2

26

*Jankovic v. International Crisis Group,*
    822 F.3d 576 (D.C. Cir. 2016) ....................................................................... 19

DEFENDANTS' REPLY ISO
MOTIONS TO DISMISS - ii
(CASE No. 2:21-cv-01326-TSZ)

**Miller Nash LLP**
Pier 70 | 2801 Alaskan Way | Suite 300
Seattle, WA  98121-1128
206.624.8300 | Fax: 206.340.9599

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

*Khoja v. Orexigen Therapeutics, Inc.*,
   899 F.3d 988 (9th Cir. 2018) ................................................................................ 6

*Lee v. Columbian, Inc.*,
   64 Wn. App. 534 (1991) .............................................................................. 7, 11

*Michel v. NYP Holdings, Inc.*,
   816 F.3d 686 (11th Cir. 2016) ......................................................... 16, 17

*Miller v. Sawant*,
   18 F.4th 328 (9th Cir. 2021) .................................................................... 16

*Miller v. Watson*,
   No. 3:18-CV-00562-SB, 2019 WL 1871011 (D. Or. Feb. 12, 2019) .................... 17

*Mitchell v. Superior Ct.*,
   37 Cal. 3d 268 (1984) .......................................................................... 20

*NAACP v. Claiborne Hardware Co.*,
   458 U.S. 886 (1982).......................................................................... 15

*Newton v. Nat'l Broad. Co.*,
   930 F.2d 662 (9th Cir. 1990) ............................................................ 17

*Paterson v. Little Brown*,
   502 F. Supp. 2d 1124 (W.D. Wash. 2007).......................................... 7, 12, 14, 18

*Peterson v. Gannett Co. Inc.*,
   No. CV-20-00106-PHX-MTL, 2020 WL 1935520 (D. Ariz. Apr. 22, 2020) ......... 16

*Phillips v. Seattle Times Co.*,
   818 F. Supp. 2d 1277 (W.D. Wash. 2011)............................................ 6, 7, 11

*Pippen v. NBCUniversal Media, LLC*,
   734 F.3d 610 (7th Cir. 2013) ............................................................ 16

*Planet Aid, Inc. v. Center for Investigative Reporting*,
   No. 17-cv-03695-MMC, 2021 WL 1110252 (N.D. Cal. Mar. 23, 2021) .............. 17

*Planned Parenthood Federation of America, Inc. v. Center for Medical Progress*,
   890 F.3d 828 (9th Cir. 2018) ............................................................ 2, 3

*Project Veritas v. Cable News Network, Inc.*,
   No. 1:21-CV-01722-SCJ (N.D. Ga. Mar. 17, 2022), ECF No. 27.......................... 16

DEFENDANTS' REPLY ISO
MOTIONS TO DISMISS - iii
(CASE No. 2:21-cv-01326-TSZ)

*Resolute Forest Prod., Inc. v. Greenpeace Int'l*,
 302 F. Supp. 3d 1005 (N.D. Cal. 2017) ........................................................ 15, 16

*Ringler Assocs. Inc. v. Maryland Cas. Co.*,
 80 Cal. App. 4th 1165 (2000) ............................................................................ 20

*Tull v. Higgins*,
 No. 21-CV-01566-DMR, 2021 WL 6116971 (N.D. Cal. Dec. 27, 2021) ............................ 15

*Wynn v. Chanos*,
 75 F. Supp. 3d 1228 (N.D. Cal. 2014) ...................................................... 15, 16, 17

<u>Constitutions</u>

United States Constitution
 First Amendment ........................................................................ 2, 3, 14, 15
 Fourteenth Amendment ................................................................................ 2

<u>Codes</u>

Revised Code of Washington
 Chapter 4.105 ............................................................................................ 3

<u>Rules</u>

Federal Rules of Civil Procedure
 Rule 8 ................................................................................................ 15, 16
 Rule 9 .................................................................................................... 15
 Rule 11 .................................................................................................... 3
 Rule 12 .......................................................................................... 2, 3, 4, 6
 Rule 56 .................................................................................................... 4

DEFENDANTS' REPLY ISO
MOTIONS TO DISMISS - iv
(CASE No. 2:21-cv-01326-TSZ)

**Miller Nash LLP**
Pier 70 | 2801 Alaskan Way | Suite 300
Seattle, WA  98121-1128
206.624.8300 | Fax: 206.340.9599

1

## I.    INTRODUCTION

2        Project Veritas' omnibus opposition (Dkt. 50) ("Opposition" or "Opp.") largely ignores

3   the points made in Defendants' moving papers.[1]  Instead, Plaintiff focuses on a lengthy academic

4   discourse on the applicability of Washington's Anti-SLAPP statute and a defense of

5   cherrypicked portions of the Project Veritas Video.  These efforts do not rebut Defendants'

6   arguments that Project Veritas has failed to plausibly allege two essential elements of its claim

7   for defamation, falsity and actual malice.

8        With regard to falsity, Project Veritas claimed that its Video showed "massive criminal

9   voter fraud caught irrefutably on video tape" and constituted "undeniable video proof of

10  systemic voter fraud."  In the context of statements like these, Defendants' Blog Post criticized

11  elements of the Video as "misleading" and "without factual support," and noted that subsequent

12  reporting had similarly criticized some of the Video's claims.  Defendants' Motions explained

13  that Project Veritas cannot plausibly allege that this language in the Blog Post is false because

14  the Video itself does not live up to such claims, and because subsequent critical reporting in fact

15  existed at the time the Blog Post was published.  These are clear determinations that this Court

16  can readily make by taking judicial notice of the Video and the existence of contemporaneous

17  media that analyzed the Video.  This does not involve a fact-finding exercise, as Plaintiff argues,

18  because what the Video does *not* say, and what the media *do* say about the Video, is self-evident

19  and undisputed.  In its Opposition, Plaintiff fails to acknowledge the Video's inflated claims of

20  massive criminal election conduct, much less explain why it is plausibly false to say that such

21  claims are "misleading" or "without factual support."  On this fundamental failing alone, the

22  complaint should be dismissed.

23        As for actual malice, the Opposition first wrongly denies that public figure defamation

24  plaintiffs like Project Veritas face a "demanding burden" in pleading this element, and then

25

26  ────────────
    [1] Dkt. 37 ("Stanford Mot."); Dkt. 40 ("UW Mot."; and with Stanford Mot., "Defendants' Motions").

DEFENDANTS' REPLY ISO
MOTIONS TO DISMISS - 1
(CASE No. 2:21-cv-01326-TSZ)

**Miller Nash LLP**
Pier 70 | 2801 Alaskan Way | Suite 300
Seattle, WA  98121-1128
206.624.8300 | Fax: 206.340.9599

1  insists that the Complaint's scattershot allegations of actual malice add up to more than the sum

2  of their parts.  These parts consist of several unremarkable allegations—that the Blog Post

3  authors are bound by university policies, did not conduct first person research into the Video,

4  stood by their work despite Project Veritas' retraction demands, and held personal political

5  opinions—and the remarkable allegation that Defendants and *The New York Times* jointly

6  conceived and executed the Blog Post so the Times would have a pretext to write an article

7  attacking Project Veritas' journalism.  These allegations do not plausibly plead actual malice and

8  none of them plausibly gives rise to any inference of actual knowledge of falsity.

9        Based on Plaintiff's failure to plead either of these elements of its defamation claim, the

10  Court should dismiss the Complaint.  Moreover, such dismissal accords with the emphatic

11  recognition by the United States and Washington Supreme Courts that "speech concerning public

12  affairs is more than self-expression; it is the essence of self-government," and that the "First and

13  Fourteenth Amendments embody our 'profound national commitment to the principle that debate

14  on public issues should be uninhibited, robust, and wide-open.'"  *Herron v. Tribune Publ'g Co.,*

15  *Inc.*, 108 Wn.2d 162, 171 (1987) (quoting *Garrison v. Louisiana*, 379 U.S. 64, 74-75 (1964)).

16  **II.     THE PARTIES AGREE THAT THE COURT SHOULD EVALUATE**

17  **DEFENDANTS' MOTIONS UNDER RULE 12**

18        Plaintiff's Opposition argues against the applicability of Washington's Anti-SLAPP

19  statute, but as Defendants explained in their motions (as well as other filings), Plaintiff's

20  arguments conflict with the law of this Circuit and this Court.  In any event, regardless of the

21  applicability of Washington's Anti-SLAPP statute, the parties agree that under Ninth Circuit

22  precedent this Court "should evaluate the motions under the framework set out in Rule 12(b)(6)."

23  Opp. at 24 n.9; *see also* Stanford Mot. at 10 ("Where, as here, an anti-SLAPP motion filed in

24  federal court 'challenges only the legal sufficiency of a claim, a district court should apply the

25  Federal Rule of Civil Procedure 12(b)(6) standard and consider whether a claim is properly

26  stated.'" (quoting *Planned Parenthood Federation of America, Inc. v. Center for Medical*

DEFENDANTS' REPLY ISO
MOTIONS TO DISMISS - 2
(CASE No. 2:21-cv-01326-TSZ)

**Miller Nash LLP**
Pier 70 | 2801 Alaskan Way | Suite 300
Seattle, WA  98121-1128
206.624.8300 | Fax: 206.340.9599

*Progress*, 890 F.3d 828, 834 (9th Cir. 2018))).  Further, the Court has already determined that Defendants' "motions were timely filed." Dkt. 48.[2]  Thus, whether Defendants' Motions are denominated as "anti-SLAPP motions" or "motions to dismiss" does not affect how the motions must be analyzed and ultimately decided in federal court.  *See CoreCivic Inc. v. Candide Grp. LLC*, No. C-20-03792-WHA, 2021 WL 1267259, at \*5 (N.D. Cal. Apr. 6, 2021) ("Court was obliged to treat [anti-SLAPP motion] as a[] Rule 12 motion . . . per *Planned Parenthood*.").

The applicability of Washington's Anti-SLAPP statute impacts only Defendants' entitlement to attorneys' fees if they prevail on the instant motions.  *See* Stanford Mot. at 8 ("If the moving party prevails, the court must also award costs, attorneys' fees, and litigation expenses related to the motion." (citing RCW 4.105.090)); *see also CoreCivic*, 2021 WL 1267259, at \*6 (prevailing defendant can collect fees on anti-SLAPP motion "before and after *Shady Grove*" because "there is no conflict with Rule 11").[3]  But in the event Defendants do prevail, they have no objection to the Court deferring a fees determination until after the Ninth Circuit weighs in on Plaintiff's counsel's appeal in *CoreCivic*, which is "fully briefed and awaiting oral argument."  Opp. at 21 n.7.[4]

---

[2] Plaintiff suggests it may appeal this determination.  *See* Opp. at 25 ("Veritas recognizes that this Court has allowed Defendants' untimely motions and respects that ruling, but notes its continuing objection here to preserve the issue." (footnote misciting Dkt. 36 omitted)).  But the Court has broad discretion under the Federal Rules of Civil Procedure to determine that Defendants' Motions were timely.  *See, e.g., Austin v. Walker*, 800 F. App'x 563, 564 (9th Cir. 2020).  Notwithstanding that the Court already determined that these motions were timely filed, Project Veritas has also identified no prejudice based on the timing of Defendants' Motions.  Nor could it, given that it waited a full year after the publication of the Blog Post to file this lawsuit and asked Defendants to join in a request to extend the briefing schedule on Defendants' Motions by several weeks for its own convenience.  *See* Dkt. 45.

[3] In *CoreCivic*, the Court explained that the analogous attorneys' fees provision in California's anti-SLAPP statue "establishes a *substantive* right to recover attorney's fees when defending against a defamation action under California law where the defamation alleged touches on a public issue and the alleged defamer prevails"—*i.e.*, "a cause of action under state law to recover attorney's fees." *Id.*  Moreover, the Court recognized that the Ninth Circuit has "regularly allowed attorney's fees recovery under state law without pausing over Rule 11, before and after *Shady Grove*," because "once a state attorney's fees provision is deemed *substantive*, not procedural, there is no conflict with Rule 11." *Id.* (listing cases).

[4] As noted in its motion, the University of Washington acknowledges the language of RCW 4.105.010(3)(a)(i) but joins Stanford's motion under Washington's Anti-SLAPP statute because application of the "governmental unit" exception to University personnel conflicts with the traditional First Amendment protections afforded to the academic community.  *See* UW Mot. at 4-6.  In any event, for the reasons described herein, Rule 12(b)(6) supplies the standard for adjudication of this motion whether or not it is considered under RCW Chapter 4.105.

DEFENDANTS' REPLY ISO
MOTIONS TO DISMISS - 3
(CASE No. 2:21-cv-01326-TSZ)

**Miller Nash LLP**
Pier 70 | 2801 Alaskan Way | Suite 300
Seattle, WA  98121-1128
206.624.8300 | Fax: 206.340.9599

1    The parties also agree that "[u]nder Rule 12, a federal court evaluating a motion to

2    dismiss before discovery may 'consider . . . matters properly subject to judicial notice.'"  Opp. at

3    19 (quoting *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012)).  But Project Veritas

4    inconsistently asserts that "under Rule 12(d), a federal court 'must' convert a Rule 12 motion to

5    a Rule 56 motion where, as here, evidence is ***presented*** outside the four corners of the

6    complaint."  *Id*. (emphasis added).  This is not true for two reasons.  First, as noted above and

7    acknowledged by Plaintiff, a Court can consider evidence outside the pleadings under Rule 12 if

8    that evidence is properly subject to judicial notice.  Second, as Plaintiff also acknowledges, Rule

9    12(d) requires such conversion to Rule 56 only "if the Court ***considers and credits*** . . . outside-

10   the-pleadings materials" that are ***not*** subject to judicial notice.  *Id*. at 34 n.19 (emphasis added).

11   And as set forth at length in Defendants' Opposition to Plaintiff's Rule 12(d) and 56(d)

12   Motion, these two reasons also demonstrate why the Court should not convert Defendants'

13   Motions.  First, Defendants ask the Court to consider news articles, but only for their existence

14   and subject matter, not for their underlying truth, a proper purpose of judicial notice.  In short,

15   the court should notice what the cited media said in response to the Video, but not engage in

16   fact-finding to decide whether the media's observations were accurate or inaccurate, which is

17   what Plaintiff erroneously suggests.  Second, to the extent that the Court believes Defendants

18   seek judicial notice of any evidence for an improper purpose, both Defendants and Project

19   Veritas agree that the Court should decline to consider the evidence for that purpose rather than

20   convert Defendants' Motions.  *See generally* Dkt. 53 (Defendants' Opposition to Plaintiff's Rule

21   12(d) and 56(d) Motion).[5]  And with the standard for decision so clarified, there is no question

22   that the Complaint fails under established 12(b)(6) standards.

23   _____

24   [5] Ironically, the only party that asks the Court to consider a judicially noticeable document for its underlying truth is
     Project Veritas.  *See* Opp. at 9 n.4 (citing to the Answer in Project Veritas' litigation with the Times and asking the

25   Court to accept as true the Times' admission therein "that it received an embargoed copy of the EIP Report before it
     was published").  But Defendants do not dispute that they sent the Times an early copy of the Blog Post, only

26   Project Veritas' implausible leap that this uncontroversial media practice, commonly used to encourage reporting on
     the information people wish to have published, in any way suggests actual malice.  *See infra* § IV.B.

1

## III.   PLAINTIFF DOES NOT ADEQUATELY ALLEGE FALSITY

2

As noted in Defendants' Motions, Plaintiff's Complaint fails to adequately allege falsity.

3

Plaintiff's Opposition does nothing to counter that reality.  In their motions, Defendants

4

identified specific claims and statements made in the Project Veritas Video and explained how

5

they either (i) are not supported by evidence in the Video, or (ii) were called into question by

6

other media.  *See* Stanford Mot. at 14-15; UW Mot. at 7-13.  Rather than addressing each of the

7

challenged statements and explaining how they actually *are* supported with evidence within the

8

Video, Project Veritas ignores virtually all of them.  Instead, Plaintiff recharacterizes the Blog

9

Post as conveying an "unmistakable message" that Veritas "violated a fundamental tenet of

10

journalism by intentionally lying to its viewers."  Opp. at 30.  By mischaracterizing the Blog

11

Post to promote a narrative that Defendants' Motions ask the Court to determine what is "true"

12

and what are "lies," Plaintiff dodges the straightforward questions in Defendants' Motions.

13

Unable to defend the unsupported claims in the Video, Project Veritas also argues that its

14

Complaint can be salvaged by an exceedingly low pleading standard, and that ruling in

15

Defendants' favor would impermissibly "require this Court to pick and choose from contested

16

interpretations of the Video Report."  Opp. at 33.  Not so.  Defendants do not ask this Court to

17

"interpret" the Video, let alone make factual findings whether the Video's claims of election

18

fraud are true or false.  This defamation case is about the truth and susceptibility to defamatory

19

meaning of three statements in Defendants' Blog Post.  Defendants merely ask the Court to view

20

the Video to confirm that several claims were made without identifying factual "support"—just

21

as the Blog Post plainly and simply asserts.  Similarly, Defendants do not ask this Court to weigh

22

the accuracy of third-party news stories.  Defendants merely ask the Court to confirm the reality

23

that those stories call into question—or "debunk"—certain claims within the Video.  Because the

24

Video is incorporated in the Complaint, and the Court can take judicial notice of what "existed"

25

in public third-party media, evaluating the allegations of falsity can be made on the undisputed

26

DEFENDANTS' REPLY ISO
MOTIONS TO DISMISS - 5
(CASE No. 2:21-cv-01326-TSZ)

**Miller Nash LLP**
Pier 70 | 2801 Alaskan Way | Suite 300
Seattle, WA  98121-1128
206.624.8300 | Fax: 206.340.9599

content of the Complaint, Video, and media, and does not involve credibility determinations, drawing competing inferences, or other fact-finding.

**A.      The "Low Standard" For Complaints On 12(b)(6) Does Not Salvage Claims**

Project Veritas begins the defense of its deficient Complaint by stressing its view that the pleading standard necessary to survive a motion to dismiss is low.  Opp. at 14.  Indeed, Plaintiff goes so far as to advise that the Court should uphold the Complaint even if, as Project Veritas seems to concede, a "savvy judge" would view its allegations as "improbable." *Id.*  While the language that Project Veritas has plucked from case law is accurately quoted, it ignores several key limitations to the benefit of the doubt to which its pleadings are entitled.  For example, while the Court must accept as true all the Complaint's well-pleaded factual allegations, the Court is not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1008 (9th Cir. 2018) (internal quotation marks omitted).  "Nor is the Court required to accept 'conclusory legal allegations cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged.'" *Phillips v. Seattle Times Co.*, 818 F. Supp. 2d 1277, 1283 (W.D. Wash. 2011) (quoting *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994)).

In this case, Project Veritas alleges that Defendants' Blog Post was defamatory because it falsely stated that the Video contained assertions that were not supported by evidence.  This Court is well-suited to the task of examining the Video to determine, on its face, whether it made unqualified claims of election fraud that were not supported by evidence presented.  In so doing, the Court can verify that the Blog Post's statements were "true" and nondefamatory. Furthermore, this assessment can be made without weighing issues of credibility.[6]

---

[6] Although Project Veritas concedes that "whether a claim does or does not have factual support is a matter of verifiable fact," Opp. at 27, it later contradicts itself by claiming that the Court would have to make credibility determinations in order to judge whether the Blog Post's claim that the Video contained statements that were not supported is true or not.  *Id.* at 33 ("Defendants' truthfulness arguments require this Court to pick and choose from among contested interpretations of the Video Report and to discredit the allegations of falsity in the Complaint.").

DEFENDANTS' REPLY ISO
MOTIONS TO DISMISS - 6
(CASE No. 2:21-cv-01326-TSZ)

**Miller Nash LLP**
Pier 70 | 2801 Alaskan Way | Suite 300
Seattle, WA  98121-1128
206.624.8300 | Fax: 206.340.9599

**B.**     **Plaintiff Does Not Dispute That The "Sting" Of The Blog Post Is True**

As Defendants point out in their motions, Project Veritas identifies only three sentences in the Blog Post that it claims are false:  (1) "The video made several falsifiable claims that have either been debunked by subsequent reporting or are without any factual support," (2) "As the video calls into question the integrity of the election using misleading or inaccurate information, we determined this video to be a form of election disinformation," and (3) "[T]his video stands as an interesting example of what a domestic, coordinated elite disinformation campaign looks like in the United States."  To the extent the first two statements are susceptible to defamatory meaning, they are true and verifiable by looking solely at the Video itself and the face of the news coverage commenting on the Video.  Because these first two statements are not defamatory, neither is the third, which defines "disinformation" simply as having either of the first two characteristics (being "unsupported" and/or "debunked").[7]  The Blog Post makes no ultimate claim about truth or falsity beyond these two observations.

Project Veritas does not dispute that, in order to state a claim for defamation, a plaintiff must allege falsity—and to the extent that a defendant can demonstrate the truth of the challenged statements on the face of the pleadings and judicially noticeable documents, the allegations fail as a matter of law.  *See, e.g.*, *Phillips*, 818 F. Supp. 2d at 1284 ("Defamatory meaning may not be imputed to true statements." (quoting *Lee v. Columbian, Inc.*, 64 Wn. App. 534, 538 (1991)).  Further, as this Court has noted, "a defamation defendant need not prove the literal truth of every claimed defamatory statement," but "need only show that the statement is substantively true or that the gist of the story, the portion that contains the 'sting' is true." *Paterson v. Little Brown*, 502 F. Supp. 2d 1124, 1133 (W.D. Wash. 2007).  In this case, the

---

[7] The characterization of the video's content as "disinformation" is incorporated into statements (1) and (2), above.  Indeed, the meaning of "disinformation" is defined in terms of calling into question the election based on "misleading or inaccurate information."  Thus, to the extent statements (1) and (2) are true, this third statement cannot be false.  In addition, the Complaint does not allege that the Blog Post's description of the coordinated manner in which the Video was disseminated and promoted—its undisputed core subject—was false in any way.

**Miller Nash LLP**
Pier 70 | 2801 Alaskan Way | Suite 300
Seattle, WA  98121-1128
206.624.8300 | Fax: 206.340.9599

1    challenged statements' clear "gist" or "sting" is that the Video contains statements that are not

2    supported by the facts it reports, and that subsequent news articles called out the Video for that

3    lack of support.

4                 **1.**      **Plaintiff Does Not Dispute that the Video "made several falsifiable**

5                         **claims that . . . are without any factual support"**

6          In their motions, Defendants identify multiple statements from the Video that lack factual

7    support—thus demonstrating that the Blog Post's challenged defamatory statements are true.

8    Project Veritas fails to even try to dispute the unsupported nature of the specific claims

9    Defendants challenged, or suggest that the Video contains any evidence that could buttress the

10    statements.  This abdication alone is sufficient to justify granting Defendants' Motions.

11          By way of example, Defendants identified the Video's assertion that it had demonstrated

12    a "***massive criminal voter fraud caught irrefutably on video tape***," as a statement made in the

13    Video that lacked support.  UW Mot. at 11.  As Defendants pointed out in their briefs, the Video

14    is so heavily edited that the Snapchat snippets that purport to show ballot harvesting amount to

15    unsupported hearsay in a foreign language, lacking context, and fail to provide anything

16    remotely resembling supporting evidence of "massive criminal voter fraud."  And even when

17    given the interpretation advanced in the Video, the clips do not evidence any crimes "caught

18    irrefutably on videotape."  Video at 15:55-16:04; Transcript at 19:4-5.  For example, Plaintiff did

19    not surreptitiously record any individual exchanging cash for ballots or otherwise prove a crime.

20          Indeed, even if actual ballots were collected, third-party collection of ballots for delivery

21    to polling stations was legal for much of the summer during the 2020 election cycle in

22    Minnesota.  *See DSCC v. Simon*, No. 62-CV-20-585 (Minn. Sec. Jud. Dist., Jul. 28, 2020)

23    (holding ballot harvesting for more than three registered voters to be legal); *DSCC v. Simon*, No.

24    A20-1017 (Minn. Sup. Ct., Sept. 4, 2020) (overturning *DSCC*).  In its Opposition, Project Veritas

25    does not dispute this, thereby conceding that this claim is not supported.  This is critical because

26    this statement summarizes the foundational message conveyed by the Video, and places all the

**Miller Nash LLP**
Pier 70 | 2801 Alaskan Way | Suite 300
Seattle, WA  98121-1128
206.624.8300 | Fax: 206.340.9599

other statements in the Video in important context.  The fact that Project Veritas is not able to even suggest that the Video provided evidence to support its expansive claim of criminal conduct reveals the accuracy of the observations in the Blog Post.

Lest there be any question that this was the primary thrust that Project Veritas intended to convey in the Video, on September 24, 2020, just days before the Video was released, Mr. O'Keefe tweeted out a message that Project Veritas would soon be releasing, "UNDENIABLE VIDEO PROOF OF SYSTEMIC VOTER FRAUD."  Stanford Mot. at 1, 3, 14.  Two days later, Project Veritas' official Twitter account tweeted that it had "obtained undeniable video proof of systemic voter fraud."  *Id*.  Both of these statements were highlighted in Defendants' briefs, but, again, Project Veritas fails to address them in its Opposition.

The Project Veritas Video focuses heavily on Snapchat videos purportedly of a man named Liban Mohamed, who is also identified by aliases, whose identity as an agent of Rep. Ilhan Omar is confirmed by no one, and who waives a handful of illegible envelopes in the air while making vague declarations about collecting ballots in an unidentified foreign language, translated by who knows whom.  The Video claims that, "*Liban Mohamed's [Snapchat] video shows him violating Minnesota's election laws, which prohibit someone from collecting more than three ballots*."  As Defendants point out, this statement is not supported by anything approaching confirmatory evidence.  UW Mot. at 11-13.  No secondary source supports any of the information, there is no identifying information on any of the purported ballots (from what is shown on the grainy video they could easily be empty envelopes bought at a stationery store), there is no inspection by Project Veritas or anyone else of the ballots themselves, and no voters confirmed that they provided their ballot to Mohamed as part of an illegal scheme.

This Court is well suited to assess whether a purely hearsay Snapchat video did or did not corroborate a "*massive criminal voter fraud caught irrefutably on video tape*."  Assessing whether EIP's statement was literally true based simply on viewing the Video does *not* require this Court to determine the ultimate truth or falsity of the claims Project Veritas makes about

DEFENDANTS' REPLY ISO
MOTIONS TO DISMISS - 9
(CASE No. 2:21-cv-01326-TSZ)

**Miller Nash LLP**
Pier 70 | 2801 Alaskan Way | Suite 300
Seattle, WA  98121-1128
206.624.8300 | Fax: 206.340.9599

1   "systemic voter fraud."  The allegation that the Blog Post *falsely* stated this claim lacked support

2   is implausible on the face of the Video, has not been contested, and should be dismissed.

3          There are additional examples of hearsay claims without support.  For example, Project

4   Veritas promised to reveal an "***Ilhan Omar connected Ballot Harvester in cash-for-ballots***

5   ***scheme.***"  In the snippets shown in the Video, Mr. Mohamed never mentions Representative

6   Omar or anyone associated with her and never claims he is paid by her agents as part of a

7   conspiracy to harvest ballots.  Omar Jamal, who is interviewed in the Video, claims only that he

8   "think[s]" that those involved in the alleged voter fraud work with Representative Omar but

9   provides no support to back up that claim.  Transcript at 5:24-25.  One anonymous source (by

10  definition unconfirmed) says that ballot harvesters bought absentee ballots with money from Ali

11  Isse Gainey, who worked on Representative Omar's campaign, but no support is presented in the

12  Video to confirm any of this.  Transcript at 11:5-7.  No ballot is examined, no identifying

13  information for any ballot is shown, no ballot is authenticated, and not a single identifiable

14  Minneapolis voter corroborates any information presented in the Video about acquiring or

15  "harvesting" ballots.  Transcript at 5:10; 10:6; 15:14-15.  Of course, the Video also lacks any

16  forensic financial evidence showing illicit payments that were allegedly used to buy votes in a

17  criminal scheme.  Project Veritas presents no argument or evidence in its Opposition that would

18  support this statement, or the Video's claims that "*[the] investigation into this ballot harvesting*

19  *ring demonstrated clearly how these unscrupulous operators exploit the elderly and immigrant*

20  *communities—and have turned the sacred ballot box into a commodities trading desk*," and

21  that "*[t]his appears to be an effort that is very systemic and very coordinated*."  Transcript at

22  15:15-16.  Project Veritas simply ignores these statements.

23          Because Project Veritas cannot support its overstated claims, it tries to walk them back

24  by nitpicking at its own language, arguing, for example, that some claims were qualified by

25  saying "*sources allege*" Congresswoman Omar is involved (not that she is actually involved), or

26  only that it "*appears*" to be a systemic and coordinated voter-fraud effort.  Plaintiff's resort to

DEFENDANTS' REPLY ISO
MOTIONS TO DISMISS - 10
(CASE No. 2:21-cv-01326-TSZ)

**Miller Nash LLP**
Pier 70 | 2801 Alaskan Way | Suite 300
Seattle, WA  98121-1128
206.624.8300 | Fax: 206.340.9599

1    after-the-fact parsing fails to overcome the thrust of the Video, which Project Veritas proclaimed

2    to be "irrefutable" and "undeniable" evidence of massive voter fraud.  On its face, it is not.

3         Project Veritas also tries to evade its pleading burden by suggesting that if the Court were

4    to examine the Video to determine whether or not there were claims made without support, it

5    would require the Court to make credibility determinations and, "pick and choose from contested

6    interpretations of the Video Report."  Opp. at 33.  But that is not the case.  The Court is perfectly

7    capable of viewing the Video to determine whether it provides support for the claims that it

8    contains "irrefutable" evidence of a crime or "undeniable" proof of wrongdoing.  If there is not

9    support for these claims, then the simple and literal assertion in Defendants' Blog Post that the

10   Video contains "several statements" that lack any support is true and cannot constitute

11   defamation.  *Phillips*, 818 F. Supp. 2d at 1284 ("Defamatory meaning may not be imputed to true

12   statements") (quoting *Lee*, 64 Wn. App. at 538)).

13            2.    **Plaintiff Does Not Dispute that the Video "made several falsifiable**

14                  **claims that have . . . been debunked by subsequent reporting"**

15        Project Veritas also does not dispute in its Opposition that numerous third-party news

16   reports examined the allegations made in the Video and concluded that many of the assertions

17   therein were not supported by the evidence offered.  It could not.  As detailed in Defendants'

18   Motions, such articles were numerous and detailed.  Instead, Project Veritas asserts two lines of

19   attack to try to evade the truth of Defendants' undisputed observation.  First, it asserts that these

20   articles did not (in Project Veritas' view) "debunk" the Video's statements because one technical

21   definition of "debunk" is "to prove false"—rather than to call into question underlying factual

22   support.  Second, it again asserts that for the Court to find that the articles "debunk" the Video, it

23   would have to impermissibly weigh the news reports' credibility.  Neither argument is availing.

24        Project Veritas' attempt to rely on what it claims is the definition of the term "debunk"

25   cannot salvage its complaint.  As noted above, in determining whether a defamation defendant

26   can show that a challenged statement is true, courts do not dissect the statement in the way

DEFENDANTS' REPLY ISO
MOTIONS TO DISMISS - 11
(CASE No. 2:21-cv-01326-TSZ)

**Miller Nash LLP**
Pier 70 | 2801 Alaskan Way | Suite 300
Seattle, WA  98121-1128
206.624.8300 | Fax: 206.340.9599

Project Veritas suggests.  Rather courts look to the "gist" or the "sting" of the statement, and if that gist is substantially true, then the allegation of defamation cannot stand.  As noted in Defendants' Motions, to "debunk" means "to show that something is less important, less good, or less true than it has been made to appear."  *Debunk,* Cambridge Dictionary (2022); *see also Debunk*, American Heritage College Dictionary (2022) (defining "debunk" as "[t]o expose or ridicule the falseness, sham, or exaggerated claims of"); *Debunk*, Dictionary.com (2022) (defining "debunk" as "to expose or excoriate (a claim, assertion, sentiment, etc.) as being pretentious, false, or exaggerated"); UW Mot. at 7.  Project Veritas ignores these definitions and focuses on a secondary definition, "to prove false," arguing that the news articles did not technically "debunk" the statements in the Video according to this definition.  This semantic argument misses the point.  As an initial matter, as the varied dictionary definitions make clear, the term "debunk" is an imprecise and colloquial term, similar in nature to terms like "scam," "fake," or "phony," which this Court has recognized as being imprecise and therefore unprovable and unsusceptible to a defamatory meaning.  *See, e.g., Paterson*, 502 F. Supp. 2d at 1135.  Furthermore, the "gist" of the Blog Post's opening paragraph is not to provide a detailed analysis of the flaws in the various claims made in the Video, but merely to point out that some of the claims were not supported by evidence or had been called into question by subsequent news reports.  That is a true and accurate statement—and Project Veritas does not even try to dispute that conclusion in its Opposition.  Plucking a secondary definition from the dictionary cannot alter the meaning of the Blog Post's statement such that it salvages a deficient pleading.

Project Veritas' claim that the Court cannot examine the third-party news articles without weighing their credibility is also incorrect.  The mere existence of the articles is evidence that certain statements in the Video had been debunked—*i.e.*, called into question or ridiculed as exaggeration. Whether the criticisms were justified or not, their mere existence substantiates the gist of the observation made in the Blog Post.  The Court can plainly assess the undisputed *existence* of the criticisms without weighing the *credibility* of the articles.  Any reader of the

DEFENDANTS' REPLY ISO
MOTIONS TO DISMISS - 12
(CASE No. 2:21-cv-01326-TSZ)

**Miller Nash LLP**
Pier 70 | 2801 Alaskan Way | Suite 300
Seattle, WA  98121-1128
206.624.8300 | Fax: 206.340.9599

1    Blog Post also had the capability to look at other media and make their own assessment whether

2    the media "debunked" the Video, however they might define or interpret the term.

3         For example, Defendants' Motions note that on September 28, 2020, Minneapolis Fox

4    affiliate KMSP-TV published a news article on its website titled, *Project Veritas Alleges*

5    *Election Fraud, Evidence Scant* (Brand Decl. Ex. 8). The criticisms in that article include:

6         The meat of the Project Veritas report, posted on YouTube Sunday night, was a
          Snapchat video from the brother of newly elected City Councilman Jamal Hassan.
7         In the video, Liban Mohamed, is seen driving his car and bragging about money in
          politics with what appears to be dozens of mailed in ballots.
8
          "Money is everything. Money is the king of this world. If you don't have money
9         you should not be here. Period," said Liban Mohamed in the video. Attempts to
          reach Liban Mohamed through his social media accounts were not successful.
10
          For O'Keefe the implication was clear: Money was being exchanged for votes, and
11        those ballots were being "harvested."

12        But the full context of the video is unclear. Were the ballots sealed? Had they
          already been filled out? Where did the ballots come from?
13
          And the timing of that video may be critical. The practice of turning in ballots that
14        are not your own – or, "harvesting" – was in flux this summer with three separate
          court decisions.

15   These comments rely solely on an examination of the Video itself.

16        Similarly, the Sahan Journal's September 28, 2020 article titled, *How did an August*

17   *primary election in Minneapolis turn into a national right-wing disinformation campaign against*

18   *absentee ballots?* (Brand Decl. Ex. 10) did nothing more than summarize the evidence that

19   existed for various claims within the Video:

20        It's safe to say that there isn't any solid evidence of wrongdoing. Project Veritas'
          report presents only the word of a few sources, most of whom are anonymous, and
21        a few videos from Snapchat, none of which clearly show fraudulent ballots.

22   This pithy summary, and the KMSP excerpt above, demonstrate exactly what was intended by

23   EIP's statement that the Video had been debunked.  As do all the articles cited by Defendants.

24              **3.    The Challenged Statements Are Opinions**

25        Project Veritas also fails to adequately dispute the reality that the statements in the Blog

26   Post's introduction are more akin to opinions regarding the adequacy of the Video's support,

DEFENDANTS' REPLY ISO
MOTIONS TO DISMISS - 13
(CASE No. 2:21-cv-01326-TSZ)

**Miller Nash LLP**
Pier 70 | 2801 Alaskan Way | Suite 300
Seattle, WA  98121-1128
206.624.8300 | Fax: 206.340.9599

1  rather than definitive statements of fact.  Project Veritas attempts to turn back Defendants'

2  argument by pointing out that words like "debunk," "misleading," and "disinformation" all have

3  dictionary definitions and the Blog Post's statements are therefore, "capable of being interpreted

4  as factual assertions."  Opp. at 27-28.  But the fact that words have meanings that could be

5  interpreted as negative factual assertions does not place them outside the realm of opinion.

6  Indeed, terms like "rip-off," "fraud," and "scam" all also have dictionary definitions that are

7  more derogatory and definitive than the Blog Post's terms, and yet this Court has noted that

8  those terms, as often used, "are imprecise hyperbole, incapable of defamatory meaning."

9  *Paterson*, 502 F. Supp. 2d at 1135.

10     More importantly, Project Veritas injected itself into one of the most important and hotly

11  debated issues of the day—the security of the 2020 election.  The notion that it is entitled to

12  weigh in on that topic, claiming to have provided "irrefutable" evidence of fraud and

13  "undeniable" video evidence of wrongdoing, and then prevent others from expressing opinions

14  about the veracity of its reporting and the adequacy of the support provided for those claims flies

15  in the face of the rights the First Amendment was intended to protect.  Project Veritas' attempt to

16  use the courts to squelch debate is improper and threatens to open a Pandora's box that would

17  lead to judges making decisions about what opinions are appropriate and what opinions are not.

18  **IV.     PLAINTIFF DOES NOT ADEQUATELY ALLEGE ACTUAL MALICE**

19     In their opening briefs, Defendants clearly articulated why the Complaint fails to

20  plausibly plead actual malice—*i.e.*, that the Blog Post was published with actual knowledge of or

21  reckless disregard for its falsity.  Stanford Mot. at 17-19; UW Mot. at 14-19.  In response,

22  Project Veritas first attempts to minimize its burden to plead actual malice, and then insists that it

23  has met this reduced burden of its own construction.  Opp. at 36-39.  Neither argument avoids

24  the inevitable conclusion that the Complaint does not plausibly allege actual malice.

25

26

1    **A.    Pleading Actual Malice Is A Demanding Burden**

2        "[T]he [Supreme] Court has frequently reaffirmed that speech on public issues occupies

3    the 'highest rung of the hierarchy of First Amendment values,' and is entitled to special

4    protection." *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. 749, 759 (1985)

5    (quoting *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 913 (1982)).  No current public

6    issue is deserving of greater deference than the nation's ongoing debate over election integrity.

7    This principle of protecting speech has translated into a requirement that a defamation plaintiff

8    meet a "demanding burden" in pleading actual malice.  *See* Stanford Mot. at 17-18; UW Mot. at

9    14-16.  Plaintiff, an acknowledged public figure, would trample these bedrock principles.[8]

10       Plaintiff attempts to duck the "demanding burden" required to plead actual malice with a

11   string cite in support of the uncontested proposition that Rule 8 rather than Rule 9 of the Federal

12   Rules of Civil Procedure sets the standard to plead malice.  *See* Opp. at 36.  But the cases cited

13   by Defendants and ignored by Project Veritas identify a "demanding burden" to plead actual

14   malice ***under Rule 8***.  *Tull v. Higgins*, No. 21-CV-01566-DMR, 2021 WL 6116971, at *8 (N.D.

15   Cal. Dec. 27, 2021); *Resolute Forest Prod., Inc. v. Greenpeace Int'l*, 302 F. Supp. 3d 1005, 1018

16   (N.D. Cal. 2017); *Wynn v. Chanos*, 75 F. Supp. 3d 1228, 1239 (N.D. Cal. 2014).

17       Further, if one looks past the cherrypicked quotations in the Opposition's string cite, the

18   cases Plaintiff relies on either fully accord with this demanding burden or are irrelevant.  For

19   example, the *Iqbal* excerpt on which Project Veritas relies reads in full as follows:

20           It is true that Rule 9(b) requires particularity when pleading "fraud or mistake,"
             while allowing "[m]alice, intent, knowledge, and <u>other conditions of a person's
21           mind [to] be alleged generally</u>."  But "generally" is a relative term.  In the context
             of Rule 9, it is to be compared to the particularity requirement applicable to fraud
22           or mistake.  Rule 9 merely excuses a party from pleading discriminatory intent
             under an elevated pleading standard. It does not give him license to evade the less
23           rigid—though still operative—strictures of Rule 8.  And Rule 8 does not empower

24   ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
     [8] Defendants pointed out shortcomings in published information on a matter of the utmost public importance, the
25   "gist" of which is not contested by Plaintiff.  The First Amendment exists to protect and promote precisely this kind
     of speech, and courts must exercise care to avoid squelching it by entertaining implausible claims from a serial
26   defamation litigant such as Project Veritas.  *See* https://www.projectveritas.com/news/ongoing-litigation/ (listing
     selected lawsuits in support of Plaintiff's ongoing fundraising activity).

DEFENDANTS' REPLY ISO
MOTIONS TO DISMISS - 15
(CASE No. 2:21-cv-01326-TSZ)

**Miller Nash LLP**
Pier 70 | 2801 Alaskan Way | Suite 300
Seattle, WA  98121-1128
206.624.8300 | Fax: 206.340.9599

1    respondent to plead the bare elements of his cause of action, affix the label "general
2    allegation," and expect his complaint to survive a motion to dismiss.

3    *Ashcroft v. Iqbal*, 556 U.S. 662, 686-87 (2009) (citation omitted) (language <u>quoted</u> in Opp. at 36
4    underlined).  Similarly, Plaintiff cites the *Peterson* court's statement that it "'will, consistent with
5    the overwhelming weight of post-*Iqbal* authority, address whether Plaintiff has plausibly alleged
6    that Defendants acted with actual malice at the pleading stage.'"  Opp. at 36 (quoting *Peterson v.*
7    *Gannett Co. Inc.*, No. CV-20-00106-PHX-MTL, 2020 WL 1935520, at *8 (D. Ariz. Apr. 22,
8    2020)).  But *Peterson* also recognized *Iqbal* as "holding that actual malice is subject to a
9    heightened pleading standard," and dismissed the complaint because plaintiff had "failed to
10   satisfy the 'demanding burden' for pleading actual malice."  *Peterson*, 2020 WL 1935520, at *7-
11   8; *see also Miller v. Sawant*, 18 F.4th 328, 337 (9th Cir. 2021) ("<u>plaintiff asserting a state-law</u>
12   <u>defamation claim in federal court need only satisfy Rule 8</u>; a state's heightened pleading
13   requirement does not apply" (language <u>quoted</u> in Opp. at 36 underlined)).

14          In sum, Project Veritas offers no meaningful response to the case law holding that the
15   requirements of actual malice and the strictures of Rule 8 combine to create a "'demanding
16   burden'" that can only be met by "specific allegations of a speaker's mindset," not mere
17   "'general allegations that a defendant should have known or should have investigated the truth of
18   his or her statements.'"  *Resolute Forest Prod.*, 302 F. Supp. 3d at 1018 (quoting *Wynn v.*
19   *Chanos*, 75 F. Supp. 3d at 1239); *see also id.* ("the court must 'disregard the portions of the
20   complaint where [the plaintiff] alleges in a purely conclusory manner that the defendants had a
21   particular state of mind in publishing the statements" (quoting *Michel v. NYP Holdings, Inc.*, 816
22   F.3d 686, 703-04 (11th Cir. 2016)); *id.* ("'States of mind may be pleaded generally, but a
23   plaintiff still must point to details sufficient to render a claim plausible.'" (quoting *Pippen v.*
24   *NBCUniversal Media, LLC*, 734 F.3d 610, 614 (7th Cir. 2013))).[9]

25   _____
     [9] *Accord* Order Granting Motion to Dismiss, *Project Veritas v. Cable News Network, Inc.*, No. 1:21-CV-01722-SCJ
26   (N.D. Ga. Mar. 17, 2022), ECF No. 27 at 8-9 ("The Eleventh Circuit has also stated that 'application of the
     plausibility pleading standard makes particular sense when examining public figure defamation suits [because] [i]n

DEFENDANTS' REPLY ISO
MOTIONS TO DISMISS - 16
(CASE No. 2:21-cv-01326-TSZ)

**Miller Nash LLP**
Pier 70 | 2801 Alaskan Way | Suite 300
Seattle, WA  98121-1128
206.624.8300 | Fax: 206.340.9599

1

    **B.    Plaintiff Fails To Meet This Demanding Burden**

2

       Turning to the allegations in the Complaint, Project Veritas insists that it states a claim

3

for actual malice "based on the ***accumulation and totality*** of circumstantial evidence."  Opp. at

4

39 (emphasis in original).  But even taken as a whole, Project Veritas' factual allegations do not

5

create any plausible inference that Stanford or the University of Washington acted with

6

knowledge that the Blog Post was false or reckless disregard for its veracity.

7

       As set forth in Defendants' Motions, most of Plaintiff's allegations of actual malice are

8

conclusory and thus offer no support, alone or as an "accumulation," for the plausibility of actual

9

malice.  *See* Stanford Mot. at 18; UW Mot. at 15-18; Compl. ¶ 166 (recitation of actual malice

10

standard); *id*. ¶¶ 70, 112-20, 167 (actual malice because Video itself shows it is not misleading);

11

*id*. ¶¶ 173-76 (actual malice because universities' policies prohibit knowingly or recklessly

12

publishing false statements); *see also Wynn v. Chanos*, 75 F. Supp. 3d at 1239 (where plaintiff

13

"merely recites an element of slander and does not present any potential supporting facts" that is

14

"insufficient to satisfy the 'demanding burden' for pleading actual malice in defamation

15

actions"); *Miller v. Watson*, No. 3:18-CV-00562-SB, 2019 WL 1871011, at *13 (D. Or. Feb. 12,

16

2019) ("conclusory allegation does not adequately allege actual malice" without "any specific

17

allegations that would support" such a finding); *Planet Aid, Inc. v. Center for Investigative*

18

*Reporting*, No. 17-cv-03695-MMC, 2021 WL 1110252 at *20 (N.D. Cal. Mar. 23, 2021)

19

("'[E]ven an extreme departure from accepted professional standards of journalism . . . will not

20

suffice to establish actual malice.'" (quoting *Newton v. Nat'l Broad. Co.*, 930 F.2d 662, 669 (9th

21

Cir. 1990)).  The Opposition neither identifies nor rehabilitates any facts underlying these

22

allegations.  *See, e.g.,* Opp. at 38.

23

       Plaintiff also attempts to plead actual malice based on allegations of failure to investigate,

24

Compl. ¶¶ 168-69; failure to retract, *id*. ¶¶ 149, 170; and bias, *id*. ¶¶ 38-47, 172; *see also* Opp. at

25

26

these cases, there is a powerful interest in ensuring that free speech is not unduly burdened by the necessity of defending against expensive yet groundless litigation.'" (alterations in original) (quoting *Michel*, 816 F.3d at 702 (discussing Project Veritas as a public figure defamation plaintiff)).

38.  As set forth in Defendants' Motions and undisputed in the Opposition, the allegations that the Blog Post authors (a) did not personally reach out to Project Veritas or the individuals identified in the Video, (b) stood by their post despite demands for retraction, and (c) disliked Project Veritas for personal and political reasons (assuming the truth of such bias allegations for purposes of this motion only) provide at most extremely marginal and highly circumstantial support for actual malice.  *See Stanford Mot.* at 18-19 & n.9; *UW Mot.* at 15-19; *Paterson*, 502 F. Supp. 2d at 1146 (under Washington law, critics of "a public figure defamation plaintiff . . . have no affirmative duty to search out the truth or to substantiate their statements, nor are they required to corroborate their sources' information"); *Bose Corp. v. Consumers Union of U.S., Inc.*, 466 U.S. 485, 512 (1984) (actual malice judged at time of publication); *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 665 (1989) ("a newspaper's motive in publishing a story . . . cannot provide a sufficient basis for finding actual malice").  Further, these allegations are particularly weak here because the Blog Post expressly relied on the fact that certain of the Video's claims had already "been debunked by subsequent reporting."  Compl. Ex. A at 1.  Indeed, both prior to the publication of the Blog Post and prior to the decisions not to retract, there was a plethora of reporting that challenged the Video's claims, including based on the statements and conduct of the individuals in the Video.  Brand Decl. Exs. 4, 6-14.

Plaintiff's final theory of actual malice is nothing more than an implausible conspiracy theory irrelevant to the question of whether Defendants knew that any statements in the Blog Post were false or recklessly disregarded that likelihood.  According to the Opposition, the EIP and the Times "created a plan . . . that EIP would publish its Article claiming that the Video Report was false, which The Times could then use as a basis for its own story repeating and expanding on those claims."  Opp. at 8; *see also* Compl. ¶ 96 (alleging this conspiracy, and nothing else in the Complaint, "[o]n information and belief"); *id.* ¶ 171 ("Defendants also acted with actual malice by publishing a preconceived narrative—working hand in hand with The New York Times to develop the thesis and preconceived storyline before publication.").  But such

DEFENDANTS' REPLY ISO
MOTIONS TO DISMISS - 18
(CASE No. 2:21-cv-01326-TSZ)

**Miller Nash LLP**
Pier 70 | 2801 Alaskan Way | Suite 300
Seattle, WA  98121-1128
206.624.8300 | Fax: 206.340.9599

1    "preconceived notions . . . do[] little to show actual malice" because they are "not antithetical to

2    the truthful presentation of facts." *Jankovic v. International Crisis Group*, 822 F.3d 576, 597

3    (D.C. Cir. 2016) (internal quotations omitted).

4          Setting aside the fact that such thinly-alleged "collusion" has no relevance to the truth of

5    the Blog Post's statements or any awareness by the Defendants of any potential falsity of such

6    statements, the only factual allegation underlying this fantastical story is that the Times article's

7    author received "an advance copy of the Article so she could write a story about it."  Opp. at 8.

8    But the routine practice of providing a publisher with an advance copy of a blog to encourage

9    timely news coverage of it hardly evidences malice.  Indeed, EIP's work during the 2020

10   election was covered by an array of media outlets such as the Associated Press, Bloomberg

11   News, The Detroit Free Press, National Public Radio, The New York Times, Reuters, The Wall

12   Street Journal, and The Washington Post.  Stanford Mot. at 2 (citing Brand Decl. ¶ 21).  "As

13   between that 'obvious alternative explanation . . . and the purposeful, invidious" conduct Project

14   Veritas asks the Court to infer, such conduct "is not a plausible conclusion." *Iqbal*, 556 U.S. at

15   682 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 567 (2007)).

16   **V.     PLAINTIFF'S SECOND AND THIRD CAUSES OF ACTION ALSO FAIL**

17          In its motion, Stanford explained that Project Veritas' second cause of action relating to

18   republication of the Blog Post in *The New York Times* fails along with its first cause of action for

19   publication of the Blog Post itself.  Stanford Mot. at 19; *see also* UW Mot. at 19 (incorporating

20   argument).  Project Veritas appears to agree, similarly stating "Defendants Are Liable for

21   Defamatory Statements in The Times Articles to the Same Extent They Are Liable for the

22   Defamatory Statements in the EIP Article Itself."  Opp. at 39.  Nevertheless, seeking out

23   contention, Plaintiff sets up and knocks down an argument made by neither Defendant—*i.e.*, that

24   the Times "cannot be said to have 'republished' the EIP Article because the [Times] articles use

25   slightly different language in describing and paraphrasing the EIP Article." *Id.*

26

**Miller Nash LLP**
Pier 70 | 2801 Alaskan Way | Suite 300
Seattle, WA  98121-1128
206.624.8300 | Fax: 206.340.9599

1    For the avoidance of doubt, Defendants have simply argued that because they did not

2    defame Project Veritas in the original Blog Post, they similarly did not defame Project Veritas by

3    virtue of some aspects of the Blog Post being republished in the Times.  Plaintiff's authorities are

4    in accord.  *See id.*; *Mitchell v. Superior Ct.*, 37 Cal. 3d 268, 281 (1984) ("if a source acting with

5    actual malice ***furnishes defamatory material*** to a publisher with the expectation that the material

6    (either verbatim or in substance) will be published, the source should be liable for the

7    [re]publication" (emphasis added) (alteration from Opposition)); *Ringler Assocs. Inc. v.*

8    *Maryland Cas. Co.*, 80 Cal. App. 4th 1165, 1182 (2000) ("the law of defamation . . . does not

9    require that a defamatory ***republication,*** whether written or oral, be a literal or verbatim

10   duplicate of the ***original defamatory statement***" (second emphasis added)).[10]

11   Project Veritas offers no defense whatsoever of its third cause of action for respondeat

12   superior.  As set forth in Stanford's opening brief, respondeat superior is a theory of liability, not

13   a standalone cause of action, and even if it were separately cognizable it would rise or fall along

14   with Plaintiff's defamation causes of action.  Stanford Mot. at 20; *see also* UW Mot. at 19

15   (incorporating argument).  In ignoring these points, the Opposition concedes them.

16   **VI.    CONCLUSION**

17   For the reasons set forth above, Defendants respectfully request that the Court dismiss

18   Project Veritas' Complaint with prejudice.

---

[10] Project Veritas repeatedly suggests that it should prevail here because it defeated an anti-SLAPP motion in the Westchester County trial court in its litigation with the Times that involves some of the same Times articles.  *See* Opp. at 1-2, 9 n.4, 12-13.  Four Justices of the New York Appellate Division unanimously issued a stay of discovery in that action pending their determination of the Times' appeal of the trial court's order.  *See* Brand Decl. Ex. 17. Further, the trial court order is neither pertinent nor persuasive here.  *See, e.g.*, UW Mot. at 11 n.7 (that case "involved statements made by the New York Times that are not at issue in this case," and the "court did not conduct an analysis of the Video to determine whether, on its face, the Video lacked evidence to substantiate some of the claims made by Project Veritas").

DEFENDANTS' REPLY ISO
MOTIONS TO DISMISS - 20
(CASE No. 2:21-cv-01326-TSZ)

**Miller Nash LLP**
Pier 70 | 2801 Alaskan Way | Suite 300
Seattle, WA  98121-1128
206.624.8300 | Fax: 206.340.9599

1    DATED this 25th day of March, 2022.

2
     By: *s/ Brian W. Esler*
3    Brian W. Esler, WSBA No. 22168          Sarah G. Flanagan (*pro hac vice*)
     Miller Nash LLP                         Lee Brand (*pro hac vice*)
4    Pier 70, 2801 Alaskan Way, Suite 300    Pillsbury Winthrop Shaw Pittman LLP
     Seattle, WA 98121                       Four Embarcadero Center, 22nd Floor
5    Telephone: (206) 624-8300               San Francisco, CA 94111-5998
     Email: brian.esler@millernash.com       Telephone: +1 415 983 1000
6                                            Email: sarah.flanagan@pillsburylaw.com
7                                                    lee.brand@pillsburylaw.com

8    *Attorneys for Defendant Stanford*

9
     By: *s/ Robert M. McKenna*
10   Robert M. McKenna (WSBA No. 18327)      R. David Hosp (*pro hac vice*)
11   Daniel J. Dunne (WSBA No. 16999)        Kristina D. McKenna (*pro hac vice*)
     Orrick, Herrington & Sutcliffe LLP      Orrick, Herrington & Sutcliffe LLP
12   701 Fifth Avenue, Suite 5600            222 Berkeley Street, Suite 2000
     Seattle, WA 98104-7097                  Boston, MA 02116
13   Telephone: +1 206 839 4300              Telephone: +1 617 880 1800
     Facsimile: +1 206 839 4301              Email: dhosp@orrick.com
14   Email: rmckenna@orrick.com                     kmckenna@orrick.com
             ddunne@orrick.com
15
16   James K. Buder (WSBA No. 36659)
     Assistant Attorney General
17
18   *Attorneys for Defendant University of Washington*

19

20

21

22

23

24

25

26

DEFENDANTS' REPLY ISO                          **Miller Nash LLP**
MOTIONS TO DISMISS - 21                Pier 70 | 2801 Alaskan Way | Suite 300
(CASE No. 2:21-cv-01326-TSZ)                 Seattle, WA  98121-1128
                                         206.624.8300 | Fax: 206.340.9599

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

CERTIFICATE OF SERVICE

 I hereby certify that on March 25, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

 DATED this 25th day of March, 2022.


       *s/ Lee Brand*
       Lee Brand

CERTIFICATE OF SERVICE
(CASE No. 2:21-cv-01326-TSZ)

**Miller Nash LLP**
Pier 70 | 2801 Alaskan Way | Suite 300
Seattle, WA  98121-1128
206.624.8300 | Fax: 206.340.9599