The Honorable Thomas S. Zilly

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

PROJECT VERITAS,

        Plaintiff,

  v.

THE LELAND STANFORD JUNIOR UNIVERSITY and THE UNIVERSITY OF WASHINGTON,

        Defendants.

Case No. 2:21-cv-01326-TSZ

DEFENDANT STANFORD'S MOTION FOR ATTORNEYS' FEES PURSUANT TO RCW 4.105.090

**NOTE ON MOTION CALENDAR:
July 1, 2022**

## TABLE OF CONTENTS

| | Page |
|---|---|
| I. INTRODUCTION | 1 |
| II. FACTUAL AND PROCEDURAL BACKGROUND | 1 |
|    A. Pre-Litigation Activity | 1 |
|    B. Litigation Activity Prior to the Special Motion | 3 |
|    C. The Special Motion and Subsequent Litigation Activity | 5 |
|    D. The Court's May 17 Order | 6 |
| III. ARGUMENT | 6 |
|    A. A Fee Award Is Mandatory | 6 |
|    B. Stanford's Request Is Reasonable | 7 |
|       1. Stanford's Request Reflects Reasonable Hourly Rates | 8 |
|       2. Stanford's Request Reflects Reasonable Time Spent | 9 |
|       3. Stanford Is Also Entitled to Reasonable "Fees-on-Fees" | 12 |
| IV. CONCLUSION | 12 |

## TABLE OF AUTHORITIES

**Page(s)**

Cases

*Amazon.com, Inc. v. Wong*,
  No. C19-0990JLR, 2022 WL 1092518 (W.D. Wash. Apr. 12, 2022) .................................. 8, 9

*AR Pillow Inc. v. Maxwell Payton, LLC*,
  No. C11-1962RAJ, 2012 WL 6024765 (W.D. Wash. Dec. 4, 2012) ...................................... 7

*Bigelow v. Nw. Tr. Servs., Inc.*,
  No. C14-5798 BHS, 2015 WL 4394926 (W.D. Wash. July 16, 2015), *vacated based on
  Davis v. Cox*, 2015 WL 5124097 (W.D. Wash. Aug. 31, 2015) .............................................. 7

*Boshears v. PeopleConnect, Inc.*,
  No. C21-1222 MJP, 2022 WL 888300 (W.D. Wash. Mar. 25, 2022) ...................................... 6

*Brazile v. Comm'r of Soc. Sec.*,
  No. C18-5914JLR, 2022 WL 503779 (W.D. Wash. Feb. 18, 2022) ........................................ 9

*Clark v. City of Los Angeles*,
  803 F.2d 987 (9th Cir. 1986) ................................................................................................ 12

*Davis v. Avvo, Inc.*,
  No. C11-1571RSM, 2012 WL 1067640 (W.D. Wash. Mar. 28, 2012) ................................... 7

*Davis v. Cox*,
  183 Wn.2d 269 (2015) ............................................................................................................ 7

*Fulton v. Livingston Fin. LLC*,
  No. C15-0574JLR, 2016 WL 3976558 (W.D. Wash. July 25, 2016) ................................... 12

*Graham-Sult v. Clainos*,
  No. CV 10-4877 CW, 2012 WL 994754 (N.D. Cal. Mar. 23, 2012), *aff'd in relevant part*,
  756 F.3d 724 (9th Cir. 2014) ............................................................................................... 12

*Herring Networks, Inc. v. Rachel Maddow, et al.*,
  No. 19-cv-01713-BAS-AHG (S.D. Cal. Feb. 5, 2021), ECF No. 40 .................................... 11

*Moreno v. City of Sacramento*,
  534 F.3d 1106 (9th Cir. 2008) .............................................................................................. 10

*Open Source Sec., Inc. v. Perens*,
  No. 17-CV-04002-LB, 2018 WL 2762637 (N.D. Cal. June 9, 2018), *aff'd*, 803 F. App'x 73
  (9th Cir. 2020) ............................................................................................................... 11

*Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*,
  890 F.3d 828 (9th Cir. 2018) ..................................................................................... 3, 4

*Seattle Times Co. v. LeatherCare, Inc.*,
  No. C15-1901 TSZ, 2019 WL 1651664 (W.D. Wash. Apr. 17, 2019), *aff'd*, 829 F. App'x 176
  (9th Cir. 2020) ............................................................................................................ 7, 8

*Stanikzy v. Progressive Direct Ins. Co.*,
  No. 2:20-CV-118 BJR, 2022 WL 1801671 (W.D. Wash. June 2, 2022) ................................ 9

*Thompson v. Gomez*,
  45 F.3d 1365 (9th Cir. 1995) ......................................................................................... 12

*Washington v. GEO Grp., Inc.*,
  No. 3:17-CV-05806-RJB, 2021 WL 5907799 (W.D. Wash. Dec. 14, 2021) ..................... 7, 9

*Welch v. Metro. Life Ins. Co.*,
  480 F.3d 942 (9th Cir. 2007) ............................................................................................ 8

## Statutes and Codes

Revised Code of Washington
  Section 4.105.020 ............................................................................................. 1, 3, 5, 6
  Section 4.105.090 .................................................................................................... 1, 3, 6

## Other Authorities

2021 Wash. S.B. No. 5009, Wash. 67th Leg., 2021 Reg. Sess. ............................................. 6

Defendant The Board of Trustees of the Leland Stanford Junior University ("Stanford") hereby moves this Court for reasonable attorneys' fees related to its Special Motion for Expedited Relief and Dismissal Pursuant to RCW 4.105.020 (Dkt. 37) (the "Special Motion"). This motion is made pursuant to RCW 4.105.090 and this Court's May 17, 2022 Order granting Stanford's Special Motion (Dkt. 57) (the "Order").

## I. INTRODUCTION

On May 17, 2022, the Court granted Stanford's Special Motion under Washington's Uniform Public Expression Protection Act ("UPEPA") and ordered that "[a]ny motion by Stanford for attorney fees under UPEPA must be filed within thirty (30) days of the date of this Order." Order at 23.

Stanford now requests that the Court order Project Veritas to pay Stanford $109,360.40 for reasonable attorneys' fees that it actually incurred in preparing and pursuing its Special Motion. This amount represents just a portion of the roughly $290,000 in total attorneys' fees paid by Stanford in defending this action and the repeated threats of litigation by Project Veritas that preceded it. *See* Declaration of Lee Brand filed herewith ("Brand Decl.") ¶ 2. Indeed, in the course of a yearlong prelitigation period of factual and legal investigation and negotiation, Stanford spent approximately $80,000 in legal fees in an effort to avoid this lawsuit with Project Veritas. *Id*.

Stanford also requests that the Court grant it the additional fees incurred in preparing this fees motion and will submit an accounting of such fees on reply.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. Pre-Litigation Activity

On September 27, 2020, Project Veritas published a video alleging a voter fraud scheme in the Minneapolis' Somali-American community (the "Video"). *See* Compl. (Dkt. 1) ¶ 57. On September 29, 2020, researchers from Stanford and The University of Washington ("UW") published a blog post about the Video (the "Blog Post"). *Id*. ¶¶ 1-2.

On September 30, 2020, Project Veritas' Chief Legal Officer sent a letter to the authors of the Blog Post demanding a retraction. *Id*. ¶ 137. On October 2, 2020, counsel for Stanford responded by letter to Project Veritas, declining "to retract or make any corrections to the Blog Post, insisting that the statements therein were either true or constituted 'expressions of opinion.'" *Id*. ¶ 138; *see also* Order at 16 ("Viewing the totality of the circumstances, the Court concludes that the phrases in the Blog Post that Project Veritas challenges as defamatory are nonactionable opinions.").

On January 21, 2021, Project Veritas' outside counsel, Clare Locke LLP, sent a letter to counsel for Stanford reiterating Project Veritas' demand for a retraction. Compl. ¶ 139. On January 22, 2021, counsel for Stanford responded to acknowledge receipt, and on March 3, 2021, responded substantively by letter, again standing by the Blog Post and declining to retract or correct it. *Id*. ¶¶ 140-41.

On May 12, 2021, Clare Locke LLP again wrote to counsel for Stanford to demand a retraction of the Blog Post, this time noting that a Justice of the New York Supreme Court had recently held that Project Veritas demonstrated that its defamation claims in related litigation against The New York Times had a "substantial basis." *Id*. ¶ 142. On May 20, 2021, counsel for Stanford continued to stand by the Blog Post and reiterated its unwillingness to make a retraction. *Id*. ¶ 143; *see also* Order at 22 n.7 ("[T]he NY Order is not persuasive authority for the determination this Court must make, and it does not alter the Court's conclusions that the phrases at issue here constitute nonactionable opinions.").

Stanford and Project Veritas also engaged in significant subsequent communications; Project Veritas continued to insist on, and Stanford continued to reject the propriety of, a correction or retraction of the Blog Post. Compl. ¶ 144.

**B.  Litigation Activity Prior to the Special Motion**

On September 29, 2021, Project Veritas filed its Complaint in this action, alleging that a portion of the Blog Post was defamatory.  *See, e.g.*, Compl. ¶ 154.  On November 29, 2021, Project Veritas served its Complaint on Stanford.  *See* Dkt. 15.

On December 17, 2021, Stanford sent Project Veritas a letter stating that, "[p]ursuant to Section 4.105.020 of the Revised Code of Washington (RCW), Stanford hereby provides notice of its intent to file a special motion for expedited relief."  Dkt. 25-1.  The letter further explained that "Project Veritas may now withdraw or amend its complaint," but that "[i]f Project Veritas does not withdraw or amend, and Stanford prevails on its special motion, Stanford will be entitled to recover its attorneys' fees under RCW 4.105.090."  *Id*.

On December 20, 2021, Project Veritas responded by letter, arguing "that Section 4.105.020, as a state anti-SLAPP statute, is not applicable in federal court."  Dkt. 32 at 10.  Project Veritas further asserted that "filing such a motion would be frivolous under FRCP 11," and "expressly reserve[d] all of its rights, including to seek discovery sanctions and/or a default judgment from the Court for any knowing failure by the Defendants to comply with the Federal Rules of Civil Procedure."  *Id*.

On December 21, 2021, Stanford responded by letter, stating:

> We are aware of the law of other circuits cited in your letter; it is not the law of the Ninth Circuit or the Western District of Washington.
>
> To the contrary, the Ninth Circuit has unambiguously continued to allow anti-SLAPP motions in federal court following *Shady Grove*.  *See Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 833 (9th Cir. 2018) (interpreting California's anti-SLAPP statute "to prevent the collision of California state procedural rules with federal procedural rules" and thereby allow anti-SLAPP motions to be maintained in federal court). . . .
>
> While we cannot prevent Project Veritas from seeking discovery sanctions and/or a default judgment based on the law of other circuits that is inconsistent with binding Ninth Circuit precedent, we think that such motion practice would be an obvious waste of both sides' time and resources.  To the extent Project Veritas elects to go down that path,

rather than properly raising any such arguments in its opposition to Stanford's forthcoming special motion, Stanford reserves the right to seek all appropriate relief.

*Id.* at 13; *see also* Order at 10-11 ("As in Planned Parenthood, in which the Ninth Circuit was careful to interpret the California anti-SLAPP statute in a way that avoided collision with the Federal Rules, the Court here construes UPEPA in a manner that does not create a conflict. . . . The Court concludes that UPEPA applies in federal court and will analyze Stanford's UPEPA motion . . . under the standards of Rule 12(b)(6).").

On December 22, 2021, Project Veritas sent yet another letter, continuing to insist that "Washington's anti-SLAPP statute does not apply in federal court," and providing notice "pursuant to Local Civil Rule 55(a) of the United States District Court for the Western District of Washington . . . that Project Veritas intends to seek default for failing to respond to Project Veritas's Complaint." Dkt. 32 at 20-21.

Notwithstanding further telephone calls, letters, and emails among the parties on this subject, Project Veritas continued to insist that Washington's anti-SLAPP statute did not apply in federal court and that Stanford was in default. *See* Dkt. 32 at 24-33. Accordingly, on January 5, 2022, Stanford and UW jointly filed a Motion to Modify Case Schedule. As explained therein:

> A slight amendment to the schedule will allow the parties to present their respective views on whether and how Washington's anti-SLAPP law applies to this defamation action in an orderly process. Defendants offered to stipulate that Plaintiff has waived no arguments or rights to present its arguments. Plaintiff has declined these offers, however, and is committed to filing an inappropriate motion to enter default to press a technical legal argument.

Dkt. 32 at 3. On January 12, 2022, Project Veritas filed an opposition to Defendants' motion and a Cross-Motion for Order of Default (Dkt. 33). On January 14, 2022, Defendants filed a reply in support of their motion (Dkt. 34). On January 18, 2022, the Court entered a Minute Order renoting both motions for February 4, 2022 (Dkt. 36).

C.  **The Special Motion and Subsequent Litigation Activity**

On January 27, 2022, Stanford filed its Special Motion for Expedited Relief and Dismissal Pursuant to RCW 4.105.020 (Dkt. 37). That same day, UW filed a Motion to Dismiss Pursuant to Rule 12(b)(6) (Dkt. 40) ("UW Motion"). Stanford and UW joined in one another's motions. *See* Special Motion at 11; UW Motion at 4.

On February 3, 2022, notwithstanding the fact that Defendants had now filed motions seeking dismissal of the Complaint, Project Veritas filed a Reply in Support of Cross-Motion for Order of Default (Dkt. 44).

On February 4, 2022, the parties filed a joint motion seeking authorization "that Plaintiff be permitted to file a single, omnibus opposition to Defendants' two motions of no more than 40-pages," and that "Defendants be permitted to file . . . a joint reply of no more than 20 pages." Dkt. 45 at 1. The parties agreed that this request was "in the interest of judicial and party economy because, by making it easier for the parties to consolidate their filings, it will promote the filing of fewer pages of total briefing and less duplicative briefing in connection with Defendants' motions to dismiss, which contain overlapping arguments." *Id*. at 1-2. The joint motion also sought an extension of the briefing schedule for the pending dispositive motions. *Id*. at 2. On February 7, 2022, the Court granted the joint motion. Dkt. 46.

On February 11, 2022, the Court entered a Minute Order determining that the Special Motion and UW Motion "were timely filed" and accordingly striking as moot both the Motion to Modify Case Schedule and the Cross-Motion for Order of Default. Dkt. 48.

On March 4, 2022, pursuant to the parties' agreed briefing schedule, Project Veritas filed its omnibus opposition to the Special Motion and the UW Motion (Dkt. 50). That same day, Project Veritas also filed what it called a Rule 12(d) and 56(d) Motion (Dkt. 51). This motion asked the Court "to convert Stanford University's Special Motion for Expedited Relief and Dismissal Pursuant to RCW 4.105.020 [Dkt. 37] and Defendant The University of Washington's Motion to Dismiss Pursuant to Rule 12(b)(6) [Dkt. 40] to motions for summary judgment under

Federal Rule of Civil Procedure 56(d) and stay adjudication of them until Plaintiff has been given a full and fair opportunity to conduct discovery." Dkt. 51 at 1.

On March 21, 2022, Defendants filed a joint opposition to Project Veritas's Rule 12(d) and 56(d) Motion (Dkt. 53). On March 25, 2022, Project Veritas filed a reply in support of its Rule 12(d) and 56(d) Motion (Dkt. 54). Also on March 25, 2022, pursuant to the parties' agreed briefing schedule, Defendants filed a joint reply in support of the Special Motion and the UW Motion (Dkt. 56).

### D. The Court's May 17 Order

On May 17, 2022, this Court entered an order holding that the "Motion for Special Expedited Relief under UPEPA, docket no. 37, filed by Stanford, is GRANTED." Order at 23. The Order also held that the "Motion under Rules 12(d) and 56(d), docket no. 51, filed by Project Veritas, is DENIED," and that the "Motion to Dismiss, docket no. 40, filed by UW, and joined by Stanford, is GRANTED, and this case is DISMISSED with prejudice and without leave to amend." *Id*. The Court further instructed that "[a]ny motion by Stanford for attorney fees under UPEPA must be filed within thirty (30) days of the date of this Order," and directed the Clerk "to enter judgment consistent with this Order, to send a copy of this Order and the judgment to all counsel of record, and to CLOSE this case." *Id*. at 23-24.

## III. ARGUMENT

### A. A Fee Award Is Mandatory

Where, as here, the moving party prevails on a special motion under UPEPA, a fee award is mandatory: "On a motion under RCW 4.105.020, the court *shall* award court costs, reasonable attorneys' fees, and reasonable litigation expenses related to the motion . . . [t]o the moving party if the moving party prevails on the motion . . . ."). RCW 4.105.090 (emphasis added); *see also Boshears v. PeopleConnect, Inc.*, No. C21-1222 MJP, 2022 WL 888300, at *7 (W.D. Wash. Mar. 25, 2022) (recognizing this language "compels the Court to [make an] award of costs, fees, and expenses" when the conditions of RCW 4.105.090 are met); UPEPA Legislative History,

2021 Wash. S.B. No. 5009, Wash. 67th Leg., 2021 Reg. Sess. ("Fee and Cost Shifting. If the moving party prevails, the court must award the movant costs, reasonable attorneys' fees, and reasonable litigation expenses related to the motion.").

Further, before Washington's prior anti-SLAPP statute was invalidated for unrelated reasons by *Davis v. Cox*, 183 Wn.2d 269 (2015), the Western District of Washington repeatedly recognized similar language in that statute as ***mandating*** a fee award on a successful special anti-SLAPP motion. *See, e.g.*, *Bigelow v. Nw. Tr. Servs., Inc.*, No. C14-5798 BHS, 2015 WL 4394926, at *2 (W.D. Wash. July 16, 2015) ("[u]nder the statute, the Court 'shall' award . . . the costs and attorney fees incurred in bringing the motion"), *vacated based on Davis v. Cox*, 2015 WL 5124097 (W.D. Wash. Aug. 31, 2015); *AR Pillow Inc. v. Maxwell Payton, LLC*, No. C11-1962RAJ, 2012 WL 6024765, at *7 (W.D. Wash. Dec. 4, 2012) ("The Act provides the moving party with an award of attorney's fees and costs . . . should the moving party prevail on the special motion to strike."); *Davis v. Avvo, Inc.*, No. C11-1571RSM, 2012 WL 1067640, at *8 (W.D. Wash. Mar. 28, 2012) ("defendant as the prevailing party is entitled to costs of litigation and reasonable attorney's fees incurred in connection with each successful motion").

### B. Stanford's Request Is Reasonable

A federal court applying Washington law utilizes the lodestar method to determine reasonable attorneys' fees. *See, e.g., Seattle Times Co. v. LeatherCare, Inc.*, No. C15-1901 TSZ, 2019 WL 1651664, at *1 (W.D. Wash. Apr. 17, 2019), *aff'd*, 829 F. App'x 176 (9th Cir. 2020). A court computes "a lodestar amount by multiplying a reasonable hourly rate by the number of hours reasonably expended on the matter." *Id*; *see also Washington v. GEO Grp., Inc.*, No. 3:17-CV-05806-RJB, 2021 WL 5907799, at *3 (W.D. Wash. Dec. 14, 2021) ("In determining what attorney's fee is reasonable in a particular case, the court arrives at the 'lodestar amount,' that is, multiplying the number of hours reasonably expended by a reasonable hourly rate."). Although "[t]he Court is not bound by the lodestar value," *Seattle Times*, 2019 WL 1651664, at *1, "'in most cases the lodestar figure is presumptively reasonable,'" *GEO Grp.*, 2021 WL 5907799, at

*3 (quoting *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 982 (9th Cir. 2008)).  Actual billing records are also "relevant," but not "dispositive."  *Seattle Times*, 2019 WL 1651664, at *1.

Here, the fees that Stanford has requested for pursuit of its Special Motion are reasonable, both in terms of hourly rates and the amount of time spent.  The following table summarizes the hours, rates, and total amount billed by each attorney at Pillsbury Winthrop Shaw Pittman LLP ("Pillsbury") and Miller Nash LLP for the fees underlying Stanford's request:

| Attorney (Firm) | Title | Hourly Rate | Hours | Amount Billed |
|---|---|---|---|---|
| Sarah G. Flanagan (Pillsbury) | Partner | $891.00 | 25.4 | $22,631.40 |
| Lee Brand (Pillsbury) | Counsel | $718.00 | 110.0 | $78,980.00 |
| Brian W. Esler (Miller Nash) | Partner | $553.50[1] | 14.0 | $7,749.00 |
| **TOTAL** | | | **149.4** | **$109,360.40** |

*See* Brand Decl. ¶¶ 4, 6, 8-10 and Ex. 3; *see also* Declaration of Brian W. Esler filed herewith ("Esler Decl.") ¶¶ 4-6 and Ex. B.

### 1. Stanford's Request Reflects Reasonable Hourly Rates

This Court assesses whether an hourly rate is reasonable "by looking to the rate prevailing in the Western District of Washington 'for similar work performed by attorneys of comparable skill, experience, and reputation.'"  *Amazon.com, Inc. v. Wong*, No. C19-0990JLR, 2022 WL 1092518, at *1 (W.D. Wash. Apr. 12, 2022) (quoting *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1211 (9th Cir. 1986)).  The Ninth Circuit has "repeatedly held that the determination of a reasonable hourly rate is not made by reference to the rates actually charged the prevailing party" by its counsel, but rather "should be established by reference to the fees that private attorneys of an ability and reputation comparable to that of prevailing counsel charge their paying clients for legal work of similar complexity."  *Welch v. Metro. Life Ins. Co.*, 480

---

[1] This figure represents Mr. Esler's effective rate to Stanford after the application of a 10% discount.  His standard billing rate is $615.  Brand Decl. ¶ 8; Esler Decl. ¶ 4.

F.3d 942, 946 (9th Cir. 2007) (internal quotation marks omitted) (holding district court erred in *reducing* rate based on amount counsel actually collected from its paying clients).

Nevertheless, Stanford has conservatively requested fees based on the hourly rates actually billed by Pillsbury and Miller Nash, which are lower than these firm's standard hourly billing rates. Specifically, for Sarah Flanagan, Partner at Pillsbury in San Francisco, Stanford seeks only her reduced hourly billing rate to Stanford of $891, not her standard hourly billing rate of $1,290. Brand Decl. ¶ 6. Similarly, for Lee Brand, Counsel at Pillsbury in San Francisco, Stanford seeks his reduced hourly billing rate to Stanford of $718, not his standard hourly billing rate of $945. *Id.* ¶ 4. And for Brian Esler, Partner at Miller Nash in Seattle, Stanford seeks his effective hourly billing rate to Stanford of $553.30, not his standard hourly billing rate of $615. *Id.* ¶ 8; Esler Decl. ¶ 4.

Further, these hourly rates are well within the range of rates previously approved by this Court. *See, e.g.*, *Stanikzy v. Progressive Direct Ins. Co.*, No. 2:20-CV-118 BJR, 2022 WL 1801671, at *6 (W.D. Wash. June 2, 2022) (finding "varying hourly rates of $1000 for 2022; $975 for 2021-2020; and $950 for 2019 . . . are reasonable"); *Amazon.com, Inc.*, 2022 WL 1092518, at *2 (W.D. Wash. Apr. 12, 2022) (hourly rates of "$785 for attorneys . . . comparable to those 'prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation'"); *Brazile v. Comm'r of Soc. Sec.*, No. C18-5914JLR, 2022 WL 503779, at *3 (W.D. Wash. Feb. 18, 2022) ("fee awards with hourly rates exceeding $1,000 have been approved by courts in this district on numerous occasions") (listing cases).

### 2. Stanford's Request Reflects Reasonable Time Spent

"In the Ninth Circuit, '[t]he number of hours to be compensated is calculated by considering whether, in light of the circumstances, the time could reasonably have been billed to a private client.'" *GEO Grp.*, 2021 WL 5907799, at *4 (quoting *Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008)). Consistent with that standard, a "district court should exclude hours that are 'excessive, redundant, or otherwise unnecessary.'" *Id.* (quoting *Gonzalez*

*v. City of Maywood*, 729 F.3d 1196, 1203 (9th Cir. 2013)). But "[b]y and large, the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case; after all, he won, and might not have, had he been more of a slacker." *Moreno*, 534 F.3d at 1112 (9th Cir. 2008).

Here, Stanford only seeks fees in connection with hours that were actually billed to and paid by Stanford, a private client. Brand Decl. ¶ 2; Esler Decl. ¶ 2. Moreover, for several reasons, it is clear that Stanford does not seek fees for excessive, redundant, or otherwise unnecessary time.

***First***, before any fees were billed to Stanford, attorneys at Pillsbury and Miller Nash exercised billing judgment to write off hours that appeared duplicative or unnecessary. Brand Decl. ¶ 11; Esler Decl. ¶ 7.

***Second***, Stanford has elected only to seek fees based on the time billed by the three primary attorneys handling this matter, Ms. Flanagan, Mr. Brand, and Mr. Esler. Brand Decl. ¶ 7. While Pillsbury Senior Counsel John M. Grenfell and Associate Joe Little provided valuable assistance directly connected to researching and drafting the Special Motion, and fees for their time were billed to and paid by Stanford, Stanford does not seek any fee award based on their time. Brand Decl. ¶ 7.

***Third***, the relative number of hours billed by Ms. Flanagan, Mr. Brand, and Mr. Esler also reflects efforts to avoid duplicative and unnecessary expenditures. At Pillsbury, to realize efficiencies based on Mr. Brand's lower hourly billing rate, he took the laboring oar on activities related to the Special Motion. Accordingly, Stanford's request reflects just 25.4 hours based on Ms. Flanagan's time compared to 110.0 hours based on Mr. Brand's time. Similarly, while Mr. Esler provided invaluable advice on local practice and procedure in the Western District of Washington, Stanford requests fees based on just 14.0 hours of his time, reflecting a judicious and efficient allocation of legal resources and expertise. Brand Decl. ¶¶ 4, 6, 8-10 and Ex. 3; Esler Decl. ¶¶ 4-6 and Ex. B and Ex. B.

DEFENDANT STANFORD'S
MOTION FOR FEES – 10
(Case No. 2:21-cv-01326-TSZ)

4858-6852-8932.v5

***Fourth***, while almost everything that Pillsbury and Miller Nash did in this matter was arguably related to the Special Motion, Stanford has limited its request to their fees for activities directly connected to the researching and drafting of the Special Motion and the related filings in support thereof, including the opposition to Project Veritas's parallel Rule 12(d) and 56(d) Motion. Brand Decl. ¶ 10 and Ex. 3; Esler Decl. ¶ 6 and Ex. B. Stanford does not seek fees for time spent on extensive prelitigation investigation and negotiations regarding Project Veritas's allegations of defamation, the same allegations that were ultimately litigated in the Special Motion. Brand Decl. ¶¶ 2, 12(a); *see also* Compl. ¶¶ 137-44. Nor does Stanford seek fees for time spent on extensive written and oral communications with Project Veritas—and related preliminary motion practice—regarding the assertion that Washington's anti-SLAPP statute is not applicable in federal court, the same assertion that was also ultimately litigated in the Special Motion. Brand Decl. ¶¶ 12(b)-(c); Dkt. 32, 33, 34, 44. Nor does Stanford seek fees for time spent conferring with UW leading up to the filing of the Special Motion and the concurrent UW Motion. Brand Decl. ¶ 12(d).[2] Nor does Stanford seek fees for time spent on extensive factual investigation of potential evidentiary support for the Special Motion, upon which it ultimately declined to rely based on the greater expediency of a non-evidentiary motion. *Id*. ¶ 12(e).[3]

***Fifth***, Stanford's request is well within the range of recent fee awards on successful anti-SLAPP motions granted by district courts in the Ninth Circuit. *See, e.g.*, *Herring Networks, Inc. v. Rachel Maddow, et al*., No. 19-cv-01713-BAS-AHG (S.D. Cal. Feb. 5, 2021), ECF No. 40 at 19-20 (awarding total fees of $247,667.50 for 363.1 hours, including over 70 hours billed by two partners and over 270 hours billed by three associates); *Open Source Sec., Inc. v. Perens*, No. 17-

---

[2] Stanford does seek fees for time spent conferring with UW's counsel on Defendants' joint opposition to Project Veritas's Rule 12(d) and 56(d) Motion (Dkt. 53) and joint reply in support of the Special Motion and the UW Motion (Dkt. 56). As already acknowledged by Project Veritas, Defendants' joint response in support of their motions was "in the interest of judicial and party economy." Dkt. 45 at 1.

[3] Stanford has also incurred e-discovery costs related to the preservation, collection, and review of evidence in connection with this factual investigation but does not seek to recover such costs given its ultimate decision to file a non-evidentiary motion based on the deficiency of the Complaint. *Id*. ¶ 13.

CV-04002-LB, 2018 WL 2762637, at *7 (N.D. Cal. June 9, 2018) (awarding total fees of $259,900.50 for 446.20 hours), *aff'd*, 803 F. App'x 73 (9th Cir. 2020); *Graham-Sult v. Clainos*, No. CV 10-4877 CW, 2012 WL 994754, at *4-5 (N.D. Cal. Mar. 23, 2012) (finding "the 235 hours Clainos's attorneys spent on the anti-SLAPP motion is not unreasonably high"), *aff'd in relevant part*, 756 F.3d 724 (9th Cir. 2014).

Given the limits on the timekeepers and activities for which Stanford now seeks recovery, the consistency of Stanford's request with other Ninth Circuit anti-SLAPP fee awards, and the time-intensive manner in which Project Veritas has repeatedly opposed Stanford's Special Motion—including by cross-motion under Rules 12(d) and 56(d)—the hours underlying Stanford's requested fee award are far from excessive, redundant, or unnecessary.

### 3. Stanford Is Also Entitled to Reasonable "Fees-on-Fees"

Stanford is also entitled to recover for its "fees-on-fees"—*i.e.*, its "fees incurred while pursuing merits fees." *Thompson v. Gomez*, 45 F.3d 1365, 1366 (9th Cir. 1995); *see also Clark v. City of Los Angeles*, 803 F.2d 987, 992 (9th Cir. 1986) (awarding fees-on-fees); *Fulton v. Livingston Fin. LLC*, No. C15-0574JLR, 2016 WL 3976558, at *5 (W.D. Wash. July 25, 2016) (same). Stanford will submit an accounting of such fees on reply.

### IV. CONCLUSION

For the reasons set forth above, Stanford respectfully requests that the Court order Project Veritas to pay Stanford $109,360.40 for attorneys' fees related to its Special Motion, plus the additional fees incurred in preparing this motion.

DATED this 16th day of June, 2022.

By: *s/ Brian W. Esler*

| | |
|---|---|
| Brian W. Esler, WSBA No. 22168 | Sarah G. Flanagan (pro hac vice) |
| Miller Nash LLP | Lee Brand (pro hac vice) |
| Pier 70, 2801 Alaskan Way, Suite 300 | Pillsbury Winthrop Shaw Pittman LLP |
| Seattle, WA 98121 | Four Embarcadero Center, 22nd Floor |
| Telephone: (206) 624-8300 | San Francisco, CA 94111-5998 |
| Email: brian.esler@millernash.com | Telephone: +1 415 983 1000 |
| | Email: sarah.flanagan@pillsburylaw.com |
| | lee.brand@pillsburylaw.com |

Attorneys for Defendant Stanford

CERTIFICATE OF SERVICE

I hereby certify that on June 16, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

DATED this 16th day of June, 2022.

*s/ Brian W. Esler*
Brian W. Esler

4884-6219-4213.1